1  Robert S. Green (State Bar No. 136183)
   Jenelle Welling (State Bar No. 209480)
2  **GREEN WELLING LLP**
   595 Market Street, Suite 2750
3  San Francisco, CA  94105
   Telephone: (415) 477-6700
4  Facsimile: (415) 477-6710
   cand.uscourts@classcounsel.com
5

6  Attorneys for Plaintiff

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

                         **San Jose Division**
10

11  Michael Brothers, On Behalf of Himself and   ) Case No. C-06-2254 RMW
    all Others Similarly Situated                )
12                                               )
                       Plaintiff,                ) **PLAINTIFF'S OPPOSITION TO**
13                                               ) **DEFENDANT HEWLETT-PACKARD**
           v.                                    ) **COMPANY'S MOTION TO DISMISS**
14                                               )
    Hewlett-Packard Co.,                         ) Date: August 18, 2006
15                                               ) Time: 9:00 a.m.
                       Defendant.                ) Place: Courtroom 6, 4th Floor
16                                               ) Judge: The Honorable Ronald M. Whyte
                                                 )
17                                               )
                                                 )
18                                               )

19

20

21

22

23

24

25

26

27

28

PLTF.'S OPP. TO DEF.'S MOT. TO DISMISS
CASE NO. C-06-2254 RMW

# **TABLE OF CONTENTS**

**PAGE**

STATEMENT OF ISSUES TO BE DECIDED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.      Plaintiff Need Not Plead His UCL Claim With Rule 9(b) Particularity. . . . . . . . . . . . . . 5

II.     Plaintiff's Allegations Satisfy Rule 8 and *Khoury* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.    HP's Misrepresentations and Omissions Properly Form the Basis of Plaintiff's UCL
        Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.      Plaintiff Adequately Alleges Injury in Fact and Causation. . . . . . . . . . . . . . . . . . 9

        B.      Representations Made in HP's Marketing Materials Properly Form A Basis
                For Plaintiff's UCL Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        C.      HP Statements in its Warranty are Actionable . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.     The UCL Applies Nationwide To Wrongful Conduct Emanating From California. . . . 16

V.      Plaintiff Adequately States a Claim for Breach of Warranty . . . . . . . . . . . . . . . . . . . . 17

        A.      HP's Time Bar Defense Does Not Preclude Plaintiffs' Claims . . . . . . . . . . . . . 18

                1.      *Anunziato* does not apply when the manufacturer knew of the defect
                        at the time of sale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                2.      *Anunziato* should not be followed regarding HP's breach for failure to
                        repair . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                3.      Plaintiff alleges the time limitation is unconscionable . . . . . . . . . . . . . 20

        B.      HP's Reliance Argument Mischaracterizes Plaintiff's Allegations and
                Provides No Basis For Dismissal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VI.     Expedited Repair Claims Cannot Be Dismissed Under Rule 12(b)(1) . . . . . . . . . . . . . 22

        A.      HP Improperly Attacks Plaintiff's Typicality at the Pleading Stage . . . . . . . . . 22

        B.      Alternately, Plaintiff is entitled to precertification discovery to identify a
                named plaintiff for Expedited Repair Claims . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VII     Privity Of Contract Is Not Required Here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**PAGE(S)**

## FEDERAL CASES

*Ab Avnet EMG v. Sierra Semiconductor Corp.*, No. C-93-0087,
1993 WL 280504, * 5 (N.D. Cal. July 9, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Allen v. City of Beverly Hills*,
911 F.2d 367 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Anunziato v. eMachines, Inc.*,
402 F. Supp. 2d 1133 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Arpin v. Santa Clara Valley Transp. Agency*,
261 F. 3d 912 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Balistreri v. Pacifica Police Dept.*,
901 F.2d 696 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*California. In Speyer v. Avis Rent A Car System, Inc.*,
415 F. Supp. 2d 1090 (S.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Conley v. Gibson*,
355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*General Tel. Co. of Southwest v. Falcon*,
475 U.S. 147 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Gilligan v. Jamco Develop. Corp.*,
108 F.3d 246 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Margarita Cellars v. Pacific Coast Packaging, Inc.*,
189 F.R.D. 575 (N.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Pareto v. F.D.I.C*,
139 F.3d 696 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 19

*Qarbon.com, Inc. v. eHelp Corporation*,
315 F. Supp.2d 1046 (N.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Supermail Cargo, Inc. v. United States*,
68 F. 3d 1204 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Redwood City*,
640 F.2d 963 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

1

<u>**STATE CASES**</u>

2

*Alvine v. Mercedes-Benz of North America,*
    620 N.W. 2d 608 (S.D. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

3

*Best Buy Stores, L.P. v. Sup. Ct.,*
    137 Cal. App. 4th 772 (4th Dist. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

4

*Blakemore v. Superior Court,*
    129 Cal. App. 4th 36, 49 (2nd Dist. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

5

6

*Burr v. Sherwin Williams Co.,*
    42 Cal.2d 682 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

7

*Caro v. Procter & Gamble Co.,*
    18 Cal. App. 4th 644, 668-69 (4th Dist. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

8

9

*Chrysler Corp. v. Wilson Plumbing Co.,*
    132 Ga. App. 435 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

10

*Clothesrigger v. GTE Corp.,*
    191 Cal. App. 3d 605 (4th Dist. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

11

12

*Consumer Advocates v. Echostar Satellite Corp.,*
    113 Cal. App. 4th 1352, 1361-62 (2nd Dist. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

13

*Day v. AT&T Corp.,*
    63 Cal. App. 4th 325, 332 (1st Dist. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

14

15

*Diamond Multimedia Systems v. Sup. Ct.,*
    19 Cal. 4th 1036 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

16

*Hauter v. Zogarts,*
    14 Cal. 3d 104, 115 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

17

18

*Independent Ass'n of Mailbox Center Owners, Inc. v. Sup. Ct.,*
    133 Cal. App. 4th 396, 407 (4th Dist., 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

19

*Keith v. Buchanan,*
    173 Cal. App. 3d 13, 23 (2nd Dist., 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

20

21

*Khoury v. Maly's of California, Inc.,*
    14 Cal. App. 4th 612, 619 (2nd Dist. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

22

*Klein v. Earth Elements, Inc.,*
    59 Cal. App. 4th 965 (1st Dist. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

23

24

*Massachusetts Mutual Life Ins. Co. v. Sup. Ct.,*
    97 Cal. App. 4th 1282, 1294 (4th Dist. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

25

*Norwest Mortgage, Inc. v. Sup. Ct.,*
    72 Cal. App. 4th 214 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

26

27

28

*Occidental Land, Inc. v. Sup. Ct.*,
   18 Cal. 3d 355, 363 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Osborne v. Subaru of America, Inc.*,
   198 Cal. App. 3d 646, 660 (3rd Dist. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Pastoria v. Nationwide Insurance*,
   112 Cal. App. 4th 1490, 1496-97 (2nd Dist. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Patterson v. ITT Consumer Fin. Corp.*,
   14 Cal. App. 4th 1659, 1664 (1st Dist. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Pfizer Inc. v. Sup. Ct.*,
   ___ Cal. App. 4th ___, No. BC327114, 2006 WL 1892581
   (2nd Dist. July 11, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Seely v. White Motor Company*,
   63 Cal. 2d 9, 13-14 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 22, 24

*Vasquez v. Sup. Ct.*,
   4 Cal. 3d 800, 814 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## **FEDERAL RULES**

Federal Rule of Civil Procedure 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Rule of Civil Procedure 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3

Fed. Rule of Civil Procedure 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. Rule of Civil Procedure 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 23

## **STATE STATUTES**

Business & Professions Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

California Civil Code § 1670.5(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

### STATEMENT OF ISSUES TO BE DECIDED

1.      Where Plaintiff's allegations are not "grounded in fraud," must he plead his unfair business practices claim under California Business & Professions Code § 17200 (the "UCL") with the particularity required by Federal Rule of Civil Procedure 9(b)?

