**United States District Court**
For the Northern District of California

1

2

3

4                                                      **E-FILED on** __10/31/06_____

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

12   MICHAEL BROTHERS, On Behalf of Himself        No. C-06-02254 RMW
     and All Others Similarly Situated,
13                                                  ORDER GRANTING DEFENDANT'S
                        Plaintiff,                  MOTIONS TO DISMISS AND DENYING
14                                                  DEFENDANT'S MOTION TO STRIKE
                 v.
15                                                  **[Re Docket Nos. 9, 11]**
     HEWLETT-PACKARD CO.,
16
                        Defendant.
17

18

19

20        Defendant Hewlett-Packard Co. ("HP") moves to dismiss the present action pursuant to Fed.

21   R. Civ. P. 12(b)(1) for lack of standing and Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  HP

22   also moves to strike portions of plaintiff's complaint.  Plaintiff Michael Brothers ("Brothers"),

23   seeking to bring this action on behalf of himself and all others similarly situated, opposes the

24   motions.  The court has read the moving and opposing briefs and considered the arguments of

25   counsel.  For the reasons set forth below, the court (1) GRANTS defendant's Fed. R. Civ. P. 12(b)(1)

26   motion to dismiss plaintiff's claim of express breach of warranty based on the HP Total Care

27   Extended Service Plan; (2) GRANTS defendant's Fed. R. Civ. P. 12(b)(6) motion to dismiss; (3)

28   DENIES defendant's Fed. R. Civ. P. 12(e) motion to strike without prejudice to renewal; and (4)

ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE—No.
C-06-02254 RMW
SPT

United States District Court

For the Northern District of California

1    plaintiff is given twenty (20) days leave to amend from the date of this order.

2    **I. BACKGROUND**

3        **A.**    **Factual Allegations**

4        HP manufactures, sells, and services, *inter alia*, notebook computers throughout the United

5    States, including the "Pavilion zd7000" line of notebook computers (collectively, the "Pavilion").

6    Compl. ¶¶ 6-7.  Brothers is a resident of Nevada.  *Id.* ¶ 1.

7        On August 24, 2004 Brothers purchased a Pavilion from Circuit City, paying "over $2,000."

8    *Id.* ¶ 28.  Brothers alleges that in August 2005 the display screen began showing red vertical lines,

9    went blank, and ultimately would not turn on.  *Id.*  Brothers alleges that this malfunction was the

10   result of overheating caused by the Pavilion's inability to dissipate heat.  The overheating eventually

11   led to the motherboard being "fried."  Brothers's Pavilion notebook was apparently still under

12   warranty at the time it malfunctioned.  Brothers contacted HP and received "in-warranty" repairs,

13   essentially a replacement of the motherboard.  Five months later, the display screen on Brothers's

14   Pavilion notebook again exhibited the same problems.  *Id.* ¶ 29.  Brothers called HP and requested

15   that his notebook be repaired.  At this time, Brothers's Pavilion was apparently no longer under

16   warranty.  HP informed Brothers that his notebook was no longer under warranty and that he could

17   either (1) pay $300 to repair the problem or (2) purchase an extended warranty.  *Id.*

18       HP offers a standard one-year warranty with each Pavilion which provides in part:  "HP

19   warrants that the HP hardware product and all internal components of the product that you have

20   purchased or leased from HP are free from defects in materials and workmanship under normal use

21   during the Limited Warranty Period."  *Id.* ¶ 11.  In addition, HP offers the "HP Total Care Extended

22   Service Plan," an extended warranty which customers can purchase separately, and which provides

23   express repairs within three business days.[1]  *Id.* ¶ 29.  Plaintiff alleges that HP also offers the

24   following for problems outside of warranty:  (1) for approximately $600, HP will replace the

25   motherboard; (2) for $45, HP provides a "one time" service plan which provides only telephone

---

26

27       [1]    Plaintiff alleges "[c]ontrary to HP's promise in the Extended Service Plan, Pavilion owners who paid for such warranties do not get the benefit of what they paid for because the turnaround for replacing the motherboard takes weeks."  Compl. ¶ 27.  Plaintiff does not allege that he purchased the Extended Service Plan.

