Robert S. Green (State Bar No. 136183)
Jenelle Welling (State Bar No. 209480)
Charles D. Marshall (State Bar No. 236444)
**GREEN WELLING LLP**
595 Market Street, Suite 2750
San Francisco, CA 94105
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
cand.uscourts@classcounsel.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### San Jose Division

| | |
|---|---|
| Michael Brothers, an individual; Gregory McDaniel an individual, on behalf of themselves and all others similarly situated | ) Case No. C-06-2254 RMW<br>)<br>)<br>) **SECOND AMENDED CLASS ACTION**<br>) **COMPLAINT** |
| Plaintiff, | ) |
| v. | )<br>) |
| Hewlett-Packard Co., | ) **DEMAND FOR JURY TRIAL** |
| Defendant. | )<br>)<br>) |

SECOND AMENDED CLASS ACTION COMPLAINT
Case No. C-06-2254 RMW

1    Plaintiffs Michael Brothers and Gregory McDaniel on behalf of themselves and all others

2  similarly situated, allege:

3                               **PARTIES**

4    1.    Plaintiff Michael Brothers is a resident of Nevada.  Plaintiff Brothers purchased

5  an HP Pavilion ZD7260us notebook computer.

6    2.    Plaintiff Gregory McDaniel is a resident of Washington.  Plaintiff McDaniel

7  purchased an HP Pavilion zd7000 CTO notebook computer and an HP Care Pack Service

8  Contract promising expedited three-day repair or replacement for three years.

9    3.    Defendant Hewlett-Packard Company ("HP") is a California corporation with its

10  principal place of business in Palo Alto, California.

11          **JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

12    4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because

13  the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and

14  costs, and is a class action in which the Plaintiffs are citizens of states different from Defendant.

15  Based on the nature of the product and its distribution, Plaintiffs are informed and believe that

16  less than one-third of the members of the proposed class are citizens of California.

17    5.    Venue is proper in this District because Defendant's headquarters are in this

18  district, Defendant systematically and continuously does business in this district, and a

19  substantial part of the events or omissions accordingly occurred in this district.

20    6.    Assignment to the San Jose Division of the United States District Court for the

21  Northern District of California is proper because the action arises in the county of Santa Clara,

22  where Defendant resides.

23                          **FACTUAL ALLEGATIONS**

24    7.    HP manufactures, sells, and services computers throughout the United States.

25  HP's "Pavilion" family of computers are marketed primarily to consumers, whereas its

26  "Omnibook" family of computers are primarily targeted toward businesses.

27

28

---

SECOND AMENDED CLASS ACTION COMPLAINT
Case No. C-06-2254 RMW                                                                                       1

8.      Many models are encompassed within the Pavilion family. One such model is the zd7000 series notebook computer, which includes any model with a designation following the "zd7xxx" format. The zd7000 series notebooks were one of the first "desktop replacement" notebooks to market.

9.      HP promoted the zd7000 series as a high performance notebook computer with special graphics features. Specifically, in technical specifications, manuals, and promotional materials, HP described the zd7000 series as containing and being compatible with the "NVIDIA GeForce FX Go5700," an advanced graphics processing unit ("GPU") made by nVidia, which, at the time, offered graphics capabilities typically found only in desktop systems (the "Subject Computers").

10.     In describing the features of the zd7000 series notebook, HP stated that the computers had an "NVIDIA GeForce GPU with 8X AGP for the most cinematic graphics and special effects."

11.     HP also described the computers as having "improved responsiveness and performance" in the processor and system bus, enabling the zd7000 series notebooks to operate at high speeds.

12.     Emphasizing the desktop performance in a notebook design, HP described the zd7000 series notebooks as having "desktop comfort," but providing "mobile freedom" and "in-home mobility."

13.     Heat dissipation is an issue of particular importance in notebook computers. Unlike a desktop system, in which nearly all components can be spread out in an open space over a large motherboard,[1] a notebook requires the same components to be compressed into a smaller space, creating higher heat buildup that can damage sensitive electronic components.

---

[1] A motherboard, sometimes referred to as the system board, is a collection of devices (together on one large circuit board) that control the flow of data and operating electricity for all the primary components in a computer - for example, the central processing unit ("CPU"), memory, GPU, and sound chip.

14.     If a notebook computer cannot adequately dissipate heat, the motherboard shuts down as a protective measure. Heat can permanently damage the motherboard, however, resulting in an unusable computer.

15.     GPUs are notorious for generating heat on motherboards. Typically, the more advanced the GPU, the more heat. When HP designed the Subject Computers, the nVidia GeForce FX Go5700 GPU was one of the most advanced GPUs available and it generates a significant amount of heat.

16.     The Subject Computers are unable to adequately dissipate the heat generated by the nVidia GeForce FX Go5700 GPU and/or the other components of the motherboard into which the nVidia GPU is integrated.

17.     As a result, the Subject Computers are substantially likely to fail within HP's one-year limited warranty, within the three-year service contract HP offers at an additional price, and within the Subject Computers' useful life.

18.     The failure of the Subject Computers manifests as repeated and unexpected shut downs, crippled graphics capabilities, and/or permanent damage to the motherboard resulting in a dead computer.

19.     The Subject Computers are defective in material and/or workmanship under normal use and, because their design is defective, the computers are defective from the moment the computers are sold.

