1  Robert S. Green (State Bar No. 136183)
   Jenelle Welling (State Bar No. 209480)
2  Charles D. Marshall (State Bar No. 236444)
   **GREEN WELLING LLP**
3  595 Market Street, Suite 2750
   San Francisco, CA  94105
4  Telephone: (415) 477-6700
   Facsimile: (415) 477-6710
5  cand.uscourts@classcounsel.com

6  *Attorneys for Plaintiffs*

7

8                **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10                    **San Jose Division**

11

12  Michael Brothers, an individual; Gregory    ) Case No. C-06-2254 RMW
    McDaniel, an individual, on behalf of       )
13  themselves and all others similarly situated, )
                                                 )
14                        Plaintiffs,            ) **PLAINTIFFS' OPPOSITION TO**
                                                 ) **DEFENDANT HEWLETT-PACKARD**
15            v.                                 ) **COMPANY'S MOTION TO DISMISS**
                                                 )
16  Hewlett-Packard Co.,                         ) Date: February 2, 2007
                                                 ) Time: 9:00 a.m.
17                        Defendant.             ) Place: Courtroom 6, 4th Floor
                                                 ) Judge: Honorable Ronald M. Whyte
18                                               )
                                                 )
19                                               )

20

21

22

23

24

25

26

27

28

---

PLTFS' OPP. TO DEF.'S MOT. TO DISMISS
CASE NO. C-06-2254 RMW

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF FACTS AND ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL STANDARD  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.   Plaintiff Brothers States Claims for HP's Breach of the Written, Express Limited
     Warranty  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.   Plaintiff Brothers Pleads Two Breaches Occurring During the Warranty
          Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     B.   Plaintiff Brothers' Breach of Written Limited Warranty Claims are Not
          Time Barred . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     C.   Privity of Contract is Not Required Here  . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.  Plaintiffs Brothers and McDaniel State Claims under Magnuson-Moss . . . . . . . . . . . . . 7

     A.   The 100 Named Plaintiff Requirement Does Not Apply Because Jurisdiction
          is Under the Class Action Fairness Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     B.   Plaintiff Brothers Properly States a Magnuson-Moss Claim Premised On a
          Breach of Written Warranty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     C.   Plaintiff McDaniel Properly States a Magnuson-Moss Claim on a Breach of the
          Service Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          1.   Plaintiff McDaniel is Damaged By HP's Failure to Meet Its Three-Day
               Repair/Replace Promise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          2.   Whether HP's Delay Was Reasonable is a Question of Fact Not
               Properly Decided on a Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . 11

III. Plaintiffs State a Claim for Breach of Express Warranty of Description  . . . . . . . . . . . 11

     A.   HP Created Express Warranties by Description by Describing Plaintiffs'
          Computers as Being Compatible with the Advanced NVIDIA GeForce FX
          Go5700 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     B.   HP's Affirmations Form an Express Warranty Regardless of Scienter as
          to Falsity  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     C.   HP's Written Warranty Cannot Disclaim HP's Express Warranties
          by Description  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

      D.     Plaintiffs Need Only Notify HP that its Product Does Not Conform to its Description Within a Reasonable Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      E.     Plaintiff Brothers Need Not Allege Privity of Contract . . . . . . . . . . . . . . . . . . . 17

IV.    Plaintiffs Sufficiently State Claims For Relief Under The UCL . . . . . . . . . . . . . . . . . . 18

      A.     Plaintiffs Properly Plead "Unlawful" Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      B.     Plaintiffs Properly Plead "Unfair" Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

V.     The UCL Applies Nationwide to Wrongful Conduct Emanating from California . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

1

## TABLE OF AUTHORITIES

2

**PAGE(S)**

3

**FEDERAL CASES**

4   *Ab Avnet EMG v. Sierra Semiconductor Corp.*, No. C-93-0087,
5       1993 WL 280504 (N.D. Cal. July 9, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

6   *Allen v. City of Beverly Hills*,
        911 F.2d 367 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7   *Anunziato v. eMachines, Inc.*,
8       402 F. Supp.2d 1133 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

9   *Cahill v. Liberty Mut. Ins. Co.*,
        80 F.3d 336 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

10  *Cellars v. Pacific Coast Packaging, Inc.*,
11      189 F.R.D. 575 (N.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17

12  *Chavis v. Fidelity Warranty Serv., Inc.*,
        415 F. Supp.2d 620 (D.S.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

13  *Cmty. Tel. Servs., Inc. v. Dresser Indus., Inc.*,
14      586 F.2d 637 (8th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

15  *Conley v. Gibson*,
        355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

16  *Dance v. U.S. Intern. Motors*,
        647 F. Supp. 1205 (D.D.C.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

17  *Estate of Wood v. C.I.R.*,
18      909 F.2d 1155 (8th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

19  *F.T.C. v. Sperry & Hutchison Co.*,
        405 U.S. 233 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

20  *Gilligan v. Jamco Develop. Corp.*,
21      108 F.3d 246 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 11

22  *Graham v. Connor*,
        490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

23  *Jamil v. U.S. Postal Service*, No. C 05-5121 RS,
24      2006 WL 988825 (N.D. Cal. Apr. 14, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

25  *Maxim Integrated Prods., Inc. v. Analog Devices, Inc.*, No. 94-16744,
        1996 WL 117425 (9th Cir. Mar. 15, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

26  *McDonnell Douglas Corp. v. Thiokol Corp.*,
27      124 F.3d 1173 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28

*McKnelly v. Sperry Corp.*,
    642 F.2d 1101 (8th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Pareto v. F.D.I.C.*,
    139 F.3d 696 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Potler v. MCP Facilities Corp.*,
    471 F. Supp. 1344 (D.C.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rios v. City of Fresno*, No. CVF-05*644REC/SMS,
    2005 WL 1829614 (E.D. Cal. Jul. 25, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

*Salyards v. Metso Minerals Indus., Inc.*, No. 1:04 CV 05798 OWW LJ,
    2005 WL 3021959 (E.D. Cal. Nov. 10, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Standfacts Credit Servs., Inc. v. Experian Info. Solutions, Inc.*,
    405 F. Supp.2d 1141 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Telluride Mgmt. Solutions, Inc. v. Telluride Inv. Group*,
    55 F.3d 463 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Langley*,
    62 F.3d 602 (4th Cir.1995) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Redwood City*,
    640 F.2d 963 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Western Recreational Vehicles, Inc. v. Swift Adhesives, Inc.*,
    23 F.3d 1547 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Witt v. United Cos. Lending Corp. (In re Witt)*,
    113 F.3d 508 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**STATE CASES**

*A & M Produce Co. v. FMC Corp.*,
    135 Cal. App. 3d 473 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Amelco v. City of Thousand Oaks*,
    27 Cal. 4th 228 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Burr v. Sherwin Williams Co.*,
    42 Cal. 2d 682 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Camacho v. Automobile Club of So. Cal.*,
    142 Cal. App. 4th 1394 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Cel-Tech Comm., Inc. v. Los Angeles Cellular Tele. Co.*,
    20 Cal. 4th 163 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Clothesrigger v. GTE Corp.*,
    191 Cal. App. 3d 605 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Daugherty v. American Honda Motor Co., Inc.,*
   144 Cal. App. 4th 824 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Daugherty v. Ashe,*
   413 S.E.2d 336 (Va. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Diamond Multimedia Systems v. Sup. Ct.,*
   19 Cal. 4th 1036 (1999), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Evraets v. Intermedics Intraocular, Inc.,*
   29 Cal. App. 4th 779 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Fieldstone Co. v. Briggs Plumbing Servs.,*
   54 Cal. App. 4th 357 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Fundin v. Chicago Pneumatic Tool Co.,*
   152 Cal. App. 3d 951 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*Hauter v. Zogarts,*
   14 Cal. 3d 104 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15, 17