2.      Are allegations that a manufacturer produced a defective product, knowingly sold it in a defective condition, provided inadequate repairs or replacements under the terms of its express warranty, and charged consumers for repairs outside of warranty actionable under the UCL?

3.      Where a manufacturer misrepresents an important characteristic of a product, and omits or fails to disclose material information concerning that characteristic, are the misrepresentations and omissions actionable under the UCL?

4.      Where a company is headquartered in California, and the course of conduct about which Plaintiff complains occurred in California, is it appropriate to apply the UCL to the claims of non-California consumers?

5.      Where Plaintiff alleges a manufacturer warranted a product to be "free from defect" but sold the product knowing it contained a defect, does a claim for breach of warranty lie?

6.      Where Plaintiff properly alleges the contractual time limitation in an express warranty is unconscionable, is it proper to dismiss Plaintiff's breach of express warranty claim premised on defendant's affirmative defense of the contractual time bar?

7.      Is reliance a pleading requirement for a breach of warranty claim, and if so, whether it is satisfied by Plaintiff's allegations that he submitted his computer for repair in accordance with the warranty?

8.      Where Defendant attacks the Plaintiff's typicality, but Plaintiff has the same interests and suffers the same generic injury as the putative class, does Plaintiff have sufficient standing to sue for class claims beyond his own?

## STATEMENT OF FACTS

HP manufactures, sells, and services notebook computers throughout the United States, including its Pavilion zd7000 consumer notebook series.  Complaint ("Complt.") ¶¶ 6-7.  HP marketed the Pavilion as a "high performance wireless notebook which integrates digital entertainment, photography and Internet computing into a sophisticated design with desktop comfort.  Functioning like an in-home digital entertainment and photo studio, the Pavilion zd7000 incorporates a high resolution 17-inch widescreen display which allows users to enjoy movies, music, games, art and photography to its fullest."  *Id.*, ¶ 9.  HP proudly touted that the zd7000 computers contained the "NVIDIA GeForce GPU with 8X APG," a specialty graphics card which provides "the most cinematic graphics and special effects."  Complt., ¶ 10.  In its standard one-year written warranty included with every computer, HP promised "that the HP hardware product and all the internal components of the product . . . are free from defects in materials or workmanship under normal use during the Limited Warranty Period."  *Id.* ¶ 11.

Plaintiff purchased a Pavilion zd7000 series notebook computer on August 24, 2004 from Circuit City for over $2,000.  *Id.* ¶28.  During normal use, his computer heats up and the fans turn on, blowing out hot air.  *Id.*  His display screen began showing red vertical lines, went blank, and ultimately the computer would not turn on. *Id.*  HP replaced the motherboard (also called a "system board") in Plaintiff's computer.  *Id.*

Five months later, Plaintiff's computer began overheating again, and again, manifesting the display distortions.  *Id.* ¶ 29.  When Plaintiff contacted HP for re-repair, HP advised him that his computer was no longer covered under the warranty and that he would have to pay approximately $300 to repair the problem.  *Id.*  In the alternative, HP offered the option of purchasing an extended warranty.  *Id.*

HP knows, however, that the system boards containing the NVIDIA graphics cards are "experiencing a high rate of failure[.]"  Complt., ¶ 20.  Specifically, in an internal "Service Coverage Notice," HP admits that owners of zd7000 computers may contact customer support because "the display appears corrupted."  *See id.*  HP identifies the source of the corrupted

1  display as the system board containing the NVIDIA graphics card.  *See id.*  HP recommends

2  replacing the motherboard with a system board that integrates an older, slower graphics card,

3  which produces less heat.  *See id.*, ¶¶ 19, 20.  Of course, a lower grade graphics card does not

4  provide the "high performance" digital entertainment capabilities HP marketed.  Despite HP's

5  knowledge of the defect, it refuses to adequately repair the computer, and, in fact, charges

6  consumers to repair it when the notebook fails after the warranty period.

7         HP contends that Plaintiff fails to state a claim under the UCL or for breach of express

8  warranty.  First, HP says Plaintiff's UCL claim is grounded in fraud such that Rule 9(b)

9  particularity applies.  HP reasons that, since Plaintiff avers fraud, Plaintiff must plead that HP

10 had pre-sale knowledge of the defect to allege the intent element with particularity.  The glaring

11 problem with this argument is that Plaintiff's claim is not grounded in fraud, as *Vess v. Ciba-*

12 *Geigy Corporation* and *Qarbon.com v. eHelp* definitively establish.

13        Taking an opposite tact, HP argues Plaintiff's claims are not grounded in fraud, but rather

14 are premised solely on marketing statements which constitute non-actionable puffery.  This is a

15 myopic reading of Plaintiff's complaint.  The wrongful conduct in this case stems from HP

16 knowing about the defective system boards but concealing this information and refusing to

17 adequately repair or replace them at no cost to the consumer. HP's marketing statements are part

18 of the deceptive scheme, but are not the whole of Plaintiff's claims.  Even if HP's statements and

19 omissions were the only matters at issue, however, Plaintiff would still state a claim because by

20 misrepresenting an important characteristic of the product, particularly in light of the

21 contradictory service bulletin in its possession, HP crossed the line between puffery and

22 actionable statements.

23        HP's efforts to dismiss Plaintiff's breach of express warranty claims are similarly

24 misguided.  Ignoring California Supreme Court opinions directly on point, HP contends Plaintiff

25 lacks privity to pursue an action for breach of express warranty.  HP also ignores Plaintiff's

26 allegations of unconscionability — which must be taken as true — and argues Plaintiff's claim is

27

28

1   foreclosed by the one-year limitation in its warranty.  Plaintiff's claim is not foreclosed, and after

2   proof presented at the appropriate procedural stage, HP should be required to fulfill its promises.

3        Finally, HP seeks to minimize the repercussions of its wrongful conduct by limiting its

4   exposure to just California consumers.  This action presents a paradigmatic case for applying the

5   UCL nationwide, however.  All of the conduct about which Plaintiff complains, from identifying

6   but concealing the defect to charging consumers to repair it, occurred in California, where HP is

7   headquartered.  HP's motion should be denied.

8                                   **LEGAL STANDARD**

9        The Ninth Circuit disfavors granting Rule 12(b)(6) motions. *Gilligan v. Jamco Develop.*

10  *Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) ("The motion to dismiss for failure to state a claim is

11  viewed with disfavor and is rarely granted.").  Indeed, the Ninth Circuit says dismissal is proper

12  only in "extraordinary" circumstances.  *United States v. Redwood City*, 640 F.2d 963, 966 (9th

13  Cir. 1981).  *Accord Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ("A complaint should not be

14  dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove

15  no set of facts in support of his claim which would entitle him to relief.").

16       In evaluating HP's Rule 12(b)(6) motion, this Court must construe the complaint in the

17  light most favorable to Plaintiff (*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337 (9th Cir.

18  1996)), and accept as true all allegations in the complaint and the reasonable inferences drawn

19  there from (*Pareto v. F.D.I.C*, 139 F.3d 696, 699 (9th Cir. 1998)).  As long as Plaintiff has pled a

20  "short and plain" statement of his claim, his complaint should be upheld. *See* Fed. R. Civ. Proc.

21  8(a). In the unlikely event that this Court finds Plaintiff fails to state a claim, leave to amend

22  should be "freely given." Fed. R. Civ. Proc. 15(a); *Allen v. City of Beverly Hills*, 911 F.2d 367,

23  373 (9th Cir. 1990).  This is true even if this Court finds subject matter jurisdiction lacking.