28

support: (3) for $298, HP will repair any problem with the notebook and cover shipping.[2] *Id.* ¶ 22. In addition, HP has in some instances replaced the notebook for Pavilion owners who have had repeated repairs within warranty with "a newer model that does not overheat." *Id.* ¶ 21. Customers may also seek repair services from third parties. *Id.* ¶ 25.

According to the complaint, in February 2006 HP issued an internal "Service Coverage Notice" that the system board in many of the Pavilions requires replacement:

> The notice states, "In some instances customers may contact support because the display on the notebook exhibits one or more of the following behaviors: Blank or black screen. The screen flickers. The display appears corrupted." The notice continues by explaining that the "SPS-BD SYSTEM NV36/128 MB 365894-001" and "SPS-BD SYSTEM NV36/64MB 365893-001" are "experiencing a high rate of failure." The notice recommends replacing the system board with one that has an older slower video card: SPS-BD SYSTEM NV31/128MB 35669-001. This swap requires customer approval and if the customer does not agree to the replacement, the "only option" is to wait at a minimum of 6 to 8 weeks for a motherboard which includes the original video card.

*Id.* ¶ 20.

### B.    Claims for Relief

Brothers essentially seeks (1) restitution against HP for himself (and those similarly situated) under Cal. Bus. & Prof. Code § 17200 *et seq.* and (2) actual damages for HP's alleged breach of express warranty. Brothers alleges that HP markets the Pavilion as "a high performance notebook computer with special graphics features." *Id.* ¶ 7. However, plaintiff contends, the Pavilion fails to serve its intended function because it cannot effectively dissipate the heat produced by its various components, including the graphics card. *Id.* ¶ 8. Plaintiff's complaint alleges that class certification is appropriate (including appointment of plaintiff as class representative and his counsel as class counsel).

Plaintiff alleges two claims for relief. First, Brothers contends that HP engaged in "unfair, unlawful, and/or fraudulent business acts and practices" in violation of Cal. Bus. & Prof. Code § 17200 *et seq.* by: (1) "Selling Pavilions with a known defect"; (2) "Concealing and/or omitting the true facts about the defect to [p]laintiff and [purported class members]"; (3) "Requiring consumers to

---

[2]    It is unclear from the complaint whether the "repair any problem" would include replacement of the motherboard, for which plaintiff alleges HP charges $600. Plaintiff alleges elsewhere that HP quoted him $300 to "repair the problem." *Id.* ¶ 29.

United States District Court
For the Northern District of California

pay for the repair of computers with a known defect"; (4) "Falsely representing that the Pavilion is 'free from defects in materials or workmanship;'" (5) "Falsely representing the Pavilion's 'high-performance' capabilities"; and (6) "Violating the Federal Trade Commission Act, Section 5 by misrepresenting the reliability of goods and employing unfair and deceptive practices in the repair of such goods." *Id.* ¶ 36(a)-(f).  Plaintiff contends that consumers are likely to be deceived into believing they are purchasing a high performance notebook free from defects "and/or that should a defect become apparent, that HP will resolve the defect at no cost to Pavilion owners." *Id.* ¶ 38.  In addition, plaintiff alleges that HP fails to adequately repair the notebooks and continues to conceal the problem from customers and the public. *Id.* ¶ 42.  Plaintiff seeks "full restitution and disgorgement of all ill-gotten monies either acquired or retained by" HP. *Id.* ¶¶ 43-44.

Second, plaintiff alleges "breach of express warranty."  Plaintiff alleges that HP breached various provisions of its written warranty documents, including the promised express repair time stated in its warranties and the implied covenant of good faith and fair dealing.  Plaintiff also claims that the time limitations in the express warranties (presumably, the one-year standard warranty) do not adequately protect plaintiff and the purported class members, that consumers had no meaningful choice in determining the time limitations, that the terms of the express warranty unreasonably favored HP, and that there is a gross disparity in the bargaining power between HP and the purported class members.  Plaintiff further alleges "HP knew its notebook computers were defective and would fail well before their useful lives, thereby rendering the warranty insufficient, inadequate, and unconscionable." *Id.* ¶ 47.