20.     If a Subject Computer fails within the warranty period, HP is unable to fix it. Accordingly, HP takes one of two courses of action:

          a      If a replacement nVidia 5700 motherboard is available, HP simply swaps the old one out with a new one, resetting the defect. This is not an adequate repair under the warranty.

          b.     If a replacement nVidia 5700 is not available, HP follows the protocol it set forth for a similar defect it its nx9500 series notebook computers. This protocol is described in more detail below, but requires HP customer

1           service to attempt to secure the customer's agreement for a substitute

2           motherboard with a lower performing GPU.

3      21.    HP's nx9500 notebook computers share the same build/platform as the zd7000

4 notebooks.

5      22.    HP manufactured some of the nx9500 notebooks with the same motherboards,

6 integrating the nVidia 5700 GPU, as those used in the zd7000 series.

7      23.    On February 21, 2006, HP issued an internal "Service Coverage Notice" ("service

8 note") in relation to the nx9500 series notebooks stating that the "SPS-BD SYSTEM NV36/128

9 MB 365894-001" and "SPS-BD SYSTEM NV36/64MB 365893-001" are "experiencing a high

10 rate of failure."

11     24.    The service note recommends HP customer service engage the customer to secure

12 agreement to substitute a motherboard with a lower performing GPU.

13     25.    The "SPS-BD SYSTEM NV36/128 MB 365894-001" and "SPS-BD SYSTEM

14 NV36/64MB 265893-001" are the identical motherboards HP installed in the Subject Computers.

15     26.    HP has received hundreds of phone calls reporting motherboard failures in the

16 Subject Computers.

17     27.    HP has repaired hundreds of Subject Computers whose motherboards failed.

18     28.    HP has received hundreds of reports of overheating in the Subject Computers.

19     29.    HP has received hundreds of phone calls reporting distorted graphics features in

20 the Subject Computers. For example, HP has received complaints about corrupted displays,

21 failures to boot, black screens, and the like, in the Subject Computers. These complaints stem

22 from failures in the motherboards and/or its components, such as the GPU.

23

24

25

26

27

28

30.    When a failure occurs — or more commonly continues to occur[2] — after a consumer's warranty has expired, HP charges the consumer to trouble shoot the issue and then charges the consumer even more to make the computer function again.

31.    HP has not uniformly compensated consumers for the difference in value and performance between the computers as originally described by HP versus the Subject Computers as (a) actually sold, or (b) altered by HP (e.g. with a lower grade GPU).

32.    HP put consumers desiring repairs in a no-win situation. A consumer either had to wait up to 8 weeks[3] for a motherboard with the integrated nVidia 5700 GPU (which, unbeknownst to the consumer, was substantially certain to fail again), accept a lower grade GPU than was the basis of the bargain, or operate their computers in VGA mode or some even lower grade graphics mode, which also was not a basis of the bargain.

33.    Recognizing that the Subject Computers were defective upon sale, HP did refund charges paid to it by some consumers for replacement motherboards. But many consumers paid HP for "repairs," or paid third party repair shops to get their computers functioning (albeit, not in the manner HP originally described), and have not been reimbursed.

34.    HP has not publicly issued any statement that it is aware that the computers do not conform to its descriptions. Yet, HP is currently aware, was aware during the one year warranty period, and either knew or should have known about the nonconformance prior to selling the Subject Computers.

35.    If persistent enough, HP has provided some consumers with replacement computers, typically a zd8000 series computer. Other consumers simply have dead computers or

---

[2]  If HP replaces the nVidia 5700 motherboard with another nVidia 5700 motherboard, the defect has not been fixed and will continue.  Replacing the motherboard only masks and resets the defect because the replacement motherboard also generates more heat than the Subject Computer can dissipate without failure.

[3]  Overheating and fried motherboards were so prevalent in the Subject Computers that it created a shortage of the nVidia 5700 equipped motherboard.

1   are forced to use their computers in lower grade graphics modes.  This allows HP to control the

2   vocal minority, but avoid providing what was paid for by the vast majority.

3         36.    Tacitly acknowledging that it could not cure the nonconformity, HP began

4   referring frustrated consumers to Plaintiffs' counsel.

5         37.    HP provided a Limited Warranty and Technical Support document with each

6   Subject Computer. In this one-year express warranty, HP promised that "the HP hardware

7   product and all the internal components of the product that you have purchased or leased from

8   HP are free from defects in materials or workmanship under normal use during the Limited

9   Warranty Period."

10        38.    HP also promised that, "During the Limited Warranty Period, HP will repair or

11  replace the defective component parts or hardware product."

12        39.    Many consumers who purchased the Subject Computers also purchased a service

13  contract from HP. Denominated as a "Care Pack Service Contract" or similar language, HP

14  promised three business day "door-to-door service that features pick up, repair or replacement

15  and delivery of the customer unit."

16        40.    Plaintiff Brothers purchased a Pavilion zd7260us with an NVIDIA 5700 equipped

17  motherboard on August 24, 2004, from Circuit City for over $2000.

18        41.    During normal use, Plaintiff Brothers' computer would heat up and the fans

19  would turn on blowing out hot air.

20        42.    In August 2005, Plaintiff Brothers' display screen appeared corrupted, began

21  showing red vertical lines, went blank, and ultimately the notebook computer would not turn on.

22        43.    Plaintiff Brothers contacted HP about the defect during the warranty period.

23        44.    HP replaced his motherboard with another motherboard similarly equipped with

24  the nVidia 5700 GPU which also was incapable of properly dissipating the heat created by its

25  components.