*Hewlett v. Squaw Valley Ski Corp.,*
   54 Cal. App. 4th 499 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Kasky v. Nike, Inc.,*
   27 Cal. 4th 939 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Keith v. Buchanan,*
   173 Cal. App. 3d 13 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 17

*Klein v. Asgrow Seed Co.,*
   246 Cal. App. 2d 87 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Klein v. Earth Elements, Inc.,*
   59 Cal. App. 4th 965 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*McKell v. Washington Mutual, Inc.,*
   142 Cal. App.4th 1457 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Metowski v. Traid,*
   28 Cal. App. 3d 332 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

*Norwest Mortgage, Inc. v. Sup. Ct.,*
   72 Cal. App. 4th 214 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*People v. Ruhl,*
   168 Cal. App. 3d 311 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Porter v. Arthur Murray, Inc.,*
   249 Cal. App. 2d 410 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Seely v. White Motor Company,*
   63 Cal. 2d 9 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Stop Youth Addition, Inc. v. Lucky Stores, Inc.,*
        17 Cal.4th 553 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Taylor v. Alfama,*
        481 A.2d 1059 (Vt. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**FEDERAL STATUTES**

15 U.S.C. § 2301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15 U.S.C. § 2310(d)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 2310(d)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 2310(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

28 U.S.C. § 1337 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

2005 U.S.C.C.A.N. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pub. L. 109-2 § 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATE STATUTES**

Cal. Com. Code § 2313 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-15

Cal. Com. Code § 2607 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. Proc. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Matter of Fedders Corp., 93 F.T.C. 949 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**STATEMENT OF THE ISSUES**

1.  Where Plaintiffs allege HP warranted a product would be "free from defect" but sold the product containing a defect, does a claim for breach of warranty lie?

2.  Where Plaintiffs allege HP warranted that it would repair or replace a product if it is not "free from defect," but failed to adequately repair or replace the defective product during the warranty term, does a claim for breach of warranty lie?

3.  Where HP made factual assertions about its computers which were the basis of the bargain, do those descriptions create express warranties?

4.  Are allegations that HP produced a defective product, knowingly sold it in a defective condition, provided inadequate repairs or replacement under the terms of its express warranty, and charged consumers for repairs outside of warranty actionable under the UCL?

5.  Whether this Court has jurisdiction over Plaintiffs' Magnuson-Moss Warranty Act claims under the Class Action Fairness Act, regardless of whether the Magnuson-Moss jurisdictional requirements are met.

**SUMMARY OF FACTS AND ARGUMENT**

HP's motion to dismiss ignores the claims and allegations as plead in the Second Amended Class Action Complaint, recasting and muddling them with each other and with Plaintiffs' prior complaint. This approach is fatal to HP's motion.

HP misstates the basis for Plaintiffs' written warranty claims. First, HP argues that Plaintiff Brothers' claim arises from a repair request made after the Limited Warranty expired. To the contrary, Plaintiff alleges the breach is HP's failure to adequately repair his computer when submitted *during* the warranty period. HP springboards from this factual error into an empty pool and argues that the claim is time barred. Clearly it is not.

HP also argues that Plaintiff McDaniel cannot state a claim for failure to repair; however, McDaniel's written warranty claims are not based on the repair, but rather HP's failure to meet a promised, expedited repair deadline. McDaniel purchased an HP Care Pack Service Agreement promising three-day repairs under which he submitted his computer twice. The first time HP kept the computer for 29 days and the second time for 8 days. McDaniel paid extra for expedited service, but because of HP's breach, he did not receive the benefit of that bargain. HP also argues that both Plaintiffs' written warranty claims fail for lack of privity, but prevailing authority excepts written, express warranties from the privity requirement.

1       HP further muddles Plaintiffs' claims in its approach to the warranty by description

2   count, arguing that such claims cannot be established because scienter and reliance have not

3   been met.  This argument confuses the allegations of the current complaint with the previous,

4   ignoring that Plaintiffs' claims are for breach of warranty, not fraudulent conduct.  Below,

5   Plaintiffs clear the fog and show that HP's factual assertions are, in fact, express warranties; that

6   scienter is not an element for breach; and that reliance in this instance is presumed.

7       HP next argues that because the complaint does not have 100 plaintiffs, this Court has no

8   jurisdiction over the Magnuson-Moss Warranty Act claim; however, even HP acknowledges that

9   the only court to have examined the question reached the opposite conclusion.  Below, Plaintiffs

10  provide a jurisdictional road map reconciling Magnuson-Moss with the Class Action Fairness

11  Act, demonstrating Congress' intent that this Court have jurisdiction over these claims.

12      Finally, HP reiterates many of the arguments above with respect to Plaintiffs' Unfair

13  Competition Law claims, and adds an argument that Plaintiffs do not plead pre-sale knowledge

14  of the alleged defect.  These arguments must be denied for the same reasons stated above, and

15  additionally, because HP simply ignores Plaintiffs' allegations of pre-sale knowledge.  HP's

16  efforts to argue the particulars of pre-sale knowledge raises factual questions which are not

17  properly decided on a motion to dismiss.

18      Plaintiffs properly allege each claim in their Second Amended Complaint, and HP's does

19  not show otherwise.  Moreover, HP raises several issues of fact, but those issues are not properly

20  resolved at the pleading stage, and cannot be the basis for dismissal.   Because HP fails to show

21  that Plaintiffs' allegations do not state a claim, HP's motion to dismiss must be denied.

22      **LEGAL STANDARD**

23      The Ninth Circuit disfavors granting Rule 12(b)(6) motions. *Gilligan v. Jamco Develop.*

24  *Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) ("The motion to dismiss for failure to state a claim is

25  viewed with disfavor and is rarely granted.").  Indeed, the Ninth Circuit says dismissal is proper

26  only in "extraordinary" circumstances.  *United States v. Redwood City*, 640 F.2d 963, 966 (9th

27  Cir. 1981).  *Accord Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ("A complaint should not be

28  dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove

1   no set of facts in support of his claim which would entitle him to relief.").

2         "A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the

3   complaint." *See* October 31, 2006 Order (Docket # 44) ("Order") at 6:12-13.  "The issue is not

4   whether the non-moving party will ultimately prevail but whether it is entitled to offer evidence

5   to support the claims asserted."  *See* Order at 6:15-16 (*citing Gilligan,* 108 F.3d at 249).  Further,

6   in evaluating HP's motion, this Court must construe the complaint in the light most favorable to

7   Plaintiffs (*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996)), and accept as true

8   all allegations in the complaint and the reasonable inferences drawn therefrom.  *Pareto v.*

9   *F.D.I.C*, 139 F.3d 696, 699 (9th Cir. 1998).  As long as Plaintiffs have pled a "short and plain"

10  statement of their claims, the complaint should be upheld.  *See* Fed. R. Civ. P. 8(a). In the

11  unlikely event this Court finds Plaintiffs fail to state a claim, leave to amend should be "freely

12  given." Fed. R. Civ. Proc. 15(a); *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir.

13  1990).  This is true even if this Court finds subject matter jurisdiction lacking.  *Telluride Mgmt.*

14  *Solutions, Inc. v. Telluride Inv. Group*, 55 F.3d 463, 466 (9th Cir. 1995).