24  *Telluride Mgmt. Solutions, Inc. v. Telluride Inv. Group*, 55 F.3d 463, 466 (9th Cir. 1995).

25

26

27

28

**ARGUMENT**

**I.     Plaintiff Need Not Plead His UCL Claim With Rule 9(b) Particularity**

"Only allegations [] of fraudulent conduct must satisfy the [] pleading requirements of Rule 9(b).  Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). The hallmark difference between fraudulent conduct and non-fraudulent conduct is intent. *See id.* (comparing California common law fraud elements to UCL). Thus, where a plaintiff emphasizes the defendant's fraudulent intent, Rule 9(b) applies even if the word fraud is not used because such claims are considered "grounded in fraud," triggering the public policy protections behind the heightened pleading standard.  *See id.* at 1103-04.

In *Vess*, for example, where the Ninth Circuit applied Rule 9(b) to a UCL claim, the plaintiff alleged a conspiracy to increase sales of Ritalin.  *See id*. at 1101.  Plaintiff averred defendants "planned, conspired, and colluded" to broaden the diagnosis of ADD/ADHD, the condition which Ritalin mitigates; "purposefully" failed to use objective criteria in the broadened diagnostic criteria; and "deliberately" exchanged financial contributions to further the conspiracy. *Id.*, 317 F.3d at 1101. These allegations squarely focused on the intent of the defendants, the core element of common law fraud, such that plaintiff's UCL claim was grounded in fraud and had to meet the heightened pleading requirements of Rule 9(b). *See id.* at 1103-04.

Critically, the *Vess* court also delineated those allegations which did not sound in fraud. For example, the *Vess* court highlighted plaintiff's allegation that defendant "failed to disclose" the limited effectiveness of the drug as not grounded in fraud. *Id.* at 1106.  A failure to disclose, however, is exactly the allegation to which HP points to support application of Rule 9(b) here. *See* HP Mem. at 6 (citing Plaintiff's allegation that HP "conceal[ed] and/or omit[ted] the true facts about the defect"). Under *Vess*, such an allegation does not ground a UCL claim in fraud.

The other allegations upon which HP relies similarly say nothing about HP's intent to defraud consumers. For example, HP highlights Plaintiff's allegations that "HP is aware of this

problem," "HP was or should have been aware that the Pavilions were failing," and that HP sold

computers with a "known defect." None of these allegations speak to HP's intent, and thus they

do not ground Plaintiff's UCL claim in fraud. It might be different had Plaintiff alleged that HP

*deliberately* built computers that would overheat or that HP *conspired* with its third party repair

center to generate income from failed system boards. Those types of allegations speak to HP's

intent, a fundamental element of common law fraud. The unadorned allegations that HP was

"aware" of a problem and that HP "sold" defective computers, however, are akin to the *Vess*

plaintiff's allegation that a defendant "took steps" to further the wrongful conduct. *Vess*, 317

F.3d at 1106.

    *Qarbon.com, Inc. v. eHelp Corporation*, 315 F. Supp.2d 1046 (N.D. Cal. 2004), reiterates

that allegations of a defendant knowingly making false representations are not grounded in fraud.

There, in a patent infringement action, defendant eHelp asserted a UCL counterclaim against

plaintiff Qarbon. *See Id.* at 1048.  eHelp alleged that Qarbon "engaged in unfair, unlawful, or

fraudulent business practices by asserting and pursuing purported rights and claims under [the

patent] in bad faith when [Qarbon] knew or should have known that the patent is invalid or not

infringed and making misleading statements about the scope, enforceability, or infringement of

[the patent]." *Id*.  Qarbon moved to dismiss eHelp's UCL counterclaim, arguing that eHelp was

required to plead its counterclaim under the heightened pleading standard of Rule 9(b) because

the claim was 'grounded in fraud.' *Id.* at 1051.

    The court rejected Qarbon's argument.  *Id*.  "To the extent that eHelp asserts unfair or

unlawful business activities, it does not allege fraudulent conduct because the assertions neither

contain the word fraud nor do they allege facts that would necessarily constitute fraud." *Id*.

Contrasting the elements of California common law fraud with those under the UCL, the court

reasoned: "eHelp does not allege Qarbon's *intent to defraud* . . .  Rather, eHelp alleges that

Qarbon is knowingly making false representations about [the patent] and seeks injunctive relief

and restitution.  As such, eHelp's counterclaim for unfair and unlawful activities is not grounded

1  in fraud." *Id*. (emphasis added).[1]  The same is true here. Plaintiff alleges that HP engaged in a

2  wrongful course of conduct and that conduct included false representations, but Plaintiff's

3  allegations do not focus on HP's intent, and thus, under *Qarbon* and *Vess*, Plaintiff need not

4  plead HP's pre-sale knowledge of the defect, as HP contends, or any other particularity Rule 9(b)

5  demands for fraud.

6  **II.     Plaintiff's Allegations Satisfy Rule 8 and *Khoury***

7            Falling somewhere between the notice pleading standard of Rule 8 and the heightened

8  pleading standard of Rule 9(b) is the "reasonable particularity" standard of *Khoury*: "A plaintiff

9  alleging unfair business practices under [the UCL] must state with reasonable particularity the

10 facts supporting the statutory elements of the violation."  *Khoury v. Maly's of California, Inc.*,

11 14 Cal. App. 4th 612, 619 (2nd Dist. 1993).  Assuming without agreeing that *Khoury* articulates

12 the correct standard, a fair reading of Plaintiff's complaint reveals he meets that standard.

13           The gravamen of Plaintiff's UCL claim is that HP manufactured and sold defective

14 computers, and, even though it issued an internal service bulletin detailing the defect,[2] it fails to

15 disclose the defect to consumers, charges consumers to repair the defect, and/or "repairs" the

16 defect by installing a lower-grade graphics card. Both the manifestation of the defect and HP's

17 approach to "repairing" it deprive consumers of the benefit of their bargain, which was paying

18 $2,000 for a "high performance," "digital entertainment" computer that HP touted as having the

19 NVIDIA GeForce graphics processing unit which would provide "cinematic graphics and special

20 _____

21          [1] *Qarbon* analysis remains correct notwithstanding *Pfizer Inc. v. Sup. Ct.*, ___ Cal. App.
   4th ___, No. BC327114, 2006 WL 1892581 (2nd Dist. July 11, 2006), which requires a plaintiff
22 asserting a UCL claim to allege reliance on the allegedly false or misleading representations
   giving rise to the claim.  The *Pfizer* holding speaks not to intent, but rather to causation.  As
23 such, the holding of *Pfizer* does not incorporate into the "fraudulent" UCL prong all of the
   elements of the common law tort of fraud, such that the term "fraudulent" as used in the UCL
24 still does not refer to the common law fraud.

25          [2] HP says its February 2006 service bulletin "is far from useful in showing that HP had
26 pre-sale knowledge of the purported defect"(HP Mem. at 6 fn. 2), but this is not true.  Logic
   dictates that a service bulletin would only issue after HP identified the defect, determined its
27 scope and impact, and validated the recommended course of action.  The date of the service note
   indicates that HP definitely knew of the defect before that date.

28
   _____

effects." Complt., ¶¶ 9, 10.

By specifying the facts surrounding HP's failure to adequately repair Plaintiff's computer (Complt., ¶¶ 28, 29), quoting the service bulletin that identifies the defect that Plaintiff's and other class members' computers contain (Complt., ¶ 20), detailing the many ways in which HP's conduct is unfair to consumers, such as failing to warn them (Complt., ¶ 23), charging them to repair the known defect (Complt., ¶ 24), refusing repairs such that consumers pay a third party for repair (Complt., ¶ 25), and installing an inferior graphics card (Complt., ¶ 20), Plaintiff pleaded his UCL claim with reasonable particularity.