## II.  ANALYSIS

### A.    Rule 12(b)(1) Motion

HP contends that plaintiff does not have standing to claim a breach of express warranty based on any provisions of the HP Total Care Extended Service Plan because plaintiff has not alleged that he purchased such a plan.  In particular, HP takes issue plaintiff's allegations that HP breached the Total Care warranty because it allegedly does not meet the "express" repair turn around time stated in that warranty plan.  Plaintiff cites *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 159 (1982), for the proposition that "[c]lass representatives frequently raise claims on

United States District Court

For the Northern District of California

1  behalf of the class that are beyond plaintiff's individual claims," so long as "the class representative

2  possesses the same interests and suffers the same generic type of injury as the putative class

3  members."

4          It appears that the Supreme Court has not resolved whether the issue presented is a question

5  of standing (as HP argues) or a question of adequacy of class representation (as plaintiff contends).

6  *See Gratz v. Bollinger*, 539 U.S. 244, 263 (2003) (finding that there was both standing and adequacy

7  of class representation issues but recognizing that "[a]lthough we do not resolve here whether such

8  an inquiry in this case is appropriately addressed under the rubric of standing or adequacy, we note

9  that there is tension in our prior cases in this regard").  In the Ninth Circuit, the issue of standing

10  must be addressed before the issue of class certification.  *Easter v. Am. West Financial*, 381 F.3d

11  948, 962 (9th Cir. 2004).  Regardless, the court finds that plaintiff's allegations support neither

12  standing nor provide adequate class representation for a breach of express warranty under the HP

13  Total Care Extended Service Plan.

14          To establish standing a plaintiff must show, among other things, that he has suffered an

15  injury in fact, defined as "an invasion of a legally protected interest which is (a) concrete and

16  particularized and (b) actual or imminent, not conjectural or hypothetical."  *Lujan v. Defenders of*

17  *Wildlife*, 504 U.S. 555, 560 (1992).  Because plaintiff does not allege that he was ever party to an

18  HP Total Care Extended Service Plan, he lacks standing to sue for breach of express warranty under

19  the provisions of that plan.  Even if the court were to consider this as a matter of adequacy of class

20  representation, plaintiff's allegations supporting his claim of breach of express warranty involve only

21  the standard one-year warranty that accompanies all Pavilions.  There are no allegations that this

22  standard warranty has any provision regarding the turn around time of repairs.  On the other hand, as

23  to the Total Care warranty, plaintiff alleges in its claim for breach that HP failed to timely complete

24  repairs.  Therefore, it does not appear that plaintiff's own claims would raise any inferences related

25  to the timeliness of repairs under an express turn around provision.  Indeed, plaintiff's reliance upon

26  *General Telephone* appears misplaced as that case tends to support the conclusion that plaintiff is an

27  inadequate class representative for the breach of express warranty provisions of the HP Total Care

28  Extended Service Plan.  In *General Telephone*, the plaintiff alleged that he was passed over for a

promotion because of his race in violation of Title VII.  457 U.S. at 158.  He sought class

certification encompassing class members who were purportedly not promoted or not hired based on

their race.  The Supreme Court found that class certification was not proper because the evidence

supporting plaintiff's claims "would not necessarily justify the additional inferences" supporting

claims for the purported class members not hired based on race.  *Id.*  Thus, the Court held:

> Without any specific presentation identifying the questions of law or fact that were
> common to the claims of respondent and of the members of the class he sought to
> represent, it was error for the District Court to presume that respondent's claim was
> typical of other claims against petitioner by Mexican-American employees and
> applicants.  If one allegation of specific discriminatory treatment were sufficient to
> support an across-the-board attack, every Title VII case would be a potential
> companywide class action.

*Id.*[3]

**B.      Rule 12(b)(6) Motion**

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.