26        45.    Replacing Plaintiff's or any other Class members' motherboard with another

27  identical motherboard is not an adequate repair under the warranty.

28

SECOND AMENDED CLASS ACTION COMPLAINT
Case No. C-06-2254 RMW                                                                          6

46.     Five months after HP performed an inadequate repair to Plaintiff Brothers' computer, the notebook again overheated and experienced graphics distortion.

47.     Plaintiff Brothers again contacted HP and requested an adequate repair.

48.     HP told Plaintiff Brothers that his notebook was no longer in warranty and that he could purchase an extended warranty or pay approximately $300 to repair the problem.

49.     Plaintiff McDaniel purchased his Pavilion zd7000 (CTO) notebook computer on May 9, 2004 directly from HP.

50.     In connection with that purchase, he also purchased a three year service contract, in which HP promised to repair and/or exchange and then return a defective product within three business days.

51.     In July of 2006, Plaintiff McDaniel's computer display appeared corrupted, began showing red vertical lines and refused to boot into any video mode using the nVidia GeForce FX 5700 GPU.  Instead the computer would only boot into VGA or safe mode, a generic graphics mode which significantly limits the use and functionality of the GPU.

52.     On July 11, 2006, Plaintiff McDaniel called HP technical support to initiate service under his service contract. Despite the three day repair and/or exchange and then return promise of the service contract, HP did not return Plaintiff McDaniel's computer for over four weeks.

53.     Between July 11 and July 23, HP did not contact Plaintiff McDaniel. HP's customer service web site showed that the computer would be returned on July 24th — 10 days after the expiration of the three-day repair period HP promised.

54.     On or about July 24th or 25th, HP received a contact from Plaintiff McDaniel wherein he inquired about his computer. HP told Plaintiff McDaniel that it had not yet repaired or shipped his computer.  HP informed Plaintiff he would have to wait indefinitely for a motherboard with the integrated nVidia 5700 GPU and suggested that Plaintiff either accept a downgraded replacement motherboard or wait 30 days after which HP might consider replacing his defective computer.  Plaintiff was unwilling to accept the downgrade because the

1    motherboard with the advanced graphics capabilities formed the basis of his bargain. Plaintiff

2    also informed HP that a 30 day wait was unacceptable because his service contract guaranteed

3    repair or exchange within three business days.

4         55.     Between July 26th and August 7th, HP and Plaintiff McDaniel exchanged emails

5    and phone calls. Plaintiff demanded HP uphold its three business day repair/exchange promise,

6    but HP continued to stall repair and pushed Plaintiff McDaniel to accept a downgraded GPU.

7         56.     On or around August 9, 2006, twenty-nine days after Plaintiff McDaniel initiated

8    service under his service contract, HP returned Plaintiff's computer. HP had inadequately

9    "repaired" his computer by installing another motherboard equipped with an nVidia 5700 GPU.

10         57.     On August 27, 2006, Plaintiff's computer failed again. On August 28, 2006,

11    Plaintiff described the continued failure to an HP technical support representative and initiated

12    another service claim under the three business day service contract.

13         58.     During the August 28, 2006 customer service call, the HP representative stated

14    that if a motherboard with an nVidia 5700 GPU was not in stock HP would replace the

15    motherboard with a downgraded nVidia GPU.  Plaintiff McDaniel stated he already declined the

16    downgrade, at which time the HP representative informed him that the downgrade was

17    "definitely a bad trade-off."  The HP representative also informed Plaintiff McDaniel that HP

18    may contact him to authorize the installation of an ATI GPU instead of an nVidia 5700 GPU.

19    Plaintiff McDaniel did not authorize HP to install the ATI GPU.

20         59.     Also during the August 28, 2006 customer service call, and before allowing

21    Plaintiff McDaniel's service claim, HP tried to talk him into allowing HP more than the three

22    business days to repair or exchange and return his computer as specified under the service

23    contract.  Plaintiff McDaniel was insistent that HP honor the terms of the service contract he

24    purchased and had to escalate his claim to a supervisor before HP agreed to honor the agreement.

25         60.     Once HP agreed to "honor" its three business day repair or exchange agreement,

26    HP did not return Plaintiff McDaniel's computer for eight days.

27         61.     Upon return of his computer, Plaintiff McDaniel discovered that HP "repaired"

28

1   his computer by installing the ATI GPU equipped motherboard that he did not authorize.  The

2   zd7000 series was optimized to work with technology specific to the nVidia GPU, and is not

3   engineered or optimized to work with the ATI GPU.  While the ATI GPU functions, it does not

4   deliver the performance Plaintiff was promised when he purchased his zd7000.

5   <u>**CLASS ACTION ALLEGATIONS**</u>

6       62.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil

7   Procedure on behalf of all persons or entities who own or owned one or more HP Pavilion

8   ZD7000 series notebook computers equipped with a motherboard with an integrated nVidia 5700

9   GPU, as well as a subclass of those persons or entities who purchased a service contract (the

10  "Class" and "Service Contract Subclass"). Excluded from the class are HP's employees,

11  directors, officers, agents and/or affiliates.

12      63.    Plaintiffs' action meets the prerequisites of Rule 23(a) because:

13      a.    **Numerosity.**  The Class consists of thousands of individuals and is so

14      numerous that joinder of all members as individual plaintiffs is

15      impracticable.