15                              **ARGUMENT**

16  **I.    Plaintiff Brothers States Claims for HP's Breach of the Written, Express Limited**

17  **Warranty**

18        As noted in this Court's Order, "[u]nder California law, the elements required to establish

19  a breach of contract are the existence and terms of the contract, plaintiff's performance,

20  defendant's breach, and damages therefrom." *See* Order at 12:8-10 (*citing  Amelco v. City of*

21  *Thousand Oaks,* 27 Cal. 4th 228, 243 (2002)).  HP solely challenges the sufficiency of Plaintiff

22  Brothers' allegations describing HP's breach, and thus, concedes the remaining elements.  None

23  of HP's three arguments about Plaintiff's breach allegations support dismissing the claims.

24  Plaintiff sufficiently alleges a short and plain statement of these elements showing his

25  entitlement to relief.  *See* Fed. R. Civ. P. 8.

26

27

28

1

**A.    Plaintiff Brothers Pleads Two Breaches Occurring During the Warranty Period**

2

3    Plaintiff Brothers' claims for HP's breach of the Limited Warranty arise from HP's

4    promise to provide a product "free from defects in material or workmanship under normal use

5    during the Limited Warranty Period," and its promise that "[d]uring the Limited Warranty

6    Period, HP will repair or replace the defective component parts or the hardware product."  *See*

7    SAC ¶¶ 129, 130.  Plaintiff alleged that HP breached its promises by (a) failing to provide a

8    product free from defect (*see* SAC ¶¶ 16-19, 118), and (b) failing to adequately repair the defect

9    as required by the Limited Warranty. *See* SAC ¶¶ 44, 45, 135.   Ignoring the Rule 12(b)(6)

10   standard requiring a defendant to accept as true all well-plead facts, HP recasts these facts to

11   favor dismissal.

12   First, HP incorrectly asserts that Plaintiff's claims arise from a single event —  HP's

13   refusal to repair his notebook after the expiration of the warranty. *See* HP Mem. at 3:7-8; 8:5-8.

14   While that event *is* plead in the Second Amended Complaint, it is *not* the basis for Plaintiff's

15   claim.  Rather, it demonstrates that the in-warranty repair was indeed inadequate as alleged in

16   paragraphs 44, 45 and 135, and supports Plaintiffs' Unfair Competition Law claim.

17   The basis of Plaintiff's claim is that HP's *in-warranty* repair was inadequate such that HP

18   breached its promise to "repair or replace" Plaintiff Brothers' computer.  Specifically, Brothers

19   alleges that in August 2005, during the warranty period, his display appeared corrupt, began

20   showing vertical red lines, went blank, and ultimately the notebook computer would not turn on.

21   *See* SAC ¶ 42.  Plaintiff contacted HP and requested a repair or replacement. *See* SAC ¶ 43.  HP

22   accepted the warranty request, but instead of repairing the computer, HP replaced the defective

23   motherboard with another identically defective motherboard.  *See* SAC ¶ 44.  This "repair" was

24   inadequate because the computer still suffered from the same defect  — an inability to dissipate

25   the heat generated by its own components.  *See* SAC ¶¶ 30 n. 2, 44, 45.  HP's inadequate repair

26   is a breach of the Limited Warranty.  *See* SAC ¶ 135.

27   Because the Court was unclear whether Plaintiff complained of inadequate repairs in the

28   initial complaint (*see* Order at 12:14-15), Plaintiff clarified in the Second Amended Complaint

---

1   that his claim is indeed for inadequate repairs. *See* SAC ¶ 20(a) ("HP simply swaps the old one

2   out with a new one, resetting the defect. This is not an adequate repair under the warranty.");

3   ¶ 30 n. 2 ("If HP replaces the nVidia 5700 motherboard with another nVidia 5700 motherboard,

4   the defect has not been fixed and will continue. Replacing the motherboard only masks and

5   resets the defect . . . ."); ¶ 45 ("Replacing Plaintiff's or any other Class members' motherboard

6   with another identical motherboard is not an adequate repair under the warranty."); ¶ 73 ("HP

7   breached the written warranty by . . . failing to adequately repair or replace the computers . . . .").

8   These allegations must be taken as true. *Pareto*, 139 F.3d at 699. Conversely, HP's summary

9   declaration that it "repaired" Plaintiff's computer must be rejected.

10      The adequacy of HP's repair is not a matter that can be declared via fiat, but is a factual

11   question. *Porter v. Arthur Murray, Inc.*, 249 Cal. App. 2d 410, 421 (1967) ("Whether or not

12   there is a material breach of contract is generally a question of fact."). Simply put, repair means

13   repair; not inadequately repair, temporarily repair, or partially repair, but the question of whether

14   HP's actions — replacing a defective part with another defective part — constitutes a repair to

15   satisfy its warranty obligation must be decided by a finder of fact. For this reason, HP's motion

16   must be denied.

17   **B.   Plaintiff Brothers' Breach of Written Limited Warranty Claims are Not
        Time Barred**

18

19      As discussed above, Plaintiff Brothers asserts two breaches of HP's Limited Warranty:

20   (a) that HP failed to provide a product free from defect at purchase (*see* SAC ¶¶ 16-19, 118), and

21   (b) that HP breached its Limited Warranty because it failed to provide an adequate repair during

22   the warranty period. *See* SAC ¶¶ 44, 45, 135. Both claims clearly arise from HP's conduct

23   occurring *during* the warranty period, but surprisingly, HP argues that Plaintiff's claims are time

24   barred as arising outside the warranty.[1] HP relies on *Anunziato v. eMachines, Inc.*, 402 F.

25

26      [1] HP cites *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006)
    to support its assertion that Plaintiffs' warranty claims are contractually time-barred. Because
27   *Daugherty* is currently on appeal, the opinion is no longer citable precedent. *See* Declaration of
    Charles D. Marshall ("Marshall Decl."), Ex. 2; L.R. 3-4(e); Cal. R. Ct. 24; *People v. Ruhl*, 168
28   Cal. App. 3d 311, 318 n.8 (1985). In fact, it was not citable prior to HP filing its motion. In any

1  Supp.2d 1133 (C.D. Cal. 2005) for the premise that "a breach of express warranty claim is

2  contractually time barred when a malfunction occurs after the expiration of the warranty term."

3  *See* HP Mem. at 7:16-19.  Plaintiffs do not agree with *Annunziato* or that premise. *See* section

4  VI(A) of Plaintiff's opposition to HP's first motion to dismiss, Docket # 34.  Regardless, for the

5  reasons discussed, HP's reliance is misplaced, as the breaches occurred *prior* to the expiration of

6  the Limited Warranty.  Accordingly, HP's time-bar arguments fail.

7  **C.     Privity of Contract is Not Required Here**

8  As a threshold matter, it is important to note that HP's privity argument is only directed

9  at Plaintiff Brothers.  Plaintiff McDaniel purchased his computer directly from HP.  *See* SAC

10  ¶ 49.

11  While there is room to debate whether California dispensed with the privity requirement

12  in actions for breach of express warranty (*compare Seely v. White Motor Company*, 63 Cal. 2d 9,

13  14 (1965) ("Since there was an express warranty to plaintiff in the purchase order, no privity of

14  contract was required.") *and Hauter v. Zogarts*, 14 Cal. 3d 104 n. 8, 115 (1975) ("Privity is not

15  required for an action based upon an express warranty.") *with Cellars v. Pacific Coast*

16  *Packaging, Inc.*, 189 F.R.D. 575, 580 (N.D. Cal. 1999)("[T]he Court concludes that privity of

17  contract remains a requirement in express warranty actions.")), resolving this debate in

18  Plaintiff's favor is not necessary to overrule HP's motion because Plaintiff's action falls within

19  an exception that HP's own authorities respect.