**III. HP's Misrepresentations and Omissions Properly Form the Basis of Plaintiff's UCL Claim**

HP contends that Plaintiff's UCL allegations are insufficient as a matter of law for two reasons. First, HP says Plaintiff's claim fails because he does not allege that he suffered any actual injury as a result of HP's misrepresentations or that he relied upon those misrepresentations. *See* HP Mem. at 7-8. Second, HP contends that its misrepresentations constitute non-actionable puffery and thus, are not actionable. *Id.* Once again, HP is wrong.

The over-arching reason why HP is wrong is because HP treats Plaintiff's UCL claim as solely a deceptive advertising claim, divorcing its advertising from the larger course of conduct that forms the basis for Plaintiff's complaint. Plaintiff's claim for unfair business practices encompasses far more than HP touting the computer's video card, the "NVIDIA GeForce GPU with 8X APG," as having "the most cinematic graphics and special effects," when, in fact, the motherboard on which the video card is seated "experience[es] a high rate of failure" and necessitates replacing the video card with an older, slower one. *See* Complt., ¶¶ 10, 20. The gravamen of Plaintiff's claim is that HP is aware of a defect in its computers yet refuses to warn an owner of the defect or even repair the computer in a manner that affords the owner the benefit of his bargain, which was paying $2,000 for a "high performance" notebook which "allows users to enjoy movies, music, games, art and photography to its fullest."

1    Plaintiff's allegations about HP's wrongful conduct are similar to those routinely

2  surviving pleading challenges. For example, in *Pastoria v. Nationwide Insurance*, 112 Cal. App.

3  4th 1490, 1496-97 (2nd Dist. 2003), the court concluded plaintiffs stated a claim for fraudulent

4  business practices when they alleged the insurance company knew that it had decided to make

5  material changes to its insurance policies, but refused to tell policyholders of the imminent

6  changes until after it sold the policies to the customers. The same theme – that HP had material

7  information that it failed to disclose – underlies Plaintiff's UCL claim here.

8    In *Blakemore v. Superior Court*, 129 Cal. App. 4th 36, 49 (2nd Dist. 2005), plaintiff

9  alleged that Avon's practice regarding its treatment of its sales representatives' orders for Avon

10 products was inconsistent with its stated policy regarding such orders, and thus was deceptive.

11 *Id.*, at 49.  The court held that these allegations stated a UCL claim.  *Id.*  Here, Plaintiff similarly

12 alleges that HP's practices are inconsistent with its stated warranty policy. *Compare* Complt., ¶¶

13 11, 12 (warranty policy) *with* Complt., ¶¶ 13, 18 (actual practices). In myopically focusing on

14 Plaintiff's advertising allegations, HP ignores Plaintiff's actual theory of wrongful conduct, and

15 consequently fails to meet its burden of showing that he lacks a cognizable legal theory or lacks

16 facts supporting a cognizable legal theory. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696,

17 699 (9th Cir. 1990).

18   **A.    Plaintiff Adequately Alleges Injury in Fact and Causation**

19   Even assuming Plaintiff's claim was premised solely on HP's advertising, Plaintiff

20 adequately alleged causation and injury relating to the advertising.  By operation of Proposition

21 64, a UCL plaintiff must allege injury resulting from the defendant's unfair competition.  *See*

22 *Pfizer Inc.*, 2006 WL 1892581 *10.[3]  Thus, in order to have suffered an injury resulting from an

23 ───────────────────────

24   [3] By referencing the standard articulated in *Pfizer*, Plaintiff does not concede the
correctness of that standard.  Requiring reliance, even in the wake of Proposition 64, would not

25 only make the UCL redundantly overlap common law tort claims, but also would "eviscerate any
purpose that the UCL . . . [has] independent of common law fraud." *Anunziato v. eMachines,*

26 *Inc.*, 402 F. Supp. 2d 1133, 1138 (C.D. Cal. 2005).  Instead, a plaintiff alleges injury where the
manufacturer of a product makes false representations as to its characteristics since a consumer

27 "is unquestionably harmed as a result of the falsity because he was shortchanged." *Id.*

28 ─────────────────────────────────────────

1    alleged misrepresentation, a plaintiff would have had to actually rely on the alleged

2    misrepresentation. *See id.*, at *9.

3         Here, Plaintiff alleges that he and consumers so relied: "HP's representations and

4    warranties *encouraged* consumers to pay over $2000 for this 'high performance,' fast, top-of-

5    the-line notebook computer. *Based on HP's representations*, Pavilion owners reasonably

6    expected that they were purchasing a high-end notebook free of defects, and also *reasonably*

7    *expected* that if a defect was discovered, the necessary repairs or replacements to fix that defect

8    would be covered by the warranty." Complt., ¶ 12 (emphasis added).  Indeed, the very act of

9    purchasing the computer is consistent with reliance on HP's representations about the product's

10   characteristics.

11        Moreover, Plaintiff is entitled to an inference of reliance.   "[A]n inference of reliance

12   arises if a material false representation was made to persons whose acts thereafter were

13   consistent with reliance upon the representation." *Occidental Land, Inc. v. Sup. Ct.*, 18 Cal. 3d

14   355, 363 (1976).  *See also Vasquez v. Sup. Ct.*, 4 Cal. 3d 800, 814 (1971) (reliance on false

15   representations need not be shown by direct evidence: "The fact of reliance upon alleged false

16   representations may be inferred from the circumstances attending the transaction which

17   oftentimes afford much stronger and more satisfactory evidence of the inducement which

18   prompted the party defrauded to enter into the contract than his direct testimony to the same

19   effect.").  "A misrepresentation of fact is material if it induced the plaintiff to alter his position to

20   his detriment.  Stated in terms of reliance, materiality means that without the misrepresentation,

21   the plaintiff would not have acted as he did." *Massachusetts Mutual Life Ins. Co. v. Sup. Ct.*,

22   97 Cal. App. 4th 1282, 1294 (4th Dist. 2002) ("*Mass Mutual*"), quoting *Caro v. Procter &*

23   *Gamble Co.*, 18 Cal. App. 4th 644, 668-69 (4th Dist. 1993).

24        Here, HP emphasized the "high performance"of the NVIDIA graphics card, and

25   described the computer with consistent themes that made purchasing the computer synonymous

26   with purchasing an integrated digital entertainment package, suitable for "play[ing] everyday PC

27   games," "watching DVDs," and "enjoying music . . . art and photography to its fullest." Complt.,

28

¶¶ 9-10. The graphics card is essential to enjoying the computer as the digital entertainment system HP described. What Plaintiff and consumers got, however, was a computer that could not dissipate the heat generated by the NVIDIA graphics card, and either would have to be operated in low-grade VGA mode or would fail altogether. Complt., ¶ 14. HP did not disclose the limitations of the very features it was touting. Indeed, to this day, HP conceals from consumers the information documented in its service bulletin. Complt., ¶ 23.

These misrepresentations and omissions are material because, without them, Plaintiff would not have purchased his Pavilion notebook computer. Plaintiff's purchase of his computer is consistent with his reliance on HP's widely disseminated representations that the Pavilion was a "high performance wireless notebook . . . which allows users to enjoy movies, music, games, art and photography to its fullest," which was warranted to be "free from defects in materials and workmanship," and thus, and thus, an inference of reliance arises.