Dismissal can be based on the "lack of a cognizable legal theory" or "the absence of sufficient facts

alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th

Cir. 1988).  The issue is not whether the non-moving party will ultimately prevail but whether it is

entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d

246, 249 (9th Cir. 1997).  When evaluating a Rule 12(b)(6) motion, the court must accept all

material allegations in the complaint as true and construe them in the light most favorable to the

non-moving party. *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994).  A court must not dismiss a

complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S.

41, 45-46 (1957); *see also United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

However, the court is not required to accept conclusory legal allegations "cast in the form of factual

---

[3]      In his opposition, plaintiff seeks, in the alternative, leave to amend his complaint to substitute
or add a plaintiff and also seeks permission to conduct pre-certification discovery from HP in order
to locate a substitute plaintiff for this claim.  The court addresses plaintiff's request for leave to
amend below.  However, the court declines to specifically authorize pre-certification discovery for
the purpose of finding a class representative.

ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE—No.
C-06-02254 RMW
SPT

United States District Court

For the Northern District of California

1  allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult*
2  *Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

3                              **1.    Non-Actionable Puffery**

4          Defendant argues that the alleged misleading statements are nothing more than non-
5  actionable puffery.  "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon
6  which a reasonable consumer could not rely, and hence are not actionable." *Anunziato v.*
7  *eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (quoting *Glen Holly Entertainment,*
8  *Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003)).  "While product superiority claims that
9  are vague or highly subjective often amount to non[-]actionable puffery, . . . misdescriptions of
10  specific or absolute characteristics of a product are actionable." *Southland Sod Farms v. Stover Seed*
11  *Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997).  By contrast, "[a] specific and measurable advertisement
12  claim of product superiority based on product testing is not puffery." *Id.*

13          In *Anunziato*, the plaintiff sued the manufacturer of his laptop computer under, *inter alia*, the
14  California UCL, when the laptop began overheating.  There, the plaintiff pointed to statements in the
15  user manual that claimed that the laptops were of "outstanding quality, reliability, and performance;"
16  "[e]ach and every eMachines notebook uses the latest technology and passes through the most
17  stringent quality control tests to ensure that you are provided with the best product possible;" and
18  customers are provided "best-of-class service and support in addition to high-quality, brand-name
19  components." *Anunziato*, 402 F. Supp. 2d at 1139.  Plaintiff also pointed to a press release in which
20  defendant stated that the notebook "offers consumers the "'best-in-value' wide-screen notebook PC
21  available . . . we provide notebook users a full-featured, mobile PC for most business, academic and
22  consumer computing applications." *Id.* at 1139-40.  The court concluded that the references to
23  outstanding quality, reliability, performance, use of "latest technology," "high-quality components"
24  were all non-actionable puffery because the statements were subjective characterizations of product
25  superiority incapable of objective verification. *Id.* at 1040-41.  However, the court found that the
26  statement that the laptops were "passes through the most stringent quality control tests" to be a
27  verifiable factual assertion.  Similarly, the statement that defendant provided "brand-name
28  components" was an objectively verifiable factual assertion. *Id.* at 1141.

**United States District Court**
For the Northern District of California

1    Here, plaintiff's asserted statements that HP "touted" the Pavilion as a "high-performance

2    wireless notebook which integrates digital entertainment, photography and Internet computing into a

3    sophisticated design with desktop comfort" and was "top of the line," compl. ¶¶ 9, 12, are, as in

4    *Anunziato*, non-actionable puffery in that they are nothing more than subjective statements of the

5    superiority of the product, and are not objectively verifiable.  Plaintiff's assertion that HP described

6    the Pavilion as "[f]unctioning like an in-home digital entertainment and photo studio, the Pavilion

7    zd7000 incorporates a high resolution 17-inch widescreen display which allows users to enjoy

8    movies, music, games, art and photography to its fullest," *id.* ¶ 9, appear partially factual.  In

9    particular, the assertion that the Pavilion incorporates a 17-inch widescreen display allowing users to