16      b.    **Commonality.**  There are questions of law and fact common to the Class

17      and the Subclass. Such common questions include, but are not limited to:

18      i.    Whether the Subject Computers share a common defect;

19      ii.    Whether Defendant breached any of its express warranties by
        manufacturing notebook computers that possess a common defect;

20

21      iv.    Whether Defendant breached any of its warranties by failing to
        adequately repair the Subject Computers;

22      v.    Whether Defendant breached any of its warranties by failing to
        replace the Subject Computers;

23

24      vi.    Whether Defendant breached any of its warranties by failing to
        provide a computer in compliance with its descriptions of the
        Subject Computers;

25

26      viii.    Whether Defendant breached its HP Care Pack Service Contract by
        failing to provide repairs or a replacement within the promised
        three business day period;

27

28

---

SECOND AMENDED CLASS ACTION COMPLAINT
Case No. C-06-2254 RMW    9

ix.    Whether Defendant failed to cure its noncompliance with express and/or limited warranties;

x.    Whether, in light of its knowledge of the defect, Defendant's warranty limitations are unconscionable; and

xi.    Whether Defendant's conduct is unfair and thus actionable under Business & Professions Code § 17200.

c.    **Typicality.**  As owners of Subject Computers, Plaintiffs' claims are typical of the claims of the Class.  As a purchaser of a service contract, Plaintiff McDaniel's claims are typical of the Service Contract Subclass

d.    **Adequacy.**  Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have no interests that are antagonistic to or in conflict with the interests of the Class as a whole, and Plaintiffs have engaged competent counsel experienced in class actions and complex litigation.

64.    This action is properly maintainable as a class action for the following independent reasons and under the following portions of Rule 23:

a.    The prosecution of separate actions by members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. Fed. R. Civ. P. 23(b)(1)(B).

b.    The Defendants acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class and Subclass as a whole. Fed. R. Civ. P. 23(b)(2).

c.    Questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).

65.     Whatever difficulties may exist in the management of the class action will be greatly outweighed by the benefits of the class action procedure, including but not limited to providing class members with a method for the redress of claims that may not otherwise warrant individual litigation.

## FIRST CAUSE OF ACTION

**(Breach of Written Warranty in Violation of 15 U.S.C. § 2301 *et seq*.)**

66.     On behalf of themselves and all Class members, Plaintiffs incorporate by reference and reallege all paragraphs previously alleged and further allege as follows:

67.     Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

68.     HP is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(4)-(5).

69.     The Subject Computers are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(1).

70.     HP's Limited Warranty and Technical Support document is a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

71.     HP promised in the written warranty that "the HP hardware product and all the internal components of the product that you have purchased or leased from HP are free from defects in materials or workmanship under normal use during the Limited Warranty Period."

72.     HP promised in the written warranty that "During the Limited Warranty Period, HP will repair or replace the defective component parts or the hardware product."

73.     HP breached the written warranty by (a) selling computers that are not free from defects in materials or workmanship under normal use and that are likely to fail prematurely; and (b) failing to adequately repair or replace the computers and/or the internal components with computers and/or internal components of at least equivalent hardware performance.

74.     As a direct and proximate result of HP's breach of the written warranties, Plaintiffs and Class members sustained damages and other losses in an amount to be determined

at trial. HP's conduct caused Plaintiffs and Class members damages and accordingly, Plaintiffs and Class members are entitled to revoke their acceptance, recover actual damages, recover diminution in value, obtain a refund of the purchase price, be reimbursed costs, attorneys' fees, and obtain other relief as appropriate.

75.     Any limitations of liability contained in the written warranties are unenforceable because the written warranties fail in their essential purpose.

76.     The amount in controversy of each Plaintiff's individual claim meets or exceeds the sum or value of $25. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this lawsuit.

77.     Plaintiffs and Class members afforded HP a reasonable opportunity to cure its breach of the written warranties.

78.     HP rejected a demand made on behalf of all Class members sent by Plaintiffs' counsel to cure its breach.

79.     Alternatively, affording HP a reasonable opportunity to cure its breach is unnecessary and/or futile. At the time of sale, HP knew, should have known, or was reckless in not knowing of the defect(s) in Plaintiffs' and Class members' computers. Moreover, no repair of the computers is possible. The computers' defect(s) and/or design flaws cannot be remedied nor can equivalent hardware performance be obtained by simply replacing the failed component(s) with an identical component, as HP does in its warranty "repair."

**SECOND CAUSE OF ACTION**

**(Breach of Service Contract in Violation of 15 U.S.C. § 2301 *et seq*.)**

80.     On behalf of himself and all members of the Service Contract Subclass, Plaintiff McDaniel incorporates by reference and realleges all paragraphs previously alleged and further alleges as follows:

81.     Plaintiff McDaniel and the members of the Service Contract Subclass are "consumers" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

82. HP is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(4)-(5).

83. The HP Care Pack Service Contract, and similar agreements offered by HP at an additional price relating to maintenance and/or repair, are "service contracts" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(8).

84. HP promised in the service contract to "provide door-to-door service that features pick up, repair, and delivery of the customer's unit." HP promised that the "turnaround time is 3-business days, which is measured from the time of logging the call to delivering the repaired unit to the customer." HP promised that the "service includes repair or replacement, all parts, labor and the cost of the return shipment." Under the service contract, HP is obligated to use "replacement parts and products that are new or equivalent to new in performance." HP also promised to "schedule . . . [an] exchange to meet the service level response time."