20  Both *Cellars* and *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682 (1954), acknowledge that

21  privity is not required where a writing by the manufacturer forms the basis of the express

22  warranty.  *See Burr*, 42 Cal. 2d at 696 (recognizing privity exception where manufacturer makes

23  representations in labels or advertising material); *Cellars*, 189 F.R.D. at 579 ("written warranties

24

25  event, *Daugherty* is readily distinguishable because the plaintiffs there discovered their defects
well after the limited warranty expired.  Contrastingly, Plaintiffs here discovered HP's breach
26  during the warranty period and promptly notified HP, but HP did not adequately or timely repair
their computers as promised.  *See* SAC ¶¶ 32, 43, 44, 45, 46, 52, 54, 56, 57.  The California
27  Supreme Court holds that when a manufacturer fails to correct a defect in the manner promised it
28  is liable for breach of warranty.  *Seely v. White Motor Co.*, 63 Cal. 2d 9, 14 (1965).

similar to advertisements and labels . . . arguably fall within *Burr's* exception to the privity

rule.").  HP's Limited Warranty Statement, which is included with every computer, fits the

category of a writing by the manufacturer sufficient to negate the privity requirement. *Accord Ab*

*Avnet EMG v. Sierra Semiconductor Corp.*, No. C-93-0087, 1993 WL 280504, * 5 (N.D. Cal.

July 9, 1993) (noting privity exception when purchaser is consumer).  Moreover, the Service

Contracts are unquestionably directly entered into between consumers and HP.[2]

## II.   **Plaintiffs Brothers and McDaniel State Claims under Magnuson-Moss**

HP argues that Plaintiffs' Magnuson-Moss Warranty Act ("Mag-Moss") claims should be

dismissed because Plaintiffs do not meet the 100 named plaintiffs Mag-Moss jurisdictional

requirement, and because Plaintiffs are unable to maintain state law breach of warranty claims.

These arguments fail because (1) this Court's jurisdiction is pursuant to the Class Action

Fairness Act, and (2) Plaintiffs do sufficiently plead state law breach of warranty claims.

### A.   **The 100 Named Plaintiff Requirement Does Not Apply Because Jurisdiction is Under the Class Action Fairness Act**

Mag-Moss provides for federal subject matter jurisdiction only if the total amount in

controversy is at least $50,000, with a minimum of $25 for each individual claim, and the

number of named plaintiffs is at least 100.  *See* 15 U.S.C. 2310(d)(3).  The Act's jurisdictional

provisions generally serve two purposes: (1) to avoid trivial or minor actions being brought as

class actions in the federal district courts; and, (2) to overcome the absence of an amount in

controversy requirement in 28 U.S.C. § 1337, since the Mag-Moss is an act regulating

commerce.  *Dance v. U.S. Intern. Motors,* 647 F. Supp. 1205, 1207 (D.D.C.1986) (*quoting*

---

[2]   HP attached what it purports to be a true and correct copy of the Service Contract to its motion; however, HP only included part of the Service Contract. *See* a true and correct copy of the entire Service Contract attached as Exhibit 1 to the Declaration of Charles D. Marshall. HP's Exhibit A leaves out several important clauses such as those stating the Service Contract is for "repair or replacement" (*see* Ex. 1 at 5, 'Service Overview"), under which HP would arrange a "repair or exchange to meet the service level response time" (*see* Ex. 1 at 1, "How Do I Get Support ," ¶ 3), defined as "3-business days . . . measured from the time of logging the call to delivering the repaired unit to the customer." *See* Ex. 1 at 2, ("Service Description"); *see also* SAC ¶ 84.

1   *Novosel v. Northway Motor Car Corp.,* 460 F. Supp. 541 (N.D.N.Y.1978) (*citing* H.R.Rep. No.

2   1107, 93d Cong., 2d Sess. 42 (1974), *reprinted in* 1974 U.S.C.C.A.N., 7702, 7724)).

3          The Class Action Fairness Act ("CAFA"), on the other hand, "amends 28 U.S.C. § 1332,

4   the federal diversity statute, and vests original jurisdiction for class actions in federal court

5   where there is minimal diversity and the amount in controversy exceeds $5,000,000." *Chavis v.*

6   *Fidelity Warranty Serv., Inc.*, 415 F. Supp.2d 620, 625 (D.S.C. 2006) (*citing* 29 U.S.C §

7   1332(d)). CAFA became effective for all actions "commenced on or after" February 18, 2005.

8   Pub. L. 109-2 § 9.

9          In passing CAFA, Congress found that, "[o]ver the past decade, there have been abuses

10   of the class action device that have . . . undermined public respect for our judicial system . . .

11   [and] adversely affected interstate commerce." *Chavis*, 415 F. Supp.2d at 625 (*quoting* Pub. L.

12   109-2 110 Stat. 4). The Senate Judiciary Committee noted CAFA's tremendous impact:

13              Pursuant to new subsection 1332(d)(6), the claims of the individual class
                members in any class action shall be aggregated to determine whether the
14              amount in controversy exceeds the sum or value of $5,000,000 (exclusive of
                interest and costs). The Committee intends this subsection to be interpreted
15              expansively. If a purported class action is removed pursuant to these
                jurisdictional provisions, the named plaintiff(s) should bear the burden of
16              demonstrating that the removal was improvident (i.e., that the applicable
                jurisdictional requirements are not satisfied). And if a federal court is
17              uncertain about whether "all matters in controversy" in a purported class
                action "do not in the aggregate exceed the sum or value of $5,000,000," *the*
18              *court should err in favor of exercising jurisdiction over the case.* By the same
                token, the Committee intends that a matter be subject to federal jurisdiction
19              under this provision if the value of the matter in litigation exceeds
                $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the
20              defendant, and regardless of the type of relief sought (e.g., damages,
                injunctive relief, or declaratory relief).

21

22   *Chavis*, 415 F. Supp.2d at 625-26 (*quoting* S. Rep. No. 109-14 at 42 (2005), 2005 U.S.C.C.A.N.

23   3, 40 (emphasis added)). The Committee continued by summarizing, "[o]verall, new section

24   1332(d) is intended to expand substantially federal court jurisdiction over class actions . . . [and]

25   its provisions should be read broadly, with a strong preference that interstate class actions should

26   be heard in a federal court if properly removed by any defendant." *Id.* at 626.

27          Reconciling CAFA jurisdiction with Mag-Moss, the *Chavis* court made the following

28   analysis:

It is firmly entrenched that Congress is presumed to enact legislation with knowledge of the law. *Witt v. United Cos. Lending Corp. (In re Witt)*, 113 F.3d 508, 513 (4th Cir. 1997) (*citing United States v. Langley*, 62 F.3d 602, 605 (4th Cir.1995) (en banc). The practical effect of this canon of statutory interpretation is that "absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction." *Id.* (*quoting Estate of Wood v. C.I.R.,* 909 F.2d 1155, 1160 (8th Cir.1990)).