*Mass Mutual* illustrates the point. There, plaintiff policyholders brought a class action against Mass Mutual for violations of the UCL and the Consumer Legal Remedies Act ("CLRA") resulting from Mass Mutual's failure to disclose its own conclusions about its high discretionary dividend rate and its plans to lower the rate and, as a result, defeat the vanishing premium feature of the insurance product at issue. *Mass Mutual*, 97 Cal. App. 4th at 1286. The trial court certified a class of purchasers of the insurance product and Mass Mutual appealed, contending that plaintiffs' claims were not suitable for class treatment because individual issues predominated with regard to the sales presentation each potential class member received. *Id*. The appellate court disagreed, holding that "[i]n order to establish liability for a nondisclosure under either the UCL or the CLRA, plaintiffs need not present individual proof that each class member relied on particular representations made by Mass Mutual or its agents." *Id*.

In reaching that conclusion, the court discussed inferred reliance. *Id*. at 1292-94. The court stated an inference of reliance was appropriate because "plaintiffs contend Mass Mutual failed to disclose its own concerns about the premiums it was paying and that those concerns would have been material to any reasonable person contemplating the purchase of [the insurance

product at issue]." *Id*. at 1293. The same is true here. Here, HP failed to disclose the a defect that eviscerates the defining attribute of the computer. Overheating necessitating a lower-grade graphics card would have been a material fact to any reasonable person contemplating the purchase of a zd7000 computer, marketed by HP to contain an NVIDIA GeForce graphics card, which integrates "digital entertainment" with "high performance."

**B.    Representations Made in HP's Marketing Materials Properly Form A Basis For Plaintiff's UCL Claim**

HP characterizes its advertising as "generalized, vague and unspecific statements" that "constitute mere puffery upon which a reasonable consumer could not rely." HP Mem. at 8. But HP's representations cross the line from puffery to actionable misrepresentations because HP made factual representations concerning an important characteristic of the product. *Accord Osborne v. Subaru of America, Inc.*, 198 Cal. App. 3d 646, 660 (3rd Dist. 1998) ("Sellers are permitted to 'puff' their products by stating opinions about the quality of the goods so long as they don't cross the line and make factual representations about important characteristics . . .").

As discussed above, the defining characteristic of the zd7000, as repeatedly emphasized by HP, was its multi-media might. HP described the computer as a "high performance wireless notebook computer which integrates *digital entertainment, photography, and Internet computing* into a sophisticated design with desktop comfort. *Functioning like an in-home digital entertainment and photo studio*, the Pavilion [] incorporates a *high resolution* 17-inch widescreen display which *allows users to enjoy movies, music, games, art, and photography to its fullest*." Complt., ¶ 9 (emphasis added). HP said zd7000 owners would have the capability of "watch[ing] DVDs with a wide viewing angle" and "play[ing] everyday PC games," in part due to the "NVIDIA GeForce GPU with 8X APG" having "the most *cinematic graphics and special effects*." *Id*. ¶ 10 (emphasis added).

The defect, however, does not allow "users to enjoy movies, music, games, art, and photography to its fullest." Rather, zd7000 owners' displays "show vertical red lines and other checkered patterns and without warning will go blank and reboot in safe mode." *Id*., ¶ 13. "Due

1   to the consistent display distortions and intermittent shutting down of their notebook computers,

2   Pavilion owners are unable to effectively use their 'in-home digital entertainment notebook' and

3   frequently only can run their notebook in safe-mode or VGA mode." *Id*., ¶ 15. Thus, contrary to

4   the high performance multi-media capabilities HP espoused, when running the Pavilion in safe-

5   mode or VGA mode, "[t]he graphics [] are low-grade at best and defeat the purpose of

6   purchasing a notebook with special digital features. These modes provide the most basic

7   resolution using the least amount of colors and visible scan lines." *Id*. Due to the overheating

8   problems, the motherboard eventually "fries" and the computer "will no longer turn on." *Id*.,

9   ¶ 16. In short, Plaintiff and other consumers were deprived of the benefit of what HP described

10  as one of the zd7000's most important characteristics. HP's representations, therefore, cross the

11  line from puffery to actionable misrepresentations.

12      HP's representations also go beyond mere puffery when one considers what information

13  HP failed to disclose. It is well settled that the UCL prohibits not only advertisements and

14  statements that are actually untrue, but also those statements which may be accurate on some

15  level, but nonetheless tend to mislead by the failure to disclose relevant information. *See Day v.

16  AT&T Corp.*, 63 Cal. App. 4th 325, 332 (1st Dist. 1998). Here, HP failed to warn its customers

17  of the known problem and, to this day, continues to fail to warn customers about the defect

18  documented in its service bulletin, which eviscerates the multi-media features advertised.

19  Complt., ¶¶ 20, 23. Thus, to the extent HP's representations concerning the digital capabilities

20  of its Pavilion computers constitute puffery (a position Plaintiff does not adopt), those

21  representations are nonetheless actionable because they are misleading relative to the

22  contradictory information in HP's possession.

23      HP's reliance on *Anunziato* does not change this result. While the court in *Anunziato*

24  found some of the statements made by eMachines to be non-actionable puffery, eMachines

25  described its computer in general terms without specific reference to any objectively verifiable

26

27

28

1   product capabilities.[4]  Here, HP made specific statements concerning the Pavilion's high

2   performance digital capabilities that are capable of objective verification. For instance, HP

3   spotlighted the NVIDIA GeForce graphics card and mentioned the 17-inch widescreen display as

4   allowing users to enjoy specific multi-media activities. Whether these components actually

5   perform in the manner represented by HP is capable of objective verification; Indeed, HP's

6   service bulletin confirms that the components were not capable of providing the performance

7   advertised — the graphics card causes the system board to fail and the widescreen displays

8   "appear corrupted." Complt., ¶ 20. *Anunziato* does little to assist HP.

9         **C.**     **HP's Statements in its Warranty are Actionable**

10        In addition to defending its core product description as puffery, HP disputes that its

11  statements in the written warranty can form the basis of a UCL claim.  Plaintiffs agree that the

12  appropriate test is whether a statement is capable of objective verification.  *See Consumer*

13  *Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1352, 1361-62 (2nd Dist. 2004).  Here,

14  HP promised that its products would be "free from defects" in materials and workmanship for

15  the full warranty period, and that should any problems arise, HP would repair or replace the

16  computers. *See* Complt., ¶¶ 11, 18, 26. These are factual assertions whose truth or falsity can be

17  determined.  The computers either do or do not contain a defect, and HP either did or did not

18  repair or replace computers. In this way, Plaintiff's allegations are precisely like those held

19  actionable in *Anunziato*. *Id.*, at 1140 (holding statement in user manual that computer passes

20  through "the most stringent quality control tests" is specific factual assertion "which could be

21  established or disproved through discovery").

22

23  _____

24      [4] *See, e.g., Anunziato*, 402 F. Supp.2d at 1139-40 ("We are sure that you'll be pleased
    with the *outstanding quality, reliability, and performance* of your new notebook.  Each and

25  every eMachines notebook *uses the latest technology* and passes through the most stringent
    quality control tests to ensure that you are provided with the best product possible. eMachines

26  stands behind our value proposition to our customers — to provide best-of-class service and
    support in addition to *high-quality*, *brand-name components* at affordable prices" (emphasis

27  added)).

28

1    Citing *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965 (1st Dist. 1997), HP contends

2  that "Plaintiff is impermissibly attempting to shoehorn a garden variety breach of warranty claim

3  into a UCL claim," because "California law is clear that a simple breach of warranty is not

4  actionable under the UCL." HP Mem. at 10.  HP's reliance on *Klein* is misplaced.

5    In *Klein*, a case involving contaminated dog food, plaintiffs alleged the dog food

6  manufacturer violated the fraudulent prong of the UCL because the label on the contaminated

7  product stated: "You can feed Nature's Recipe . . . with confidence that you are doing something

8  good for your dog."  *Id.*, at 970.  While HP correctly notes that the court held that the

9  unintentional distribution of unmerchantable pet food did not violate the UCL, what HP fails to

10  mention is that the procedural posture in *Klein* is significantly different from the case at bar.  The

11  holding in *Klein* followed summary judgment and was not issued at the demurrer stage.