10   enjoy movies, music, games, art, and photography is a factual assertion.  Nevertheless, the statement

11   is not actionable as there are no allegations that such fact is false or misleading.  HP allegedly touted

12   that the Pavilion contained a particular graphics card: the "NVIDIA GeForce GPU with 8X APG for

13   [having] the most cinematic graphics and special effects."  *Id.* ¶ 10.  That the Pavilion contained an

14   NVIDIA GeForce card is a factual assertion that cannot be disputed as false since plaintiff does not

15   allege that the notebook does not come with that graphics card.  That the NVIDIA graphics card

16   provides for "having the most cinematic graphics and special effects" constitutes subjective puffing

17   of a product's superiority.  Plaintiff also asserts that HP "emphasized" the "improved responsiveness

18   and performance" of the processor and system bus which enable the notebook to operate at high

19   speeds.  *Id.*  This is a factual assertion.  However, the factual allegations do not support the falsity or

20   misleading nature of this factual assertion; rather, the allegations indicate that the notebook is unable

21   to effectively dissipate heat, not that the processor and system bus failed to deliver the high speeds.

22   Finally, plaintiff asserts the warranty states that "HP warrants that the HP hardware product and all

23   the internal components of the product that you have purchased or leased from HP are free from

24   defects in materials or workmanship under normal use during the Limited Warranty Period."  *Id.* ¶

25   11.  However, while plaintiff alleges that the Pavilion is not "free from defects," the allegations do

26   not support an inference that HP does not *warrant* that the product is free from defects in materials

27   or workmanship during the Limited Warranty Period.  Rather, the allegations support that HP did

28   repair the alleged problems during the warranty period.  In sum, defendant's alleged statements are

United States District Court

For the Northern District of California

1    either (1) non-actionable puffery; or (2) asserted factual statements for which there are no

2    allegations supporting an inference of falsity at the time made.[4]

3            **2.**    **Proposition 64**

4         As an initial matter, Proposition 64 applies to the § 17200 action here: "Since Proposition 64

5    contained no specific provision for its effectiveness, it took effect on November 3, 2004." *Paulus v.*

6    *Bob Lynch Ford, Inc.*, 139 Cal. App. 4th 659, 677 (2006).  Defendant argues that plaintiff has not

7    alleged that it suffered injury "as a result" of the alleged misleading representations regarding the

8    Pavilion's capabilities and that the Pavilion is "free from defects" as required under the amendments

9    to § 17200 after the passage of Proposition 64.  Defendant further argue that Proposition 64 requires

10   a showing that plaintiff relied upon the alleged false representations.  *See Laster v. T-Mobile USA,*

11   *Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) ("Because [p]laintiffs fail to allege they actually

12   relied on false or misleading advertisements, they fail to adequately allege causation as required by

13   Proposition 64.").  However, it is not clear that reliance is a required element under Proposition 64.

14   *See Anunziato*, 402 F. Supp. 2d at 1137-39 (finding that the purposes of Proposition 64 and the

15   policies behind section 17200 *et seq.* do not support reading a reliance requirement into the "as a

16   result of" language in either section 17200 or 17500).  "In analyzing PHP's Section 17200 claim,

17   Proposition 64 makes clear that, in order to sue for injunctive relief under California's unfair

18   business practices laws, a party must have "suffered injury in fact and have lost money or property

19   as a result of such unfair competition." *Aureflam Corp. v. Pho Hoa Phat I, Inc.*, 375 F. Supp. 2d

20   950, 955 (N.D. Cal. 2005) (Seeborg, J.) (citing Cal. Bus. & Prof.Code § 17204).  Here, plaintiff's §

21   17200 allegations of unfair competition extend to more than the alleged misleading statements.

22   Even if plaintiff has not alleged that he relied upon any of the alleged statements, plaintiff alleges

23   injuries due to other conduct.  For example, HP purportedly required customers to pay for repairs

24   allegedly after it knew of the defect and concealed the known defect.  Nevertheless, as discussed

25   below, plaintiff's allegations do not make clear when he contends HP "knew" about the defect.