85. HP breached the service contract by failing to repair and return Plaintiff's and Subclass members' computers manifesting the defect(s) complained of herein within the three business day time-frame promised in the service contract.

86. HP breached the service contract by failing to replace or exchange Plaintiff's and Subclass members' computers within the three business day time-frame promised in the contract.

87. HP breached the service contract by failing to use replacement parts that provide at least equivalent performance as expected at the time of the bargain.

88. There are or were no causes beyond HP's reasonable control that excuse HP's performance under the service contract.

89. As a direct and proximate result of HP's breach of the service contract, Plaintiff and Subclass members sustained damages in an amount to be determined at trial. HP's conduct caused Plaintiff and Subclass members damages such that they are entitled to actual damages, costs, expenses, attorneys' fees, and/or other relief as appropriate.

90. Any limitations of liability contained in the service contract are unenforceable because the service contract fails in its essential purpose.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No. C-06-2254 RMW                                                                13

1      91.     Plaintiff McDaniel and Subclass members afforded HP an reasonable opportunity

2  to cure the breach of the service contract.

3      92.     HP rejected a demand made on behalf of all Subclass members by Plaintiff's

4  counsel to cure its breach.

5      93.     Alternatively, affording HP a reasonable opportunity to cure its breach is

6  unnecessary and/or futile. On information and belief, HP lacked sufficient supply of parts to

7  "repair" Plaintiff's and Subclass members' computers within three business days. Moreover, the

8  computers' defect(s) and/or design flaws cannot be remedied nor can equivalent hardware

9  performance be obtained by simply replacing the failed component with an identical component,

10  as HP does under its service contract "repair." Equivalent performance also cannot be achieved

11  by any of the alternate "repairs" HP offers, such as downgrading the graphics processing unit or

12  replacing the graphics processing unit with that manufactured by a different supplier.

13                 **THIRD CAUSE OF ACTION**

14             **(Breach of Cal. Commercial Code § 2313(1)(b))**

15     94.     On behalf of themselves and all Class members, Plaintiffs incorporate by

16  reference and reallege all paragraphs previously alleged and further allege as follows:

17     95.     In technical specifications, maintenance and service guides, and other materials

18  provided on or with Plaintiffs' and Class members' computers, HP described the Subject

19  Computers as containing and being compatible with the "NVIDIA GeForce FX Go5700 with 64-

20  MB video memory" and with the "NVIDIA GeForce FX Go5700 with 128-MB video memory."

21     96.     In its product specifications, such as fact sheets distributed to the press, third

22  party retailers, and made available on the internet, HP described the Subject Computers as

23  having an "NVIDIA GeForce GPU with 8X AGP for the most cinematic graphics and special

24  effects."

25     97.     In the trade in which Plaintiffs, Class members, and HP are engaged, these

26  product descriptions mean that the Subject Computers will function properly when equipped

27  with the NVIDIA 5700 graphics processor. These product descriptions also mean that the

28

1   Subject Computers will provide "cinematic graphics and special effects."

2       98.     These descriptions were made a part of the basis of the bargain and created an

3   express warranty that the goods would conform to the descriptions.

4       99.     Under controlling California law, and pursuant to the Official Comments to the

5   Uniform Commercial Code from which § 2313(1)(b) is drawn, all statements become part of the

6   basis of the bargain unless good reason is shown to the contrary such that the burden is on HP to

7   prove that the resulting bargain does not rest at all on the representation. Alternatively, to the

8   extent Plaintiffs and Class members must prove reliance, their purchases of Subject Computers

9   reflect their reliance on HP's product descriptions.

10      100.    HP breached the express warranty created by its product descriptions because the

11  Subject Computers cannot function properly when equipped with the  nVidia 5700 graphics

12  processor, and, within their useful life, the computers are substantially certain to fail completely.

13      101.    HP also described Subject Computers as a "Notebook PC," and as "a notebook . . .

14  with desktop comfort" allowing for "mobile freedom" as well as "in-home mobility."

15      102.    In the trade in which Plaintiffs, Class members, and HP are engaged, these

16  descriptions mean that the Subject Computers are portable computers and thus, can be taken to

17  and will function in a variety of settings, such as in different rooms of a home, in an airport, and

18  in a class room.

19      103.    These descriptions were made a part of the basis of the bargain and created an

20  express warranty that the goods would conform to the description.

21      104.    HP breached the express warranty created by its product descriptions because the

22  Subject Computers are rendered useless by their defect(s) and thus incapable of being used as a

23  portable notebook computer.

24      105.    Under controlling California law, and pursuant to the Official Comments to the

25  Uniform Commercial Code from which § 2313(1)(b) is drawn, all statements become part of the

26  basis of the bargain unless good reason is shown to the contrary such that the burden is on HP to

27  prove that the resulting bargain does not rest at all on the representation. Alternatively, to the

28

SECOND AMENDED CLASS ACTION COMPLAINT
Case No. C-06-2254 RMW                                                              15

1    extent Plaintiffs and Class members must prove reliance, their purchases of Subject Computers

2    reflect their reliance on HP's product descriptions.

3        106.    HP described the zd7000 series Intel® Pentium® 4 processor and an 800 MHZ

4    system bus as ensuring "improved responsiveness and performance."

5        107.    This description was made a part of the basis of the bargain and created an

6    express warranty that the goods would conform to the description.