CAFA was passed with the clear intention of expanding "federal court jurisdiction over class actions . . . ." S. Rep. No. 109-14 at 42 (2005), 2005 U.S.C.C.A.N. 3, 40. Under the established framework for statutory interpretation, it is to be assumed that Congress was aware of [CAFA's] strict provisions for maintaining a class-action in federal court. Congress was also presumed to be aware of section 2310(d)(1)(A) of the [Mag-Moss] Act and its recognition that jurisdiction is appropriate under the [Mag-Moss] Act "in any court of competent jurisdiction in any State or the District of Columbia." 15 U.S.C. § 2310(d)(1)(A). Accordingly, CAFA's grant of federal jurisdiction over *any* class-action in which the matter in controversy exceeds the sum or value of $5,000,000 and where any member of a class of plaintiffs is a citizen of a state different from any defendant *necessarily includes qualifying class-actions filed pursuant to the [Mag-Moss] Act that fail to meet the strict provisions of 15 U.S.C. § 2310(d)(1)(B). CAFA provides an alternate basis by which federal courts may become courts of "competent jurisdiction" under 15 U.S.C. § 2310(d)(1)(A).*

*Chavis*, 415 F. Supp.2d at 626 (emphasis in added).

Thus, this Court has jurisdiction over Plaintiffs' claims under CAFA, given that "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which the Plaintiffs are citizens of states different from Defendant," and "[b]ased on the nature of the product and its distribution, Plaintiffs are informed and believe that less than one-third of the members of the proposed class are citizens of California." *See* SAC ¶ 4; 28 U.S.C. § 1332. Accordingly, Plaintiffs' claims cannot be dismissed for a failure to meet the Mag-Moss jurisdictional requirements.

### B. Plaintiff Brothers Properly States a Magnuson-Moss Claim Premised On a Breach of Written Warranty

Defendant's only remaining argument against Plaintiff Brothers' Mag-Moss claim is that he fails to state a breach of warranty claim under California state law. For the reasons discussed in Section I above, Brothers does state claims for breach of warranty under California law, and

thus, also states claims under 15 U.S.C. § 2301 *et seq.*

**C.    Plaintiff McDaniel Properly States a Magnuson-Moss Claim on a Breach of the Service Contract**

Plaintiff McDaniel sufficiently alleges a cause of action for HP's breach of its Care Pack Service Agreement ("Service Contract").  Plaintiff McDaniel, and members of the Service Contract Subclass, purchased a three-year Service Contract from HP in which HP promised to repair and/or replace and return defective products within three business days.  *See* SAC ¶¶ 39, 50, 84.  In purchasing the Service Contract, McDaniel and the Subclass bargained for expedited repairs, but HP did not honor its promise to repair or replace the defective zd7000 computers within the three-day period.  *See* SAC ¶¶ 85, 86.

HP argues that Plaintiff McDaniel has not plead any injury or damage, and that HP is excused from breaching its three-day repair or replace promise due to circumstances "beyond its reasonable control."  *See* HP Mem. 9-10.  HP is wrong on both counts.

**1.    Plaintiff McDaniel is Damaged By HP's Failure to Meet Its Three-Day Repair/Replace Promise**

HP argues that Plaintiff McDaniel lacks injury or damage because his "computer now functions free of problems."  *See* HP Mem. at 9:14-16.  Plaintiff McDaniel does not agree that his computer functions problem free; however, that issue is irrelevant because the injury of which Plaintiff complains is HP's failure to meet the benefit of the bargain — repairing or exchanging his defective computer *within three business days*. SAC ¶¶ 50 - 60, 86, 87, 89.  Plaintiff submitted his computer to HP twice under the Service Contract.  The first time, HP did not return the computer for 29 days. SAC ¶ 56.  The second time, HP did not return the computer for 8 days. SAC ¶ 60.  HP neither met the three day repair deadline, nor offered to replace the computer to meet the deadline as required under the Service Contract.[3] SAC ¶¶ 85, 86.  Plaintiff was entitled to a repair or exchange within three business days, but Plaintiff did not receive the

_____

[3] Instead, HP offered to downgrade Plaintiff's computer without any compensation for the loss in value. *See* SAC ¶¶ 54, 58.

1   benefit of this bargain.  He, thus, states a claim for breach of the Service Contract.

2            **2.      Whether HP's Delay Was Reasonable is a Question of Fact Not
                       Properly Decided on a Motion to Dismiss**

3

4            HP next argues that the terms of the Service Contract excuse HP from its three-day repair

5   obligation due to a "parts shortage."   *See* HP Mem. at 10:10-14.  HP points to a Service Contract

6   provision stating "HP will not be liable for performance delays or for nonperformance due to

7   causes beyond its *reasonable* control."  *See* HP Mem. at 10:14-17 (emphasis added).  Whether a

8   parts shortage existed is a factual matter outside the four-corners of the Complaint, and not a

9   proper basis for dismissal. *Gilligan,* 108 F.3d at 249.  Similarly, whether HP's failure to meet its

10  obligation was "beyond its *reasonable* control" is an issue of fact, and not a proper basis for

11  dismissal. *Rios v. City of Fresno*, No. CVF-05*644REC/SMS, 2005 WL 1829614 at *7 (E.D.

12  Cal. Jul. 25, 2005) ("Reasonableness traditionally is a question of fact for the jury" (*citing*

13  *Graham v. Connor,* 490 U.S. 386, 297 (1989)).  If, in fact, there was a parts shortage, Plaintiffs

14  allege that HP caused it and impermissibly bootstrapped the shortage to avoid its obligations.

15  *See* ¶ 152 (c) ("Using a self-created shortage of nVidia 5700 equipped motherboards to force the

16  Plaintiff and Class members into downgraded GPUs"); ¶ 152([d] ("Using a self-created shortage

17  of nVidia 5700 equipped motherboards to excuse itself from its own three-day repair or replace

18  promise under the HP Care Pack Service Contract.").  Regardless, whether HP's delay was

19  reasonable or whether the delay was of HP's own making is not a dispute amenable to a motion

20  to dismiss.  Discovery is needed to determine the full scope of HP's influence in the parts

21  shortage, and as such HP's motion to dismiss must be denied.

22  **III.    Plaintiffs State a Claim for Breach of Express Warranty of Description**

23            **A.      HP Created Express Warranties by Description by Describing Plaintiffs'
                       Computers as Being Compatible with the Advanced NVIDIA GeForce FX
                       Go5700**

24

25            Under California Commercial Code § 2313(b), "[a]ny description of goods which is

26  made part of the basis of the bargain creates an express warranty that the goods shall conform to

27  the description."  Manufacturers create express warranties through descriptions in brochures,

28  invoices, owner's manuals, advertisements, as well as in "technical specifications, blueprints,

1    and the like."  Cal. Com. Code § 2313, Official Commentary, Cmt. 5.  An express warranty by

2    description not only promises that the product is what it is described to be, but also that the

3    product works as described.  *See, e.g., Metowski v. Traid*, 28 Cal. App. 3d 332, 336 (1972)

4    ("electronic color camera" warrants that camera takes color pictures); *McKnelly v. Sperry Corp.*,

5    642 F.2d 1101, 1106 (8th Cir. 1981) ("general purpose winch" warrants that winch is suitable for

6    lifting persons and materials); *Taylor v. Alfama*, 481 A.2d 1059, 1060 (Vt. 1984) (car described

7    as being in "mint condition" warrants that car functions in "mint condition");  *Potler v. MCP*

8    *Facilities Corp.*, 471 F. Supp. 1344, 1351 (D.C.N.Y. 1979) (manufacturer breached express

9    warranty that paint could be applied underwater when it adhered for only a few months).  A

10   seller's description "is presumptively part of the basis of the bargain, and the burden is on the

11   seller to prove that the resulting bargain does not rest at all on the representation." *Keith v.*

12   *Buchanan*, 173 Cal. App. 3d 13, 23 (1985).  *See also* Cal. Com. Code § 2313, Official

13   Commentary, Cmt. 3, 8 (seller's statements form basis of the bargain "unless good reason is

14   shown to the contrary" . . .  any fact "which is to take such affirmations, once made, out of the

15   agreement requires clear affirmative proof.").