12  Nonetheless, HP cites *Klein* for its broad proposition that a breach of warranty is not actionable

13  under the UCL.  *See* HP Mem. at 10. Given the differing procedural postures, HP's proposition

14  proves too much.

15    More tellingly, HP fails to discuss the facts upon which the *Klein* court concluded there

16  was no violation. In *Klein*, upon confirming customer complaints of the defect, Earth Elements:

17  (1) announced an extensive recall campaign; (2) sent press releases to print and broadcast media;

18  (3) established a toll free number for consumer inquiries; (4) notified is distributors about the

19  recall; (5) gave credit to retailers for returned products to facilitate removing the offending

20  product from the shelves; (6) refunded or replaced the product for all consumers upon request

21  and without proof of purchase; and (7) reimbursed consumers for verifiable veterinary expenses

22  and property damage.  *See Klein*, 59 Cal. 4th at 968.

23    Here, HP failed to engage in any similar conduct. For example: (1) "HP did not warn its

24  customers of the problem or try to prevent them from suffering system failures;" (2) HP failed

25  "to warn consumers about the defects . . . or to effectively remedy the problems and defects

26  inherent in the Pavilion;" (3) "HP sat silently while consumers purchased the defective notebook

27  and continues to sit silently today as a high percentage of the Pavilions fail to perform despite

28

1    HP's knowledge of the malfunctions;" (4) "HP has not recalled the computers;" (5) "HP charges

2    consumers to 'repair' the notebook computers if the notebook fails after the warranty period;"

3    (6) "HP's policies and conduct have forced some consumers to pay a third party to try to repair

4    the problem;" (7) "HP also fails to properly service computers under warranty by replacing

5    defective Pavilions with equally defective 'repaired' Pavilions or Pavilions with lower-grade

6    video cards;" and (8) "Contrary to HP's promise in the Extended Service Plan, Pavilion owners

7    who paid for such warranties do not get the benefit of what they paid for because the turnaround

8    for replacing the motherboard takes weeks." Complt., ¶¶ 23-27. All of this conduct occurred

9    against the backdrop of HP representing the zd7000 as a high performance computer with digital

10   capabilities that is free from defects. Unlike Earth Elements, HP's conduct reflects an effort to

11   mislead the public into accepting defective computers as defect-free. As such, Plaintiff

12   sufficiently states a claim under the UCL.

13   **IV.    The UCL Applies Nationwide To Wrongful Conduct Emanating From California**

14          HP argues that the UCL cannot apply to the claims of a plaintiff residing outside of

15   California. In so doing, HP wrongly focuses on Plaintiff's purchase of the subject computer.

16   The conduct at issue, however, is HP's misrepresentations, its knowing concealment of material

17   facts, its failure to adequately repair its defective computers, and its breach of express promises.

18   These unfair practices took place in California, where HP's headquarters is located.

19          In *Diamond Multimedia Systems v. Sup. Ct.*, 19 Cal. 4th 1036 (1999), the California

20   Supreme Court determined that California law applied to out-of-state purchasers who bought or

21   sold stock the price of which was affected by market manipulation even though the purchases

22   took place outside of California. *Id.* at 1041. The court did so because the alleged fraudulent

23   conduct took place in California, holding that "California has a legitimate and compelling

24   interest in preserving a business climate free of fraud and deceptive practices." *Id.* at 1064.

25   Likewise, in *Clothesrigger v. GTE Corp.*, 191 Cal. App. 3d 605 (4th Dist. 1987), the court

26   determined that applying the UCL to non-California citizens was appropriate because

27

28

1  defendant's principal place of business was located in California and the alleged fraudulent

2  misrepresentations forming the basis of the claims emanated from California. *Id*. at 613.

3        Here, HP's headquarters is located in Palo Alto, California. This is where HP approved

4  the representations in its warranties and marketing and where HP decided to keep silent about

5  the defect. Because Plaintiff's claims center on HP's conduct in light of a known defect, and that

6  conduct emanated from California, Plaintiff's UCL claim is entirely proper.[5]

7  **V.**    **Plaintiff Adequately States a Claim for Breach of Warranty**

8        As a threshold matter, it is important to note that Plaintiff alleges HP breached and

9  continues to breach the express written warranty in three distinct ways. First, HP failed to

10 provide a computer free from defect as promised in the warranty, and therefore breached  its

11 warranty at the time of sale ("Defective-At-Purchase Claim"). *See* Complt., ¶¶ 13 - 17.  Second,

12 despite knowing of the defect, HP fails or refuses to repair the computer as promised in the

13 warranty ("Failure-To-Repair Claim").  *See* Complt., ¶¶ 18 - 20, 26, 29.  Third, HP fails and

14 refuses to provide the expedited three day repair promised in the "HP Total Care Extended

15 Service Plan" ("Expedited Repair Claim"). *See* Complt., ¶ 27.

16       HP does not distinguish between Defective-At-Purchase and Failure-To-Repair Claims,

17 but rather attacks them generally relying on *Anunziato* (*see* HP Mem. at 12-13) and based on a

18 misguided reliance argument.  As explained in detail below, *Anunziato* does not address

19 computers alleged to be defective at purchase and, in relation to the Failure-To-Repair Claim,

20 *Annunziato* runs contrary to the Supreme Court of California's decision in *Seely v. White Motor*

21 *Company*, 63 Cal. 2d 9, 13-14 (1965).  Likewise, HP's reliance argument is of no moment

22 because Plaintiff does not plead that HP has an obligation to repair the computer for a defect first

23 arising outside of warranty, but instead alleges HP failed or refused to repair a defect reported

24

25     [5]  The cases upon which HP relies are readily distinguishable.  In *Norwest Mortgage, Inc. v. Sup. Ct.*, 72 Cal. App. 4th 214 (4th Dist. 1999), the key factor in the court's decision was that

26 the defendant — unlike HP — was not headquartered in California.  In *Speyer v. Avis Rent A Car System, Inc.*, 415 F. Supp. 2d 1090 (S.D. Cal. 2005), the court's holding was predicated on

27 the legislative intent to the contrary expressed in the underlying statute upon which plaintiffs' UCL claims were based.

28

PLTF.'S OPP. TO DEF.'S MOT. TO DISMISS

CASE NO. C-06-2254 RMW                             17

1   and/or known within the warranty.  Finally, HP's motion ignores that Plaintiff alleged an

2   unconscionability defense to HP's assertion of a time bar, and unconscionability is not

3   appropriately resolved in a Rule 12(b)(6) motion.

4         A.      **HP's Time Bar Defense Does Not Preclude Plaintiffs' Claims**

5                 1.      ***Anunziato* does not apply when the manufacturer knew of the defect
                         at the time of sale**

6

7         The issue in *Anunziato* was whether defendant eMachines breached its warranty by

8   making an initial warranty repair, but refusing to cover a second repair once the warranty had

9   expired.  eMachines characterized the second repair as for a "subsequent" malfunction, while

10  Anunziato argued that eMachines simply masked the problem until after the warranty term

11  expired, forcing him to pay for the inadequate repair.  The *Anunziato* court held in eMachines'

12  favor, finding no express warranty claim had been plead.  *Anunziato,* 402 F. Supp. 2d at 1141.