26           **3.**    **Rule 9(b)**

27   

28   [4]    According to the complaint, plaintiff's asserts that these statements constitute false representations.

United States District Court

For the Northern District of California

1    Defendant argues that the § 17200 action should be dismissed because plaintiff's allegations

2  sound in fraud, but plaintiff has failed to allege its claims with particularity as required by Fed. R.

3  Civ. P. 9(b).  Under Rule 9(b):

> 4    when averments of fraud are made, the circumstances constituting the alleged fraud
>      be specific enough to give defendants notice of the particular misconduct . . . so that
> 5    they can defend against the charge and not just deny that they have done anything
>      wrong.  Averments of fraud must be accompanied by 'the who, what, when, where,
> 6    and how' of the misconduct charged."

7  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

8    Plaintiff asserts that his allegations are not grounded in fraud because the allegations "say

9  nothing about HP's intent to defraud customers."  Plaintiff argues that he merely alleges that HP was

10 "aware of a problem" and that "HP sold defective computers" and, therefore, the allegations are not

11 grounded in fraud.  Plaintiff argues that it alleges that "HP engaged in a wrongful course of conduct

12 and that conduct included false representations, but [p]laintiff's allegations do not focus on HP's

13 intent."  Pl.'s Opp. at 7.  The court disagrees because at least some of plaintiff's allegations

14 supporting his § 17200 claim sound in fraud.  Plaintiff ignores that the complaint specifically

15 alleges, *inter alia*, that HP sold Pavilions with a *known* defect, falsely represented that the Pavilions

16 were free from defects, and falsely represented that the Pavilion was a "high-performance"

17 notebook.  The *Vess* court explicitly found that allegations of false misrepresentations constituted

18 allegations that sounded in fraud.  *Id.* at 1106-07.  As to these allegations, the court finds that the

19 complaint fails to satisfy Rule 9's requirement for particularity because plaintiff alleges no

20 contemporaneous facts that HP knew about the alleged defects when plaintiff (or any particular

21 consumer) purchased the Pavilion or that HP made any alleged misrepresentation with knowledge

22 that the statement was false.  Plaintiff notes that the "gravamen" of its UCL claim is that HP

23 manufactured and sold defective computers, and, even though it issued an internal service bulletin

24 detailing the defect, it failed to disclose the defect to consumers, charged consumers to repair the

25 defect, and/or repaired the defect by installing lower grade graphics cards.  Yet, there are no factual

26

27

28

United States District Court

For the Northern District of California

1  allegations that specifically addresses HP's conduct after February 2006—the date of the alleged

2  internal service bulletin.[5]

3      Although fraud is not an essential element of a § 17200 claim, *see Vess*, 317 F.3d at 1105,

4  the complaint does appear to be based on an entire course of fraudulent conduct, namely, HP's

5  alleged false representations and concealment of the alleged defects.  To the extent the allegations

6  do not constitute an entire course of fraudulent conduct, the court could otherwise consider the "non-

7  fraud" allegations under Rule 8.  *See Vess*, 317 F.3d at 1105 (finding under such circumstances that

8  to the extent the complaint alleges fraud, the allegations should be "disregarded," for failure to

9  satisfy Rule 9(b) and to consider the remaining claims to determine whether they state a claim).

10  Here, plaintiff has not addressed this point because it argues that none of its allegations sound in

11  fraud.

12          **4.      Reasonable Particularity**

13      Even assuming (without deciding) that the complaint is not based on an entire course of

14  fraudulent conduct, those allegations not alleging fraud fail to "state with reasonable particularity the

15  facts supporting the statutory elements of the violation."  *Khoury v. Maly's of California, Inc.*, 14

16  Cal. App. 4th 612, 619 (1993).  Under *Khoury*, a claim must identify the particular section of the

17  statute that was violated, and must describe with reasonable particularity the facts supporting the

18  violation.  *Id.*  In *Khoury*, the court upheld the lower court's grant of defendant's demurrer on the

19  basis that the complaint "identifies no particular section of the statutory scheme which was violated