7        108.    Under controlling California law, and pursuant to the Official Comments to the

8    Uniform Commercial Code from which § 2313(1)(b) is drawn, all statements become part of the

9    basis of the bargain unless good reason is shown to the contrary such that the burden is on HP to

10   prove that the resulting bargain does not rest at all on the representation. Alternatively, to the

11   extent Plaintiffs and Class members must prove reliance, their purchases of Subject Computers

12   reflect their reliance on HP's product descriptions.

13       109.    HP breached the express warranty created by its product description because, due

14   to the inherent defect(s), the Subject Computers do not have "improved responsiveness and

15   performance" and computer owners cannot utilize the advanced processor and system bus.

16   Indeed, the Subject Computers suffer from unexpected and intermittent shut downs, graphics

17   distortions, and fail completely.

18       110.    Plaintiffs and Class members gave HP notice of its breaches of the express

19   warranties created by its product descriptions within a reasonable time of discovering the

20   breaches.

21       111.    As a direct and proximate result of HP's breaches of its express warranties,

22   Plaintiffs and Class members sustained damages and other losses in an amount to be determined

23   at trial. HP's breaches caused Plaintiffs and Class members damage and as a result, Plaintiffs and

24   Class members are entitled to actual damages pursuant to California Commercial Code § 2714,

25   incidental and consequential damages pursuant to California Commercial Code § 2715, "cover"

26   damages pursuant to California Commercial Code § 2712, and are entitled to revoke their

27   acceptance of the goods pursuant to California Commercial Code § 2608. Plaintiffs and Class

28

SECOND AMENDED CLASS ACTION COMPLAINT
Case No. C-06-2254 RMW                                                                    16

1    members also are entitled to attorneys' fees and costs under California Code of Civil Procedure

2    §1021.5.

3                                **FOURTH CAUSE OF ACTION**

4                         **(Breach of Cal. Commercial Code § 2313(1)(a))**

5          112.    On behalf of themselves and all Class members, Plaintiffs incorporate by

6    reference and reallege all paragraphs previously alleged and further allege as follows:

7          113.    HP's Limited Warranty and Technical Support document provided with each

8    Subject Computer is an express warranty.

9          114.    In the express warranty, HP promised "that the HP hardware product and all the

10   internal components of the product that you have purchased or leased from HP are free from

11   defects in materials or workmanship under normal use during the Limited Warranty Period."

12         115.    In the express warranty, HP promised that, "During the Limited Warranty Period,

13   HP will repair or replace the defective component parts or the hardware product."

14         116.    The express warranty is a part of the basis of the bargain.

15         117.    Under controlling California law, HP's express warranty, provided with each

16   Subject Computer, is presumed to be part of the basis of the bargain unless good reason is shown

17   to the contrary such that the burden is on HP to prove that the resulting bargain does not rest at

18   all on the express warranty. Alternatively, to the extent Plaintiffs and Class members must prove

19   reliance, their purchases of Subject Computers reflect their reliance on HP's express warranty,

20   and their attempts to obtain repairs and/or replacements pursuant to the terms of the express

21   warranty reflect reliance on the express warranty.

22         118.    HP breached the express warranty because the Subject Computers and/or their

23   internal components are not free from defects in materials or workmanship under normal use.

24         119.    The Subject Computers contained the defect(s) complained of herein at the time

25   of their sale to Plaintiffs and Class members.

26         120.    HP breached the express warranty by failing to repair or replace the products as

27   promised. Indeed, because the Subject Computers are incompatible with the  nVidia 5700

28

SECOND AMENDED CLASS ACTION COMPLAINT
Case No. C-06-2254 RMW                                                              17

1   graphics processor, HP cannot repair the product.

2        121.    HP's express warranty does not require Plaintiffs or Class members give notice of

3   a breach of the express warranty. Indeed, HP's express warranty does not use the term "notice."

4        122.    Plaintiffs and Class members gave HP notice of its breaches within a reasonable

5   time of discovering its breaches.

6        123.    Moreover, HP was on notice during the Limited Warranty Period that the Subject

7   Computers are and were incompatible with the nVidia 5700 graphics processor through its own

8   internal investigations, through repairs, through complaints, and through documented problems

9   with computers sharing the same platform build.

10        124.    Alternatively, notice of HP's failure to adequately repair the computers is not

11   required because HP is a remote seller and its breach arose independently of the contract of sale.

12        125.    As a direct and proximate result of HP's breaches of its express warranty,

13   Plaintiffs and Class members sustained damages and other losses in an amount to be determined

14   at trial. HP's breaches caused Plaintiffs and Class members damage and as a result, Plaintiffs and

15   Class members are entitled to actual damages pursuant to California Commercial Code § 2714,

16   incidental and consequential damages pursuant to California Commercial Code § 2715, "cover"

17   damages pursuant to California Commercial Code § 2712, and are entitled to revoke their

18   acceptance of the goods pursuant to California Commercial Code § 2608. Plaintiffs and Class

19   members also are entitled to attorneys' fees and costs under California Code of Civil Procedure §

20   1021.5.

21        126.    Any limitations of liability contained in the express warranty are unenforceable

22   because the express warranty fails of its essential purpose. HP cannot repair the Subject

23   Computers to equivalent hardware performance because the computer's design and/or function is

24   incompatible with the nVidia 5700 graphics processor. Moreover, replacing the nVidia 5700

25   graphics processor with a processor made by another manufacturer does not provide equivalent

26   performance, running the computer in VGA mode does not provide equivalent performance, and

27   a lower grade nVidia graphics card does not provide equivalent performance.