16          Here, Plaintiffs allege that HP expressly warranted, through its technical and product

17   specifications, that Plaintiffs' computers are compatible with the "NVIDIA GeForce FX

18   Go5700," an advanced GPU offering "the most cinematic graphics and special effects" —

19   capabilities typically only found in desktop systems at the time. *See* SAC ¶¶ 9, 95-97.   It is

20   understood in HP's trade that "the most cinematic graphics and special effects" describes a

21   GPU's ability to render 2D and 3D graphics, utilize advanced frame rates for smooth play back

22   and process information fast enough to provide the promised multi-media experience in a way

23   that is superior to a lesser GPU.  Thus, HP creates an objectively verifiable express warranty as

24   to Plaintiffs' computers' cinematic capabilities.  While it is true that Plaintiffs do not allege that

25   their computers  were not truly equipped with the GPU in question, they do allege that, contrary

26   to HP's express warranty, the GPU is not compatible with their computers, fails to function as

27   warranted, and eventually causes "repeated and unexpected shutdowns, crippled graphics

28   capabilities, and/or permanent damage to the motherboard resulting in a dead computer." *See*

1   SAC ¶¶ 18, 100.

2        Additionally, Plaintiffs allege that HP created an express warranty by describing

3   Plaintiffs' computers as "notebook PCs" featuring "mobile freedom," meaning that the

4   computers will function in a variety of settings. *See* SAC ¶¶ 12, 101, 102.  HP breached this

5   warranty because the defective GPU renders Plaintiffs' computers incapable of being used as

6   functional portable notebooks. *See* SAC ¶ 104.

7        Plaintiffs also allege that HP described the zd7000 series Intel Premium 4 processor and

8   an 800 MHZ system bus as ensuring "improved responsiveness and performance." *See* SAC

9   ¶ 106.  HP breached this warranty because Plaintiffs' computers do not have improved

10  responsiveness and performance promised, as Plaintiffs cannot utilize the processor and system

11  bus due to the defect. *See* SAC ¶ 109.

12       HP argues that it cannot be liable for these express warranties because "neither Mr.

13  Brothers nor Mr. McDaniel allege that they have read" the statements giving rise to the warranty,

14  implying that Plaintiffs must prove reliance. *See* HP Mem. at 13:4.  HP also asserts that Plaintiffs

15  must allege "how the[] statements formed the basis of the bargain." *See* HP Mem. at 13:5.  The

16  Official Commentary to § 2313, however, makes clear that "no particular reliance on such

17  statements need be shown in order to weave them into the fabric of the agreement."  Cal. Com.

18  Code § 2313, Official Commentary, Cmt. 3.  Instead, it is presumed that the statements "formed

19  the basis of the bargain, or merely a factor or consideration inducing the buyer to enter the

20  bargain." *Keith*, 173 Cal. App.3d at 23. *See also Daugherty v. Ashe*, 413 S.E.2d 336, 339 (Va.

21  1992) (a seller's technical description of jewelry is part of the basis of the bargain even though

22  buyer was not aware of it at purchase).  Thus, it is HP's burden to prove that statements did not

23  form the basis of the bargain. *See Keith*, 173 Cal. App.3d at 23. ("the burden is on the seller to

24  prove that the resulting bargain does not rest at all on the representation").

25       Furthermore, the question of "whether representations formed a part of the basis of the

26  parties' bargain is a question of fact," which cannot be resolved pursuant to a motion to dismiss.

27  *McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997). *See also* Cal.

28  Com. Code § 2313, Official Commentary, Cmt. 3 (the issue of whether a seller's statement is *not*

part of the basis of bargain "normally is one of fact").  Moreover, under the liberal pleading

requirements of Rule 8, Plaintiffs need not allege "how" the statements form a part of the basis

of the bargain; instead, Plaintiffs need only allege that the statements did form a part of the basis

of the bargain.  *See Jamil v. U.S. Postal Service*, No. C 05-5121 RS, 2006 WL 988825 at *1

(N.D. Cal. Apr. 14, 2006) (*citing Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995)

("the Federal Rules of Civil Procedure do not draw distinctions between pleading facts, ultimate

facts, or conclusions of law so long as the conclusions provide defendant with at least minimal

notice of the claim")). Plaintiffs have clearly done so.  *See* SAC ¶¶ 98, 103, 107.

### B.    HP's Affirmations Form an Express Warranty Regardless of Scienter as to Falsity

HP muddles Plaintiffs' prior UCL claims with their current breach of warranty claims in

arguing that the Court held (1) that HP's representations constitute "non-actionable puffery" and

(2) that Plaintiffs have not plead allegations "supporting an inference of falsity at the time

made."  *See* HP Mem. at 12:1.  HP's first assertion is simply false: Plaintiffs base their claim on

representations that the Court specifically found to be factual assertions. *See* Order at 8:15 ("that

the Pavilion contained a NVIDIA GeForce card is a factual assertion;" *and* Order at 8:17 ("the

improved responsiveness and performance of the processor and system bus . . . is a factual

assertion.").  As factual assertions, HP's representations create express warranties.  *See* Cal.

Com. Code § 2313. Further, the Court's determination that Plaintiffs had not plead allegations

"supporting an inference of falsity" was made in connection with Plaintiffs' prior UCL claim

alleging that HP's statements were false representations.  *See* Order at 9 n.4.  There is no scienter

requirement, however, in breach of warranty claims.  That is, a manufacturer's factual

representations create express warranties whether it knows those representations to be true or

not.  Thus, HP's arguments are without merit.

### C.    HP's Written Warranty Cannot Disclaim HP's Express Warranties by Description

Contrary to HP's assertions, HP cannot create an express warranty, promising that

Plaintiffs' computers are compatible with one of the highest performing graphics cards available,

1    and then subsequently negate that warranty. In *Fundin v. Chicago Pneumatic Tool Co.*, 152 Cal.

2    App. 3d 951, 957 (1984), defendant expressly warranted in its sales brochure that its drill rig

3    would drill to depths of 1,800 feet.  Defendant argued that this warranty was effectively

4    disclaimed by a clause in the brochure providing "[t]he only warranty applicable is our standard

5    written warranty."  *Id*.  The court disagreed, explaining that "when a product has been expressly

6    described by its manufacturer as having certain detailed capacities under certain conditions, it

7    would be both unfair and unreasonable to construe the [disclaimer] language . . . as negating the

8    express description . . . ."  *Id*. at 958.

9        Likewise, in *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 484 n.10 (1982),

10   defendant expressly warranted that its weight-sizing machine would pack 1200-1250 cartons per

11   hour.  The court determined that defendant's conspicuous warranty disclaimer did not invalidate

12   defendant's warranty because "an express warranty takes precedence over an attempted

13   disclaimer."  *Id*.  *See also Cmty. Tel. Servs., Inc. v. Dresser Indus., Inc.*, 586 F.2d 637, 640, 642

14   (8th Cir. 1978) (express warranties provided in promotional materials are not cancelled or

15   superceded by technical specifications in a contract notwithstanding disclaimers).