13        Plaintiff's Defective-At-Purchase Claim is distinguishable because *Anunziato's* holding

14  is predicated on eMachines' failure to repair defects occurring *after* the warranty period, while

15  Plaintiff in the present case alleges that HP breached the warranty at its *formation* by failing to

16  provide a computer free from defects in the first instance.  *See* Complt., ¶¶ 11 - 17, 23, 36, 47,

17  48.  The issue of a breach at the outset of the transaction is simply not addressed in *Anunziato*

18  and, as such, HP's reliance on its holding is misplaced.

19                2.      ***Anunziato* should not be followed regarding HP's breach for failure to
                         repair**

20        As for Plaintiff's Failure-To-Repair Claim, this Court should not follow *Anunziato*.  The

21  *Anunziato* opinion cites no authority for its holding, contains no analysis, fails to provide any

22  rationale for its decision, and invites litigation where there should be none.  In contrast, in a

23  reasoned opinion citing precedent, the Supreme Court of California  held that when a warrantor

24  fails to correct a defect as promised, it is liable for the breach of that promise in a breach of

25  express warranty action.  *See Seely*, 63 Cal. 2d at 14.  Other jurisdictions are in accord.  *See, e.g.,*

26  *Chrysler Corp. v. Wilson Plumbing Co.,* 132 Ga. App. 435 (1974) (failure outside of warranty

27  mirroring failure purportedly repaired in warranty sufficient to allow recovery for breach of

28

1   express warranty); *Alvine v. Mercedes-Benz of North America*, 620 N.W. 2d 608 (S.D. 2001)

2   ("defects occurring before the expiration of the warranty period should be repaired in accordance

3   with the warranty, and, if not then a warrantor's liability for breach of warranty continues even

4   after the expiration of the term of the express warranty").

5          In *Seely*, a truck manufacturer offered a warranty that its truck would be "free from

6   defects in material and workmanship" and limited its obligation to under the warranty to repair

7   or replacement. *Seely*, 63 Cal.2d at 13. The truck manifested a defect known as "galloping"

8   whereby it bounced violently when driven. *Id*. The purchaser took the truck in for repairs, but

9   the truck continued to manifest the galloping after the warranty expired. *Id*. The purchaser

10  subsequently successfully sued the manufacturer for breach of warranty. *Id*. The California

11  Supreme Court upheld the award on the basis that a failure to correct a defect as warranted is a

12  breach of warranty. *Id*., at 14.

13         The circumstances in the present case are similar to *Seely*. Here, HP warranted its

14  product to be free from defects in material or workmanship and limited its obligation to repair or

15  replacement. *See* Complt., ¶ 11. Plaintiff sought those remedies, but the computer remained

16  defective after the warranty expired. *See* Complt., ¶¶ 26, 27. Like *Seely*, Plaintiff states a claim

17  because, simply put, the express warranty cannot expire for unrepaired or unsuccessfully

18  repaired defects. *Seely,* 63 Cal. 2d at 14.

19         The *Anunziato* decision is an anomaly. It makes no reference to *Seely* and does not

20  provide any rationale for its contradictory holding. Moreover, following *Anunziato* generates

21  several undesirable consequences. First, it opens the door for warrantors to intentionally delay

22  repair or superficially repair until the express warranty period expires, shifting the risk of loss to

23  the consumer and depriving purchasers of the benefit of their bargain. Second, *Anunziato*

24  invokes bad public policy. It requires consumers to file lawsuits prior to the expiration of their

25  warranties simply to preserve rights *just in case* the manufacturer insufficiently repaired the

26  defect. This is wasteful, demanding the consumer sue based on speculation and requiring a

27

28

1    manufacturer to respond when there might not be any further issue with the product. *Anunziato* is

2    wrongly decided on this point and should not be followed.

### 3. Plaintiff alleges the time limitation is unconscionable

4        HP argues that Plaintiff's Defective-At-Purchase and Failure-To-Repair claims are

5    contractually time barred due to the warranty time limitation.  HP's argument, however, fails to

6    accept as true Plaintiff's allegations that the warranty time limitation is unconscionable. *See*

7    *Pareto,* 139 F. 3d at 699 (allegations must be taken as true); Complt., ¶ 47 (unconscionability

8    allegation).  If the time limitation is unconscionable, it cannot be enforced to bar Plaintiff's

9    claims.  Consequently, because the Court must assume the unconscionability allegations as true,

10    it would be improper for the Court to grant HP's motion. *Cf. Supermail Cargo, Inc. v. United*

11    *States*, 68 F. 3d 1204, 1206 (9th Cir. 1995)(equitable tolling doctrine not amenable to resolution

12    on Rule 12(b)(6) motion).

13        In order to assert a defense to a contract under the doctrine of unconscionability, a

14    plaintiff must plead that (a) the contract was unconscionable at the time made; (b) the contract is

15    one of adhesion or resulted from a gross disparity in bargaining power; and (c) the provision in

16    question either falls outside the reasonable expectations of the party lacking bargaining power or

17    is unduly oppressive or unconscionable. *See* Cal. Civ. Code § 1670.5(a); *Patterson v. ITT*

18    *Consumer Fin. Corp.,* 14 Cal. App. 4th 1659, 1664 (1st Dist. 1993).  Here, Plaintiff properly

19    alleges such a defense:

20            the time limitations associated with those express warranties do
not adequately protect Plaintiff and the Class.  Among other

21            things, Class members had no meaningful choice in determining
those time limitations; the terms of the express warranties

22            unreasonably favored HP over Class members; a gross disparity in
bargaining power existed as between HP and Class members; and

23            HP knew its notebook computers were defective and would fail
well before their useful lives, thereby rendering the warranty

24            insufficient, inadequate, and unconscionable.

25    Complt. ¶ 47.  *See also* Complt., ¶¶ 13-17, 36.

26        Whether Plaintiff can *prove* this defense is not an appropriate subject for Rule 12(b)(6)

27    determination because it requires this Court to examine and weigh matters outside the pleadings.

28

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F. 3d 912, 925 (9th Cir. 2001) (absent specific circumstances, court cannot consider material outside complaint); *Independent Ass'n of Mailbox Center Owners, Inc. v. Sup. Ct.*, 133 Cal. App. 4th 396, 407 (4th Dist., 2005) ("[A] claim of unconscionability often cannot be determined merely by examining the face of a contract, but will require inquiry into its setting, purpose, and effect."). Thus, because Plaintiff sufficiently avers an unconscionability defense to the contractual time bar HP proposes, and because resolving the competing contentions requires this Court to look beyond the pleadings, HP's time bar defense cannot be a basis for dismissing the complaint.

**B.     HP's Reliance Argument Mischaracterizes Plaintiff's Allegations and Provides No Basis For Dismissal**

In order to shoehorn a reliance argument into its brief, HP mischaracterizes the allegations underlying Plaintiff's Failure-To-Repair Claim. HP twists Plaintiff's allegations, claiming that Plaintiff alleged he "relied on the terms of a one-year warranty to expect that HP had an obligation to repair his computer outside of the warranty period." *See* HP Mem. at 13. HP does this in order to manufacture an argument that such reliance is not reasonable; however, Plaintiff makes no such allegation. What Plaintiff alleges is that "HP [] fails to properly service computers under warranty by replacing defective Pavillions with equally defective "repaired" Pavillions or Pavillions with lower-grade video cards." *See* Complt., ¶ 26. The crux of Plaintiff's claim is not that HP should repair the computer regardless of when it malfunctioned, but rather that HP should actually provide the repairs as warranted (*i.e.*, return the computer to the condition promised at purchase, not replace defective parts with new defective parts or lower quality components). HP's hopeful interpretation of Plaintiff's allegation provides no basis for dismissing his claim.