20  and fails to describe with any reasonable particularity the facts supporting violation."  Instead, the

21  court found that the complaint "refers to an 'effect' of 'misleading' appellant's customers, but the facts

22  clearly do not involve deceptive advertising, nor do the facts explain the manner of misleading

---

[5]      Plaintiff also contends that HP violated section 5 of the Federal Trade Commission Act "by misrepresenting the reliability of goods and employing unfair and deceptive practices in the repair of such goods."  Compl. ¶ 36(f).  However, because plaintiff has not alleged that HP imposed any unreasonable restraint on competition, it cannot rely upon a violation of section 5 of the FTC Act as a predicate violation for section 17200.  *See Maxim Integrated Prods., Inc. v. Analog Devices, Inc.*, 1996 WL 117425, *4 (9th Cir. 1996) (finding that "because [defendant] has not imposed an unreasonable restraint on competition, [plaintiff] cannot create a § 17200 claim here by alleging that [defendant] violated § 5 of the FTC Act").  Moreover, the FTC Act may be enforced only by the Federal Trade Commission.  *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 132 -33 (2000).

United States District Court

For the Northern District of California

1  appellant's customers." *Id.* (citations and internal quotations omitted). Similarly, here, plaintiff does

2  not set forth factual allegations that indicate the particular statutory scheme that was violated and

3  how HP violated the statute based on any of the alleged conduct. In addition, the complaint does not

4  set forth with reasonable particularity that HP continued to charge customers for repairs of the defect

5  after it allegedly knew of the defect (as plaintiff cites only his own experiences, which occurred in

6  August 2005 and January 2006).

7      **C.      Breach of Express Warranty**

8      "Under California law, the elements required to establish actionable breach of contract are

9  the existence and terms of the contract, plaintiff's performance, defendant's breach, and damages

10  therefrom." *Amelco v. City of Thousand Oaks*, 27 Cal. 4th 228, 243 (2002). To the extent plaintiff

11  contends that HP failed to repair the defect while his Pavilion notebook was under warranty, it is

12  undisputed that HP replaced the motherboard at the time, which corrected the asserted screen display

13  problems. To the extent plaintiff alleges that HP breached the warranty by failing to repair the

14  computer when it again displayed problems it is undisputed that the warranty had already expired. It

15  remains unclear whether plaintiff asserts that HP failed to adequately repair the notebook when it

16  was still under warranty, but the alleged facts do not support any inference that HP's conduct in

17  repairing the notebook at that time constituted breach of any of the warranty provisions.

18      In his opposition, plaintiff also asserts that the time limitations of the contract were

19  unconscionable and therefore cannot bar his breach of contract claim. In support, plaintiff argues

20  that plaintiff and the class do not have any meaningful choice in the time limitations in the warranty,

21  the express terms favor HP, and HP knew that the Pavilions were defective and would fail well

22  before their useful lives. Even accepting each of plaintiff's contentions as true, plaintiff has failed to

23  show how the warranty terms here are unconscionable. In particular, a time limitation, by itself, is

24  not unconscionable. *See Jensen v. BMW of North America, Inc.*, 35 Cal. App. 4th 112, 127 (1995)

25  ("manufacturers are free to change the terms of express warranties they offer. The [Magnuson-Moss

26  Warranty] Act merely reflects the Legislature's intent to make car manufacturers live up to their

27  express warranties, whatever the duration of coverage.).

28

United States District Court

For the Northern District of California

1

### D.    Motion to Strike

2    Defendant also moves to strike pursuant to Fed. R. Civ. P. 12(f) portions of paragraph 44 of

3    the complaint that seek "disgorgement of profits" on the basis that § 17200 provides only for

4    injunctive relief or restitution.  Defendant argues that the possibility that the present action might be

5    certified as a class action does not have any effect on the remedies offered by § 17200.  In

6    opposition, plaintiff does not dispute that he is entitled only to restitution, although his § 17200

7    claim seeks "restitution *and* disgorgement of profits relating to the sale of its Pavilion."  Compl. ¶

8    44; *see also id.* ¶ 43 ("full restitution and disgorgement of all 'ill-gotten' monies").