28

## FIFTH CAUSE OF ACTION

### (Common Law Breach of Express Warranty)

127.    On behalf of themselves and all Class members, Plaintiffs incorporate by reference and reallege all paragraphs previously alleged and further allege as follows:

128.    HP's Limited Warranty and Technical Support document provided with each Subject Computer is an express warranty.

129.    In the express warranty, HP promised "that the HP hardware product and all the internal components of the product that you have purchased or leased from HP are free from defects in materials or workmanship under normal use during the Limited Warranty Period."

130.    In the express warranty, HP promised that, "During the Limited Warranty Period, HP will repair or replace the defective component parts or the hardware product."

131.    The express warranty is a part of the basis of the bargain.

132.    Under controlling California law, HP's express warranty, provided with each Subject Computer, is presumed to be part of the basis of the bargain unless good reason is shown to the contrary such that the burden is on HP to prove that the resulting bargain does not rest at all on the express warranty. Alternatively, to the extent Plaintiffs and Class members must prove reliance, their purchases of Subject Computers reflect their reliance on HP's express warranty, and their attempts to obtain repairs and/or replacements pursuant to the terms of the express warranty reflect reliance on the express warranty.

133.    HP breached the express warranty because the Subject Computers and/or their internal components are not free from defects in materials or workmanship under normal use.

134.    The Subject Computers contained the defect(s) complained of herein at the time of their sale to Plaintiffs and Class members.

135.    HP breached the express warranty by failing to repair or replace the products as promised. Indeed, because the Subject Computers are incompatible with the  nVidia 5700 graphics processor, HP cannot repair the product.

136.    Plaintiffs and Class members provided HP with notice of its breaches.

137.    HP also was on notice during the Limited Warranty Period that the Subject Computers are and were incompatible with the  nVidia 5700 graphics processor through its own internal investigations, through repairs, through complaints, and through documented problems with computers sharing the same platform build.

138.    As a direct and proximate result of HP's breaches of its express warranty, Plaintiffs and Class members sustained damages and other losses in an amount to be determined at trial.

139.    Any limitations of liability contained in the express warranty are unenforceable because the express warranty fails of its essential purpose. HP cannot repair the Subject Computers to equivalent hardware performance because the computer's design and/or function is incompatible with the  nVidia 5700 graphics processor. Moreover, replacing the  nVidia 5700 graphics processor with a processor made by another manufacturer does not provide equivalent performance, running the computer in VGA mode does not provide equivalent performance, and a lower grade NVIDIA graphics card does not provide equivalent performance.

## SIXTH CAUSE OF ACTION

**(Violation of Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*: Unlawful Conduct)**

140.    On behalf of themselves and all Class members, Plaintiffs incorporate by reference and reallege all paragraphs previously alleged and further allege as follows:

141.    This claim is brought by Plaintiffs on behalf of themselves and the Class against HP for violations of the Unfair Competition Law, Business and Professions Code Section 17200 et. seq.

142.    HP engaged in unlawful acts and practices by:

a.    Violating the Magnuson-Moss Act;

b.    Violating California Commercial Code section 2313;

c.    Violating the Federal Trade Commission Act, Section 5 by

misrepresenting the reliability of goods and employing unfair and

1        deceptive practices in the repair of such goods.

2        143.   Plaintiffs reserve the right to allege other violations of law which constitute

3   unlawful acts or practices.

4        144.   The injury to consumers is substantial. Computers are an increasingly important

5   tool for members of households of all ages. The expenditure of funds to buy one is not

6   insignificant. Notebook computers are expected to function without catastrophic failure for at

7   least five years. A computer is a significant investment for a consumer, particularly for students

8   and households of limited means.

9        145.   There is no countervailing benefit to consumers or to competition to permit HP to

10  manufacture and sell a defective computer.

11       146.   The failure of the Subject Computers could not have been reasonably avoided by

12  consumers. Indeed, the defect(s) manifest during normal use of their computers. Plaintiffs and

13  Class members experienced unexpected shut downs, overheating, graphics distortions, and

14  catastrophic failure of the motherboard during normal use.

15       147.   HP continues to engage in unlawful practices in violation of the UCL described

16  above.

17       148.   Defendant fails to publicly acknowledge the wrongful nature of its actions.

18  Defendant has not corrected or publicly issued individual and comprehensive corrective notices

19  to Plaintiffs and Class members or provided full restitution and disgorgement of all ill-gotten

20  monies either acquired or retained by Defendant as a result thereof.

21       149.   Accordingly, Plaintiffs seek an Order enjoining Defendant from continuing and/or

22  permitting such unlawful business acts and practices, an Order providing restitution and

23  disgorgement of profits relating to the sale of the Subject Computers and injunctive and

24  declaratory relief as may be appropriate.  Plaintiffs also are entitled to an award of attorneys'

25  fees and costs pursuant to Cal. Civ. Proc. § 1021.5.

26

27

28

SECOND AMENDED CLASS ACTION COMPLAINT
Case No. C-06-2254 RMW                                                          21

## SEVENTH CAUSE OF ACTION

**(Violation of Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*:
Unfair Conduct)**

150.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

151.    This claim is brought by Plaintiffs on behalf of themselves and the Class against HP for violation of the Unfair Competition Law, Business and Professions Code Section 17200 et. seq.