16       The California Commercial Code supports this view.  Section 2316 provides "[w]ords or

17   conduct relevant to the creation of an express warranty and words or conduct tending to negate

18   or limit warranty shall be construed wherever reasonable as consistent with each other; but . . .

19   negation or limitation is inoperative to the extent that such construction is unreasonable."  The

20   Official Commentary explains that this section is designed to protect buyers "from unexpected

21   and unbargained language of disclaimer by denying effect to such language when inconsistent

22   with language of express warranty . . . ."  The Commentary makes clear that disclaimers of

23   express warranty are strongly disfavored.  *See* Cal. Com. Code § 2313, Official Commentary,

24   Cmt. 1, 4 (express warranties "go so clearly to the essence of the bargain that words of

25   disclaimer in form are repugnant" to them and thus "cannot be given literal effect").

26       Pursuant to § 2316, California courts hold that "any disclaimer or modification [of an

27   express warranty] must be strictly construed against the seller."  *Hauter*, 14 Cal.3d at 119.  *See*

28   *also Fundin*, 152 Cal. App. 3d at 958 ("[s]trict construction against the person who has both

1    warranted a particular fact to be true and then attempted to disclaim the warranty is especially

2    appropriate in light of the fact that a disclaimer of express warranty is essentially

3    contradictory").  Further, unless the disclaimer is actually negotiated or is at least brought to the

4    consumer's attention prior to sale, a form contract disclaimer is invalid.  *See, e.g., Western*

5    *Recreational Vehicles, Inc. v. Swift Adhesives, Inc.*, 23 F.3d 1547, 1554 (9th Cir. 1994)

6    (explaining "disclaimer made after a sale is completed cannot be effective because it was not

7    part of the bargain between the parties" and the parties "never discussed, much less negotiated,

8    the disclaimers"); *Klein v. Asgrow Seed Co.*, 246 Cal. App. 2d 87, 93 n.3 (1966) (finding a

9    disclaimer invalid in part because it was "never brought to the attention of the buyer prior to the

10   completion of the sale").

11        Here, Plaintiffs allege that HP created express warranties by describing Plaintiffs'

12   computers as having special graphics features as a result of being compatible with a high

13   performance graphics card; through its description of Plaintiffs' computers as being mobile

14   notebook PCs; and through its statement that the processor and system bus ensured improved

15   responsiveness and performance.  *See* SAC ¶¶ 9, 12, 95, 96, 97, 101, 102, 106.  HP broke its

16   promise when the graphics cards proved to be incompatible with Plaintiffs' computers, rendering

17   them inoperable.  *See* SAC ¶¶ 18, 100, 104, 109.  HP's subsequent disclaimers do not invalidate

18   its express warranties, for such a result would undermine the purpose of § 2316 to protect

19   Plaintiffs from unexpected, unfair, and unbargained for language that, if construed the way HP

20   insists, would essentially deny Plaintiffs the benefit of their bargains with HP.

21        Defendant relies on *Salyards v. Metso Minerals Indus., Inc.,* No. 1:04 CV 05798 OWW

22   LJ, 2005 WL 3021959 (E.D. Cal. Nov. 10, 2005), wherein the court states that § 2316 allows for

23   limitations of express or implied warranties.  *Id*. at *9.  That case, however, did not involve an

24   express warranty that was irreconcilably inconsistent with a unilateral written disclaimer.  *See id.*

25   Instead, the court found the disclaimer inapplicable because it was not part of the contract

26   between the defendant and the end-user plaintiff.  *Id*. at *10.  Thus, *Salyards* has no bearing on

27   this case.

28

---

**D.      Plaintiffs Need Only Notify HP that its Product Does Not Conform to its Description Within a Reasonable Time**

HP's express warranty by description exists apart from its Limited Warranty, and the written warranty has no bearing on it.  *See, e.g., Klein*, 246 Cal. App. 2d at 97 (written warranty with delivered products does not relieve seller of liability for breach of a previously formed warranty by description).  Therefore, neither Plaintiffs nor class members are required to notify HP of the product's failure to conform within one year.  Rather, notice need only be given "within a reasonable time" after discovery of HP's breach.  *See* Cal. Com. Code § 2607; *Metowski*, 28 Cal. App. 3d at 339.  This is a question of fact unless reasonable minds cannot differ. *Fieldstone Co. v. Briggs Plumbing Servs.*, 54 Cal. App. 4th 357, 370 (1997).  As a question of fact, whether Plaintiff Brothers' notice was provided within a reasonable time cannot be resolved on a motion to dismiss. *Rios*, 2005 WL 1829614 at *7 ("Reasonableness traditionally is a question of fact for the jury.").  If this issue were resolved, however, it should be resolved in Plaintiff Brothers' favor because, both times, he promptly contacted HP after his computer failed.  *See* SAC ¶¶ 43, 47.

**E.      Plaintiff Brothers Need Not Allege Privity of Contract**

Privity is not required where a manufacturer creates a warranty by description.  *Cellers*, 189 F.R.D. at 579 (*citing Burr,* 42 Cal.2d at 696); *Evraets v. Intermedics Intraocular, Inc.*, 29 Cal. App. 4th 779, 789 n.4 (1994) (*citing Seely*, 63 Cal.2d at 9); *Hauter*, 14 Cal.3d at 115 n.8.  Some courts hold that a buyer must rely on the manufacturer's representations to fall under this exception,[4] but actual reliance on a manufacturer's express warranties need not be shown by the buyer and instead is presumed.  *See Keith*, 173 Cal. App. 3d at 18.  Thus, even if Plaintiff Brothers were required to show that he relied on HP's product descriptions, such reliance is reflected through Plaintiff Brothers' purchase of his computer,[5] which is presumed to have been based on HP's descriptions.  *See id*., at 23.

---

[4] *See, e.g., Fundin*, 152 Cal. App. 3d at 957.

[5] SAC ¶ 105.

1   **IV.    Plaintiffs Sufficiently State Claims For Relief Under The UCL**

2       **A.    Plaintiffs Properly Plead "Unlawful" Conduct**

3       HP's arguments as to Plaintiffs' "unlawful" claims can be rejected in short order. First, for

4   the reasons discussed in Section II above, Plaintiffs sufficiently state claims under Mag-Moss.

5   Thus, they sufficiently state "unlawful" claims predicated on Mag-Moss. Second, it is well-

6   established that a private right of action under a predicate statute is not necessary to rely on that

7   statute to state a claim for "unlawful" conduct. *See Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950

8   (2002). Thus, even if HP is correct that the California Commercial Code does not create an

9   independent cause of action (a proposition for which HP cites no authority), violation of the

10  Commercial Code can, nonetheless, form the basis of an "unlawful" claim. *Cf Stop Youth*

11  *Addition, Inc. v. Lucky Stores, Inc.*, 17 Cal.4th 553, 573 (1998) (violation of criminal statute

12  sufficient predicate for "unlawful" violation); *Hewlett v. Squaw Valley Ski Corp.*, 54 Cal. App.

13  4th 499, 526 (1997) (violation of administrative regulation sufficient predicate for "unlawful"

14  violation).