Regardless of HP's mischaracterization, reliance is not a pleading requirement for a breach of warranty claim and does not provide a basis for dismissal. Indeed, a seller's affirmations of fact regarding goods is presumed to be part of the basis of the bargain and to have been relied upon as one of the inducements for the purchase of the product. *Hauter v.*

1   *Zogarts*, 14 Cal. 3d 104, 115 (1975) (U.C.C. requires no proof of reliance and "represents a

2   significant change in the law"); *Keith v. Buchanan*, 173 Cal. App. 3d 13, 23 (2nd Dist., 1985).

3   At best, HP's argument is an affirmative defense which is not properly decided on a motion to

4   dismiss, as it would require the Court to go outside the pleadings to decide.  *See Arpin,* 261 F.3d

5   at 925*; Judicial Council of California Civil Jury Instructions* 1240, Affirmative Defense

6   Warranty – Not "Basis of Bargain" (2006, Products Liability).  Moreover, even if Plaintiff were

7   required to allege reliance, he has done so.  Plaintiff alleges he submitted his computer for repair

8   in accordance with the warranty.  *See* Complt., ¶¶ 28, 29.  This is sufficient to allege, and prove,

9   reliance.  *Seely*, 63 Cal.2d at 13 ("The reliance on the warranty, and the warranty itself, are

10  manifested by plaintiff's continued efforts to have the truck repaired, and by defendant's

11  acceptance of responsibility to correct the [defect]").  There is no basis to dismiss Plaintiff's

12  claim for failure to allege reliance.

13  **VI.   Expedited Repair Claims Should Not Be Dismissed Under Rule 12(b)(1)**

14        HP also argues that Plaintiff does not have standing to assert the Expedited Repair Claim.

15  HP's argument is actually an attack on Plaintiff's typicality as a class representative, however,

16  and does not provide a basis for dismissal.  Alternately, if the Court sees merit in HP's Rule

17  12(b)(1) Challenge, Plaintiff should be permitted to add a plaintiff to assert that claim.

18        **A.   HP Improperly Attacks Plaintiff's Typicality at the Pleading Stage**

19        HP's Rule 12(b)(1) argument that Plaintiff does not have standing to assert the Expedited

20  Repair Claim is a premature attack on Plaintiff's typicality.  Class representatives frequently

21  raise claims on behalf of the class that are beyond the plaintiff's individual claims.  This is

22  proper as long as the class representative possesses the same interests and suffers the same

23  generic type of injury as the putative class members.  *General Tel. Co. of Southwest v. Falcon*,

24  475 U.S. 147, 159 (1982).  The class representative's injuries need not necessarily arise from the

25  identical factual circumstances of all class members.  *Id.*

26        The crux of Plaintiff's warranty claims, regardless of whether stemming from the express

27  warranty packaged with the computer or the extended warranty available for purchase, is that HP

28

breached the warranties by selling a defective computer and then failing or refusing to repair the computer as promised.  The Expedited Repair Claim differs only in that it includes HP's failure to meet the three day, "express repair" promise made in the extended warranty.  The core conduct Plaintiff challenges is identical regardless of which warranty is being considered, and as such Plaintiff possesses the same interests and suffers the same generic injury as the putative class members with Expedited Repair Claims.  The proper procedural stage to consider Plaintiff's typicality is at class certification, not at the pleading stage.  Accordingly, HP's Rule 12(b)(1) motion should be denied.

> **B.**     **Alternately, Plaintiff is Entitled to Pre-certification Discovery to Identify a Named Plaintiff for the Expedited Repair Claim**

        In the event this Court finds Plaintiff does not have standing to assert the Expedited Repair Claim, Plaintiff should be permitted to amend his complaint to add a proper plaintiff.  *See* Fed. R. Civ. Proc. 15(a) (leave to amend should be "freely given").  To do so, Plaintiff is entitled to pre-certification discovery from HP in order to locate a substitute plaintiff for the claim.  *See Best Buy Stores, L.P. v. Sup. Ct.*, 137 Cal. App. 4th 772 (4th Dist. 2006).

        In *Best Buy*, Mark Boling, a lawyer and real party in interest, brought a class action in *pro per* against Best Buy Stores.  The trial court issued an order to show cause why the case should not be dismissed because under California law, a conflict of interest prohibits a lawyer from serving as both a class representative and class counsel.  *Id.* at 774.  In response, plaintiff moved to compel pre-certification discovery of public class members to locate a class representative.  Specifically, he sought to have the court compel Best Buy to send a written notice to customers explaining the action and inquiring as to interest in serving as a class representative.  *Id.* at 775.  The trial court granted plaintiff's motion and Best Buy challenged the order on appeal.  The Court of Appeal upheld the order, modifying the letter to protect the privacy rights of Best Buy's customers.

        A similar approach is warranted here.  Allowing such discovery serves the interests of justice and judicial economy as significant overlap exists in the facts needed to prove each of the

1   warranty claims.  The core for each claim is identical — *i.e.*, that HP breached the warranties by

2   selling a defective computer and also by failing or refusing to repair the computer as promised

3   — and the nature and duration of HP's repair attempts are the same regardless of which warranty

4   is considered.  *See* Complt., ¶ 27.  Accordingly, many of the facts and questions underlying the

5   Expedited Repair Claim will be explored during the litigation of the other warranty claims for

6   which there is no Rule 12(b)(1) challenge.

7       In sum, if Plaintiff does not have standing to assert the Expedited Repair Claims, then in

8   the interests of litigating these overlapping issues in the same action, thereby conserving judicial

9   resources, the resources of the parties, and ensuring judicial consistency, this Court should grant

10  Plaintiff leave to conduct pre-certification discovery in the manner described in *Best Buy* for the

11  purpose of identifying a new named plaintiff for that claim.  If this Court is unwilling to allow

12  such discovery, Plaintiff requests sufficient leave to amend for him to locate a plaintiff who

13  satisfies HP's Rule 12(b)(1) concerns.

14  **VII   Privity Of Contract Is Not Required Here**

15      While there is room to debate whether California dispensed with the privity requirement

16  in actions for breach of express warranty (*compare Seely*, 63 Cal. 2d at 13-14 ("Since there was

17  an express warranty to plaintiff in the purchase order, no privity of contract was required.") *and*

18  *Hauter*, 14 Cal. 3d at 115 ("Privity is not required for an action based upon an express

19  warranty.") *with Margarita Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 580 (N.D.

20  Cal. 1999)("[T]he Court concludes that privity of contract remains a requirement in express

21  warranty actions.")), resolving this debate in Plaintiff's favor is not necessary to overrule HP's

22  motion because Plaintiff's action falls within an exception that HP's own authorities respect.

23      Both *Margarita Cellars* and *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682 (1954),

24  acknowledge that privity is not required where a writing by the manufacturer forms the basis of

25  the express warranty.  *See Burr*, 42 Cal. 2d at 696 (recognizing exception to privity rule where

26  manufacturer makes representations in labels or advertising material); *Margarita Cellars*,

27  189 F.R.D. at 579 ("written warranties similar to advertisements and labels . . . arguably fall

28

within *Burr's* exception to the privity rule."). HP's Limited Warranty Statement, which is included with every computer, fits the category of a writing by the manufacturer sufficient to negate the privity requirement. *Accord Ab Avnet EMG v. Sierra Semiconductor Corp.*, No. C-93-0087, 1993 WL 280504, * 5 (N.D. Cal. July 9, 1993) (noting exception to privity based on writing when purchaser is consumer).

## CONCLUSION

Plaintiff respectfully requests that the Court deny HP's Motion to Dismiss Plaintiff's Complaint.

DATED: July 28, 2006                         Respectfully submitted,

**GREEN WELLING LLP**


By: _____/s/_____
        Jenelle Welling

Robert S. Green
595 Market Street, Suite 2750
San Francisco, CA 94105
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
cand.uscourts@classcounsel.com

*Attorneys for Plaintiff*