9    In *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003), the California

10    Supreme Court clarified the concepts of restitution and disgorgement.  "[A]n order for restitution is

11    one 'compelling a UCL defendant to return money obtained through an unfair business practice to

12    those persons in interest from whom the property was taken, that is, to persons who had an

13    ownership interest in the property or those claiming through that person.'"  *Id.* at 1149 (quoting

14    *Kraus*, 23 Cal. 4th at 126-27).[6]  By comparison, "[d]isgorgement" is a broader remedy than

15    restitution. . . . [A]n order for disgorgement "may include a restitutionary element, but is not so

16    limited."  *Id.* at 1145.  "[D]isgorgement of money obtained through an unfair business practice is an

17    available remedy in a representative action only to the extent that it constitutes restitution."  *Id.*

18    Thus, *Korea Supply* makes clear that neither individual plaintiffs nor representative plaintiffs are

19    entitled to nonrestitutionary disgorgement of profits under the UCL.  Nevertheless, the court

20    declines to grant the motion to strike at this time as it finds that class certification, if granted, could

21    alter the measure of restitutionary remedies.  *See Kraus*, 23 Cal. 4th at 136 (holding that "the

22    Legislature has not expressly authorized monetary relief other than restitution in UCL actions, but

23    has authorized disgorgement into a fluid recovery fund in class actions" and also noting that express

24

25

26    ───────────────

27    [6]    The court also observed that "the concept of restoration or restitution, as used in the UCL, is not limited only to the return of money or property that was once in the possession of that person." *Korea Supply*, 29 Cal. 4th at 1149.  Rather, "restitution is broad enough to allow a plaintiff to

28    recover money or property in which he or she has a vested interest." *Id.*

1  statutory authority for fluid recovery in class actions is found in Code of Civil Procedure section

2  384).[7]

3  **F.      Leave to Amend**

4  Under Rule 15(a) plaintiff may amend its complaint as a matter of course as no responsive

5  pleading has been served.  *See* FED. R. CIV. P. 15(a) ("A party may amend the party's pleading once

6  as a matter of course at any time before a responsive pleading is served . . . .  Otherwise a party may

7  amend the party's pleading only by leave of court or by written consent of the adverse party.").

8  **III.  ORDER**

9  For the foregoing reasons, the court:

10  1.      GRANTS defendant's Fed. R. Civ. P. 12(b)(1) motion to dismiss plaintiff's claim of

11           express breach of warranty based on the HP Total Care Extended Service Plan;

12  2.      GRANTS defendant's Fed. R. Civ. P. 12(b)(6) motion to dismiss;

13  3.      DENIES defendant's Fed. R. Civ. P. 12(e) motion to strike without prejudice to

14           renewal; and

15  4.      Plaintiff is given twenty (20) days leave to amend from the date of this order.

16  The court is aware that plaintiff has filed an amended complaint pending this order on his original

17  complaint.  If plaintiff wants to amend his recently filed amended complaint in light of this order, he

18  may do so and the court will take off calendar defendant's motion to dismiss the current amended

19  complaint without prejudice.  If plaintiff elects to do so, he must give defendant and the court notice

20  by November 2, 2006.

21

22  DATED:      _____10/31/06_____              *Ronald M Whyte*

23                                                   RONALD M. WHYTE
                                                     United States District Judge

24

25

26

27  _____

28  [7]      The *Kraus* court also held that disgorgement into a fluid recovery fund was not available for
         representative UCL actions.  23 Cal. 4th at 137.

United States District Court
For the Northern District of California

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Robert S. Green          rsg@classcounsel.com
Kamon D Naddaf         kdn@classcounsel.com
Jenelle Welling          JWW@classcounsel.com

**Counsel for Defendant:**

Thomas R. Green          tgreen@morganlewis.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   10/31/06              SPT
                         **Chambers of Judge Whyte**

**United States District Court**
For the Northern District of California