152.    HP engaged in unfair acts and practices by:

    a.    Inadequately repairing the defect(s) by replacing burnt out  nVidia 5700 equipped motherboards with another identical board which also generates more heat that the Subject Computers can effectively dissipate;

    b.    Inadequately repairing the defect(s) by replacing burnt out  nVidia 5700 equipped motherboards with motherboards equipped with downgraded GPUs without properly compensating Plaintiffs or the Class for the difference in value;

    c.    Using a self-created shortage of  nVidia 5700 equipped motherboards to force the Plaintiff and Class members into downgraded GPUs;

    g.    Using a self-created shortage of  nVidia 5700 equipped motherboards to excuse itself from its own three-day repair or replace promise under the HP Care Pack Service Contract;

    i.    Conducting a secret warranty supplement program under which select consumers received monetary refunds or replacement computers, but not providing such remedies to all similarly situated consumers;

    f.    Failing to notify consumers of the known defect(s); and

    g.    Failing to compensate all consumers properly.

153.    Plaintiffs reserve the right to allege other matters which constitutes unfair acts or

1    practices.

2       154.    The acts and/or practices of Defendant are unfair because the resultant injury to

3    the consumer is substantial, they are not outweighed by any countervailing benefits, if any, to

4    consumers or to competition, and the injury could not have been reasonably avoided by the

5    consumers.

6       155.    HP's conduct also is immoral, unethical, oppressive, and unscrupulous.

7       156.    HP's conduct also violates the public policy principles espoused in both federal

8    and state statutes and federal regulations.  For example:

9               a.    The Magnuson-Moss Warranty Act was designed to ensure basic

10                    protection for consumers purchasing consumer products covered by

11                    written warranties, to stimulate the production of more reliable goods, and

12                    to provide a basic level of honesty and reliability to such transactions.

13                    15 U.S.C. §§ 2301-2312.

14              b.    The California Commercial Code was enacted, in pertinent part, to enforce

15                    warranties created by descriptions of products, affirmation or promises,

16                    and to provide a basic level of honesty and reliability in sale transactions.

17                    Cal. Comm. Code §§ 2313(1)(a) and (b).

18              b.    The California Song-Beverly Consumer Warranty Act states that "if a

19                    defect exists during within the warranty period, the warranty will not

20                    expire until the defect has been fixed," aiming to prevent warrantors from

21                    acting in such a way as to delay warrantable defects so that they occur

22                    outside of the warranty period, thereby improperly shifting the burden of

23                    risk onto the consumer.  Civ. Code § 1793.1(a)(2). The Act specifically

24                    states that a warranty shall not expire if the warranty repairs or service

25                    does not remedy the nonconformity. Civ. Code § 1795.6.

26              c.    The Federal Trade Commission Act, Section 5, recognizes the public

27                    policy that misrepresenting the reliability of goods and selling vehicles

28

SECOND AMENDED CLASS ACTION COMPLAINT
Case No. C-06-2254 RMW                                                                  23

with known defects is an unfair and deceptive action; and

      d.     California Business & Professions Code § 17500 demonstrates the public policy that it is unfair to advertise the sale of property or services by making untrue or misleading statements.

157.    These established public policies seek to protect consumers against unfair practices, including those complained of herein, and provide a sufficient predicate for Plaintiffs' claims.

158.    HP continues to engage in unfair practices in violation of the UCL described above.

159.    Defendant fails to publicly acknowledge the wrongful nature of its actions. Defendant has not corrected or publicly issued individual and comprehensive corrective notices to Plaintiffs and Class members or provided full restitution and disgorgement of all ill-gotten monies either acquired or retained by Defendant as a result thereof.

160.    Accordingly, Plaintiffs seek an Order enjoining Defendant from continuing and/or permitting such unfair, unlawful, and fraudulent business acts and practices, an Order providing restitution and disgorgement of profits relating to the sale of the Subject Computers, and injunctive and declaratory relief as may be appropriate.  Plaintiffs also are entitled to an award of attorneys' fees and costs pursuant to Cal. Civ. Proc. § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, on behalf of themselves and the Class, Plaintiffs demand judgment as follows:

      A.     An Order certifying this action as a class action and appointing Plaintiffs and their counsel to represent the class;

      B.     An Order enjoining Defendant from continuing its unfair and unlawful business acts and practices;

      C.     An Order providing restitution and disgorgement;

      D.     An Order requiring Defendant to repair or replace the zd7000;

E.   An Order requiring Defendant to compensate Plaintiffs and the Class for actual damages suffered;

F.   An Order permitting Plaintiffs and the Class to revoke their acceptance of the goods and requiring Defendant to return the purchase price of the goods;

G.   An Order granting Plaintiffs and Class members to the statutory remedies to which they are entitled as a result of Defendant's conduct;

H.   Declaratory relief;

I.   Statutory prejudgment interest;

J.   Plaintiffs' attorneys fees and costs of suit; and

K.   Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury with respect to all issues so triable.

DATED: November 20, 2006                    Respectfully submitted,

**GREEN WELLING LLP**

By: _____/s/_____
                 Jenelle Welling

Robert S. Green
Charles D. Marshall
595 Market Street, Suite 2750
San Francisco, CA 94105
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
cand.uscourts@classcounsel.com

*Attorneys for Plaintiffs*