15      Third, engaging in deceptive and unfair practices vis-a-vis consumers in violation of

16  Section 5 of the FTC Act is "unlawful," even in the absence of an allegation of an unreasonable

17  restraint of trade. As the United States Supreme Court held, Section 5 may proscribe practices as

18  unfair or deceptive in their effect upon consumers regardless of their nature or quality as

19  competitive practices or their effect on competition. *See F.T.C. v. Sperry & Hutchison Co.*, 405

20  U.S. 233, 239-245 (1972).[6] In fact, the F.T.C. has used its power, for example, to require a

21  manufacturer who knew or had reason to know of a latent defect to undertake a comprehensive

22  remedial program of the sort Plaintiffs seek here, even though the manufacturer was not alleged

23  to have restrained competition. *See In the Matter of Fedders Corp.*, 93 F.T.C. 949 (1979)

24  _____

25      [6] *Maxim Integrated Prods., Inc. v. Analog Devices, Inc.*, No. 94-16744, 1996 WL 117425
    (9th Cir. Mar. 15, 1996) is not inconsistent with this holding. There, the court simply held that
26  Maxim could not avoid summary judgment by recasting insufficient antitrust claims against a
    competitor as UCL claims. UCL jurisprudence has since evolved to allow such "antitrust lite"
27  claims. *See Cel-Tech Comm., Inc. v. Los Angeles Cellular Tele. Co.* 20 Cal. 4th 163, 186-87
    (1999).
28

1  (requiring manufacturer to offer non-defective replacement parts without charge, extend a full

2  warranty on the replacement part, reimburse those who paid to repair the defect, notify all

3  current and past owners to alert them of the defect and remedial program, and advertise the

4  remedial program). Underscoring the propriety of Plaintiffs' use of Section 5 as a predicate

5  statute, one California Court of Appeal recently adopted the elements of a Section 5 violation for

6  evaluating "unfair" conduct under the UCL. *See Camacho v. Automobile Club of So. Cal.*, 142

7  Cal. App. 4th 1394, 1403 (2006). Because HP solely challenges the propriety of Plaintiffs using

8  Section 5 as an "unlawful" predicate and not the sufficiency of Plaintiffs' allegations satisfying

9  its elements, and its position clearly is not well-taken, Plaintiffs' pleading must be upheld.[7]

10  **B.    Plaintiffs Properly Plead "Unfair" Conduct**

11  HP attacks Plaintiffs' "unfair" claims by declaring that it repaired Plaintiff Brothers'

12  computer, so there was nothing "unfair" about its conduct. *See* HP Mem. at 17:17. As discussed,

13  Plaintiffs specifically plead that HP ***did not*** repair Plaintiff Brothers' computer. *See* SAC ¶¶ 44,

14  45, 135 It simply swapped one defective part with another. *See id.* As such, HP's first argument

15  must fail.

16  HP's second argument is that Plaintiff McDaniel's computer is currently functioning, so

17  HP has done nothing "unfair." *See* HP Mem. at 17:20. This is a non-sequitur to the conduct

18  Plaintiffs challenge as unfair, however. *See* SAC ¶ 152. HP simply posits no basis for dismissing

19  Plaintiffs challenge to HP downgrading motherboards without compensating for the difference in

20  value (*see id.*, ¶ 152(b)), using a self-created shortage of parts to avoid contractual obligations

21  (*see id.*, ¶152[d]), conducting a secret warranty program (*see id.*, ¶ 152[e]), or *any* of the conduct

22  Plaintiffs allege is unfair (*see, generally, id.*, ¶ 152). In fact, HP completely disregards Plaintiffs'

23  allegations. Its failure to address Plaintiffs' theories and allegations is fatal to its motion.[8]

24

25  [7]Moreover, Plaintiffs sufficiently plead the elements of a Section 5 violation. *Compare*

26  *Camacho*, 142 Cal. App. 4th at 1403 (setting forth elements) *with* SAC ¶ 144-46.

27  [8] HP also urges the Court to dismiss Plaintiffs' UCL claims for their failure to plead pre-
sale knowledge of the defect, relying solely on *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th

28  965 (1997). *See* HP Mem. at 16:9-10. First, *Klein* is a summary judgment opinion, not a test of

1    **V.      The UCL Applies Nationwide to Wrongful Conduct Emanating from California**

2           HP wrongly focuses on Plaintiffs' residences in arguing that the UCL cannot protect

3    them form harmful conduct emanating from California.  The proper focus, however, is on HP's

4    misrepresentations, its knowing concealment of material facts, its failure to adequately repair its

5    defective computers, and its breach of express promises.  These practices took place in

6    California, where HP is headquartered.

7           In *Diamond Multimedia Systems v. Sup. Ct.*, 19 Cal. 4th 1036 (1999), the California

8    Supreme Court determined that California law applied to out-of-state purchasers who bought or

9    sold stock, the price of which was affected by market manipulation, even though the purchases

10   took place outside of California.  *Id*. at 1041.  The court did so because the alleged fraudulent

11   conduct took place in California, holding that "California has a legitimate and compelling

12   interest in preserving a business climate free of fraud and deceptive practices." *Id*. at 1064.

13   Likewise, in *Clothesrigger v. GTE Corp.*, 191 Cal. App. 3d 605 (1987), the court determined that

14   applying the UCL to non-California citizens was appropriate because defendant's principal place

15   of business was located in California and the alleged fraudulent misrepresentations forming the

16   basis of the claims emanated from California.  *Id*. at 613.  Here, HP's headquarters is located in

17   Palo Alto, California.  This is where HP approved the representations in its warranties and

18   marketing, where HP decided to keep silent about the defect, and where HP directed inadequate

19   repairs be done.   Because Plaintiffs' claims center on HP's conduct in light of a known defect,

20   and that conduct emanated from California, Plaintiffs' UCL claims are entirely proper.[9]

21

22   the sufficiency of plaintiffs' allegations. If *Klein* is relevant at all, it makes plain that unfair
     business practices under the UCL may only be judged on a complete record and should rarely be
23   dismissed at the pleading stage. *See also McKell v. Washington Mutual, Inc.*, 142 Cal. App.4th
     1457, 1473 (2006) ("[T]he determination whether [a practice] is unfair is one of fact which
24   requires a review of the evidence from both parties."). Second, Plaintiffs specifically plead "HP
     knew . . . about the nonconformance prior to selling the Subject Computers." *See* SAC ¶ 34.
25

26          [9]  The cases upon which HP relies are readily distinguishable.  In *Norwest Mortgage, Inc.
     v. Sup. Ct.*, 72 Cal. App. 4th 214 (1999), the key factor in the court's decision was that the
27   defendant — unlike HP — was not headquartered in California.  Similarly, in *Standfacts Credit
     Servs., Inc. v. Experian Info. Solutions, Inc.*, 405 F. Supp.2d 1141 (C.D. Cal. 2005), the court
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

Plaintiffs respectfully request that the Court deny HP's Motion to Dismiss Plaintiffs' Second Amended Complaint.

DATED: January 12, 2007

Respectfully submitted,

**GREEN WELLING LLP**

By: _____/s/_____
         Jenelle Welling

Robert S. Green
Charles D. Marshall
595 Market Street, Suite 2750
San Francisco, CA 94105
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
cand.uscourts@classcounsel.com

*Attorneys for Plaintiffs*

---

dismissed claims against two co-conspirator defendants not headquartered in California because the plaintiffs did not allege that the defendants committed unlawful conduct in California.  In *Speyer v. Avis Rent A Car System, Inc.*, 415 F. Supp.2d 1090 (S.D. Cal. 2005), the court's holding was predicated on the legislative intent to the contrary expressed in the underlying statute upon which plaintiffs' UCL claims were based.