1

2

3

4                                                            **E-FILED on** ___2/12/07___

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11

12   MICHAEL BROTHERS, an individual,        No. C-06-02254 RMW
     GREGORY McDANIEL, an individual, on
13   behalf of themselves and all others similarly   ORDER GRANTING IN PART AND
     situated,                                DENYING IN PART DEFENDANT'S
14                                            MOTION TO DISMISS SECOND
                        Plaintiffs,           AMENDED COMPLAINT
15
            v.                                **[Re Docket No. 54]**
16
     HEWLETT-PACKARD CO.,
17
                        Defendant.
18

19

20

21         Defendant Hewlett-Packard Co. ("HP") moves to dismiss plaintiffs Michael Brothers's

22   ("Brothers") and Gregory McDaniel's ("McDaniel) Second Amended Complaint ("SAC") pursuant

23   to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Plaintiffs oppose the motion.  The court heard

24   oral argument on the motion on Friday, February 2, 2007.  The court has read the moving and

25   opposing briefs and considered the arguments of counsel.  For the reasons set forth below, the court

26   grants in part and denies in part defendant's motion to dismiss.  Brothers's claims for breach of

27   warranty based on the Limited Warranty and Technical Support document are dismissed with

28   prejudice.  Plaintiffs' fourth claim for relief is stricken pursuant to Fed. R. Civ. P. 12(f).  Defendant's

1    motion is denied as to the remaining claims.

2                              **I. BACKGROUND**

3        **A.    Procedural History**

4            On October 31, 2006 this court granted defendant's motion to dismiss Brothers's initial

5    complaint and denied defendant's motion to strike portions of the complaint.  *See* Order of October

6    31, 2006 Granting Defendant's Motions to Dismiss and Denying Defendant's Motion to Strike

7    ("October 31, 2006 Order").  Prior to the court's issuance of the October 31, 2006 Order, plaintiffs

8    filed a first amended complaint, which plaintiffs withdrew after the order was issued.  The SAC adds

9    plaintiff McDaniel and five additional claims for relief.

10       **B.    Factual Allegations**

11           HP manufactures, sells, and services, *inter alia*, notebook computers throughout the United

12   States, including the "Pavilion zd7000" line of notebook computers (collectively, the "Pavilion").

13   SAC ¶¶ 7-8. Brothers is a resident of Nevada and McDaniel is a resident of Washington.  *Id.* ¶¶ 1, 2.

14           On August 24, 2004 Brothers purchased a Pavilion zd7260us with an nVidia 5700 equipped

15   motherboard from Circuit City, paying "over $2,000." *Id.* ¶ 40.  Brothers alleges that in August

16   2005 the display screen began showing red vertical lines, went blank, and ultimately would not turn

17   on. *Id.* at ¶ 42.  At the time, Brothers's computer was still subject to the Limited Warranty and

18   Technical Support document ("Limited Warranty") that accompanied the purchase of his computer.

19   Brothers contacted HP and received "in-warranty" repairs, essentially a replacement of the

20   motherboard with another motherboard similarly equipped with the nVidia 5700 GPU. *Id.* ¶ 44.

21   Five months later, Brothers's Pavilion notebook again overheated and the display screen exhibited

22   "graphics distortion." *Id.* ¶ 46.  Brothers called HP and requested that his notebook be repaired. *Id.*

23   ¶ 47.  At this time, Brothers's Pavilion was apparently no longer under warranty.  HP informed

24   Brothers that his notebook was no longer under warranty and that he could either (1) pay $300 to

25   repair the problem or (2) purchase an extended warranty. *Id.* ¶ 48.

26           McDaniel purchased a Pavilion "zd7000 (CTO)" notebook computer on May 9, 2004 from

27   HP along with a three-year service contract ("Care Pack Service Contract"). *Id.* ¶¶ 49, 50.  In July of

28   2006 McDaniel's computer display "appeared corrupted, began showing red vertical lines and

refused to boot into any video mode using the nVidia GeForce FX 5700 GPU." *Id.* ¶ 51.  On July 11, 2006 McDaniel called HP's technical support.  *Id.* ¶ 52.  HP's customer service web site indicated that the notebook would be returned to McDaniel on July 24, 2006.  *Id.* ¶ 53.  On approximately July 24, 2006 McDaniel contacted HP about his notebook and was informed that "he would have to wait indefinitely for a motherboard with the integrated nVidia 5700 GPU." *Id.* ¶ 54.  HP suggested that McDaniel either accept a downgraded replacement motherboard or wait 30 days, after which HP might consider replacing his defective computer.  *Id.*  McDaniel informed HP that neither suggestion was acceptable.  *Id.*  On approximately August 9, 2006 HP returned McDaniel's computer with a replacement motherboard equipped with an nVidia 5700 GPU.  *Id.* ¶ 56.  On August 27, 2006 McDaniel's notebook failed again.  *Id.* ¶ 57.  McDaniel initiated a service claim with HP on August 28, 2006 and was informed that if the nVidia 5700 GPU was not in stock HP would contact him to authorize a downgraded nVidia GPU.  *Id.* ¶ 58.  McDaniel alleges that HP refused to honor the three-day turnaround and did not return his computer for eight days.  *Id.* ¶¶ 59-60.  Although McDaniel alleges that he informed the customer service representative that he did not agree to a downgraded motherboard, HP repaired his notebook by installing an ATI GPU equipped motherboard, rather than the zd7000 series.  *Id.* ¶ 61.  McDaniel alleges "[w]hile the ATI GPU functions, it does not deliver the performance [he] was promised when he purchased his zd7000." *Id.*

The Limited Warranty is a standard one-year warranty that HP offers with each Pavilion.  It provides in part:  "HP warrants that the HP hardware product and all internal components of the product that you have purchased or leased from HP are free from defects in materials and workmanship under normal use during the Limited Warranty Period" and "During the Limited Warranty Period, HP will repair or replace the defective component parts or hardware products." *Id.* ¶¶ 37-38.  In addition, HP offers the Care Pack Service Contract, an extended warranty which customers can purchase separately, and which provides, *inter alia*, express repairs within three business days.  *Id.* ¶ 39.  In addition, HP has in some instances replaced the notebook for Pavilion

**United States District Court**
For the Northern District of California

owners, typically a zd8000 series computer.[1]  *Id.* ¶ 35.

According to the complaint, in February 2006 HP issued an internal "Service Coverage Notice" that the "SPS-BD SYSTEM NV36/128 MB 365894-001" and "SPS-BD SYSTEM NV36/64MB 365893-001" are "experiencing a high rate of failure." *Id.* ¶ 23.  Plaintiffs allege that the SPS-BD SYSTEM NV36/128 MB 365894-001 and SPS-BD SYSTEM NV36/64MB 365893-001 are the identical motherboards HP installed in the Pavilions at issue.  *Id.* ¶ 25.

### C.  Claims for Relief

Plaintiffs' SAC asserts seven claims for relief: (1) breach of warranty in violation of the Magnuson-Moss Act, 15 U.S.C. § 2301 *et seq.*, (2) breach of service contract in violation of the Magnuson-Moss Act, 15 U.S.C. § 2301 *et seq.*, brought by plaintiff McDaniel (3) breach of Cal. Com. Code § 2313(1)(b), (4) breach of Cal. Com. Code § 2313(1)(a), (5) common law breach of express warranty, (6) violation of Cal. Bus. & Prof. Code § 17200 *et seq.* based on unlawful conduct, and (7) violation of Cal. Bus. & Prof. Code § 17200 *et seq.* based on unfair conduct. Plaintiffs essentially seeks restitution and disgorgement, actual damages, repair or replacement of the zd7000,  and any statutory remedies.[2]

## II.  ANALYSIS

### A.  Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Dismissal can be based on the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  The issue is not whether the non-moving party will ultimately prevail but whether it is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the

---

[1]     Although plaintiffs' initial complaint alleged that HP replaces the computers for customers who have had repeated repairs within warranty, plaintiffs now allege that HP replaces computers for those customers who are "persistent enough."

[2]     The initial complaint asserted that HP's conduct violated Cal. Bus. & Prof. Code § 17200 *et seq.* and that HP breached its express warranty.

United States District Court
For the Northern District of California

1   non-moving party. *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994). A court must not dismiss a

2   complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no

3   set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S.

4   41, 45-46 (1957); *see also United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

5   However, the court is not required to accept conclusory legal allegations "cast in the form of factual

6   allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult*

7   *Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

8          **B.     Breach of Express Warranty**

9          Plaintiffs' first through fifth claims for relief assert breach of warranty.

10                    **1.     Limited Warranty and Technical Support Document**

11          Plaintiffs' fifth claim asserts a common law breach of express warranty. Brothers received

12   the one year Limited Warranty with his purchase of a Pavilion notebook. Plaintiffs allege that HP

13   promised in its Limited Warranty (1) "that the HP hardware product and all the internal components

14   of the product . . . are free from defects in materials or workmanship under normal use during the

15   Limited Warranty Period" and (2) "During the Limited Warranty Period, HP will repair or replace

16   the defective component parts or the hardware product." SAC ¶¶ 128-130. Plaintiffs contend that

17   HP breached these warranties because the internal components of Brothers's Pavilion were "not free

18   from defects in materials or workmanship under normal use" and because HP "fail[ed] to repair or

19   replace the products as promised." *Id.* ¶¶ 133, 135.

20          HP first argues that Brothers's claim fails for lack of privity of contract. HP cites *Burr v.*

21   *Sherwin Williams Co.*, 42 Cal. 2d 682, 695-97 (1954), for the proposition that as a general rule

22   privity is required in an action for breach of express warranty. In *Burr*, the court held that the trial

23   court erred in instructing the jury that privity is not a requirement for *implied* warranties between a

24   manufacturer and a subsequent purchaser. *Id.* at 696. Although the court observed that, in general,

25   privity is a requirement for both express and implied warranty claims, the court's holding did not

26   address express warranties. In *Seely v. White Motor Co.*, 63 Cal. 2d 9, 14 (1965), the court, citing

27   *Burr*, concluded that no privity of contract was necessary between the manufacturer and a

28   subsequent purchaser because "there was an express warranty to plaintiff in the purchase order"

United States District Court
For the Northern District of California

1    from the manufacturer.  Privity appears to remain a general requirement in breach of express

2    warranty claim.  *See All West Elecs., Inc. v. M-B-W, Inc.*, 64 Cal. App. 4th 717, 725 (1998) ("The

3    general rule is that privity of contract is required in an action for breach of either express or implied

4    warranty."); *Cellars v. Pac. Coast Packaging*, 189 F.R.D. 575, 580 (N.D. Cal. 1999) ("privity of

5    contract remains a requirement in express warranty actions"); *But see Hauter v. Zogarts*, 14 Cal. 3d

6    104, 115 (1975) ("Privity is not required for an action based upon an express warranty.").

7            Although there does not appear to be clear California case law excusing the general privity of

8    contract requirement in the instant case, plaintiffs' claims are more analogous to the facts in *Seely*.

9    Here, plaintiffs are consumers, not merchants who negotiated a contract containing warranties.  *See*

10   *AB Avnet EMG v. Sierra Semiconductor Corp.*, 1993 WL 280504, *5-*6 (N.D. Cal. 1993)

11   (dismissing claim of breach of express warranty for lack of privity after distinguishing *Seely* on the

12   basis that it involved consumers and not dealings between two merchants).  The Limited Warranty

13   expressly provides that it "applies to the HP branded hardware products sold by or leased from

14   Hewlett-Packard Company, its subsidiaries, affiliates, authorized resellers, or country distributors

15   (collectively referred to in this limited warranty as 'HP')."  Def.'s Mot., Ex. at 5.  Although Brothers

16   bought his computer from Circuit City rather than directly from HP, HP does not contest that Circuit

17   City is an authorized reseller of the HP Pavilion.  The court finds that the terms of the Limited

18   Warranty provide that the representations therein are to the end user of the HP product.  *See id.*

19   Therefore, the court does not find that Brothers's breach of express warranty claim is barred by a

20   lack of privity.

21           HP also argues that Brothers's express warranty claim is time-barred for the same reasons

22   noted in the October 31, 2006 Order.  In dismissing plaintiffs' initial complaint, the court noted that

23   "[t]o the extent plaintiff [Brothers] contends that HP failed to repair the defect while his Pavilion

24   notebook was under warranty, it is undisputed that HP replaced the motherboard at the time, which

25   corrected the asserted screen display problems."  Plaintiffs now argue, based on the same factual

26   allegations, that although HP replaced plaintiffs' motherboards with the same type of motherboard,

27   there was a breach because such action was inadequate.  *See* Pls.' Opp'n at 4:17-26.

28

**United States District Court**
For the Northern District of California

1    The court finds that Brothers has failed to state a breach of express warranty claim based on

2    the Limited Warranty.  Plaintiffs argue that there was no "repair" since HP merely replaced the

3    zd7000 motherboard with another zd7000 motherboard, which is essentially replacing a defective

4    part with another defective part.  Plaintiffs further argue whether HP repaired Brothers's notebook is

5    a question of fact for the jury because breach of contract questions are questions of fact.  As the

6    court stated in its October 31, 2006 Order, it is undisputed that HP replaced Brothers's motherboard

7    at the time he made his in-warranty service claim, and that the replacement motherboard corrected

8    the asserted screen display problems.  Oct. 31, 2006 Order at 12:10-13.  Plaintiffs' SAC indicates

9    that HP addressed Brothers's in-warranty service claim by replacing the motherboard with another

10   one similarly equipped with the nVidia 5700 GPU.  SAC ¶ 44.  Brothers then experienced problems

11   with his notebook five months later.  *Id.* ¶ 46.  While plaintiffs now make the argument that

12   replacing the failed motherboard with a motherboard equipped with the same GPU was inadequate,

13   replacement or repair of malfunctioning components during the life of the warranty is exactly what

14   the Limited Warranty provides.  *See* Def.'s Mot. Ex. at 7.  HP could not have breached the Limited

15   Warranty by acting in conformance with it.

16   Moreover, the Limited Warranty does not guarantee against design defects, it guarantees

17   against defects in materials and workmanship.  Based on its express terms, the Limited Warranty

18   essentially promises that HP would not use materials that are defective or substandard workmanship

19   in repairing or replacing parts under warranty.  Unlike defects in materials or workmanship, a design

20   defect is manufactured *in accordance with* the product's intended specifications.  *McCabe v. Am.*

21   *Honda Motor Co.*, 100 Cal. App. 4th 1111, 1120 (2002) (A design defect "exists when the product is

22   built in accordance with its intended specifications, but the design itself is inherently defective.").  In

23   addition, plaintiffs' theory charging a manufacturer with breach of warranty because the replacement

24   part later fails is contrary to case law.  *See Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133,

25   1141 (C.D. Cal. 2005) (holding that because "Annunziato's express warranty has expired, . . . his

26   claims based on breach of the express warranty fails as a matter of law" in response to plaintiff's

27   argument that the defect is of a "continuing nature" and not a "subsequent malfunction"); *cf.*

28   *Daugherty*, 144 Cal. App. 4th at 832 (concluding based on similar warranty language that, as a

**United States District Court**
For the Northern District of California

1   matter of law, "Honda did not agree, and plaintiffs did not understand it to agree, to repair latent

2   defects that lead to a malfunction after the term of the warranty") (internal quotation marks omitted).

### 2.   The HP Care Pack Service Contract

4   McDaniel purchased a Care Pack Service Contract along with his Pavilion.  HP argues that

5   McDaniel's express warranty claim fails because he has not pled that he was damaged or injured in

6   any way and the terms of his service contract otherwise bars his claim.  Plaintiffs allege that the Care

7   Pack Service Contract provides, *inter alia*, that (1) "turnaround time is 3-business days, which is

8   measured from the time of logging the call to delivering the repaired unit to the customer," (2)

9   "service includes repair or replacement, all parts, labor and the cost of the return shipment," and (3)

10   HP is obligated to use "replacement parts and products that are new or equivalent to new in

11   performance."  SAC ¶ 84.  McDaniel alleges that HP breached the Care Pack Service Contract

12   because it failed to repair his computer when it replaced it with the motherboard and GPU with a

13   motherboard equipped with the same type of GPU, failed to repair the computer within the three-

14   business day time frame, and replaced the nVidia 5700 GPU with a lower performing GPU.

15   HP first argues that HP's failure to repair McDaniel's computer within three business days

16   was excused by the express terms of the Service Contract because it provides that "HP will not be

17   liable for performance delays or for nonperformance due to causes beyond its reasonable control."

18   Def.'s Mot. Ex. at 1.  HP argues that its customer service representative informed McDaniel that HP

19   did not have the replacement motherboard in stock, which HP notes was alleged in plaintiffs' first

20   amended complaint but omitted in the present operative SAC.  On a motion to dismiss, the court

21   considers the allegations within the complaint.  Based on McDaniel's allegations, HP failed to

22   provide the repairs within three-business days.

23   HP also contends that McDaniel's allegations fail to show a breach of the service contract on

24   the basis that the repairs of McDaniel's computer took longer than the promised three-business days

25   because McDaniel does not allege that he suffered any injury or loss by virtue of the repair taking

26   longer than three business days.  In opposition, McDaniel argues that the damages element is met by

27   his allegations that he did not receive the benefit of his bargain.  Pls.' Opp'n at 10:24-11:1.  As noted

28   above, McDaniel has adequately alleged that HP breached the three-day express service provision in

United States District Court
For the Northern District of California

the Care Pack Service Contract, which he purchased directly from HP.  As plaintiffs argued in their opposition brief and at oral argument, the damage that plaintiffs allege is that portion of McDaniel's purchase price of the Care Pack Service Contract attributable to the three-day express service provision.  Because plaintiffs do not seek consequential damages, they need not allege such damages in order to state a breach of warranty claim.

Similarly, McDaniel alleges the Care Pack Service Contract was breached because HP repaired his Pavilion by installing a lower performing GPU.  Based on the terms of the Care Pack Service Contract, HP was obligated to repair or replace defective parts.  Use of an inferior part that results in a lower performing computer does not constitute adequate repair or replacement under the warranty.  Accordingly, McDaniel has adequately stated a claim for breach of the Care Pack Service Contract based on HP's replacement of the nVidia 5700 GPU with an inferior GPU without any rebate.  HP again argues that McDaniel has not alleged any damages.  However, at oral argument, counsel for plaintiffs clarified that plaintiffs do not seek consequential damages for the breach.  That is, plaintiffs allege that the damage is the difference in value between the nVidia 5700 GPU and the inferior GPU.  Plaintiffs' allegations therefore sufficiently state a claim for breach of the Care Pack Service Contract based on HP's replacement of the nVidia 5700 GPU with an inferior GPU for McDaniel's in-warranty Pavilion.

### 3.    Cal. Com. Code §§ 2313(1)(b) and 2313(1)(a)

Plaintiff's third claim asserts that HP breached California Commercial Code § 2313(1)(b).  As an initial matter, § 2313 does not appear to create an independent cause of action based on violation of § 2313, but merely defines the types of statements that create an express warranty under California commercial law.  *See Hauter v. Zogarts*, 14 Cal. 3d 104, 115 (1975) (noting that claim for breach of express warranty is governed by California Commercial Code section 2313 and analyzing claim thereunder).  Therefore, the court considers plaintiffs' third and fourth claims as common law breach of warranty claims.

HP argues that none of the statements plaintiffs assert as giving rise to a warranty under § 2313(1)(b) are legally and factually sufficient to give rise to an express warranty under § 2313(1)(b) because each of those statements were previously found by this court to be either "non-

United States District Court
For the Northern District of California

1    actionable puffery" with respect to plaintiff's UCL claim or asserted factual statements for which

2    there are no allegations supporting an inference of falsity at the time made.[3]  However, § 2313 calls

3    for a different inquiry.  Moreover, the court's October 31, 2006 Order did not address an alleged

4    statement of the Pavilion's compatibility with the nVidia 5700 GPU.  As the court noted in that

5    order, "[w]hile product superiority claims that are vague or highly subjective often amount to non[-]

6    actionable puffery, . . . misdescriptions of specific or absolute characteristics of a product are

7    actionable."  Oct. 31, 2006 Order at 7:8-11 (citing *Southland Sod Farms v. Stover Seed Co.*, 108

8    F.3d 1134, 1145 (9th Cir. 1997)).

9          Here, plaintiffs claim that HP made statements about product specifications that give rise to

10   express warranties under § 2313.  First, HP stated in technical specifications, maintenance and

11   service guides, and other materials provided on or with plaintiffs' computers that the Pavilions at

12   issue "contain[] and [are] compatible with the 'NVIDIA GeForce FX Go5700 with 64-MB video

13   memory' and with the 'NVIDIA GeForce FX Go5700 with 128-MB video memory.'"  SAC ¶ 95.

14   Second, HP stated in product specifications made available on the Internet and at retailers that the

15   Pavilions at issue have "NVIDIA GeForce GPU with 8X AGP for the most cinematic graphics and

16   special effects."  *Id.* ¶ 96.  Plaintiffs argue that "HP broke its promise when the graphics cards

17   proved to be incompatible with [p]laintiffs' computers, rendering them inoperable."  Pls.' Opp'n at

18   16:15-17.  California Commercial Code section 2313 provides in relevant part:

19             (1) Express warranties by the seller are created as follows:

20             (a) Any affirmation of fact or promise made by the seller to the buyer which relates to
               the goods and becomes part of the basis of the bargain creates an express warranty
21             that the goods shall conform to the affirmation or promise.

22             (b) Any description of the goods which is made part of the basis of the bargain
               creates an express warranty that the goods shall conform to the description.

23
               In *Fundin v. Chicago Pneumatic Tool Co.*, 152 Cal. App. 3d 951, 957 (1984), the court
24

25   [3]      Relying on Cal. Com. Code § 2316, HP also argues that the express disclaimers in its
     Limited Warranty and Technical Support document bars any claims based on purported express
26   warranties outside of that document.  The court is not persuaded.  Cal. Com. Code § 2316 provides
     that "[w]ords or conduct relevant to the creation of an express warranty and words or conduct
27   tending to negate or limit warranty shall be construed wherever reasonable as consistent with each
     other."  Section 2316 further provides that *implied* warranties may be excluded or modified by
28   specific and conspicuous language to that effect.

**United States District Court**
For the Northern District of California

1    concluded that certain statements made in a sales brochure by the manufacturer of a drill rig about

2    the product's specifications constituted representations in "labels and advertising material"

3    actionable under an express warranty theory.  There, the sales brochure was alleged to have been

4    disseminated to the public, including the plaintiff.  *Id.*  The brochure provided product

5    specifications, including that the drill rig had a basic depth rating of 1,800 feet using a 4 ½ inch

6    diameter drill pipe under favorable drilling conditions.  *Id.*  The court concluded that these

7    statements created an express warranty under California law that the rig will drill to depths of 1,800

8    feet using a 4 ½ inch diameter drill pipe under favorable conditions.  *Id.*

9         Similarly, HP's statements that the Pavilion is compatible with the nVidia GeForce FX

10   Go5700 with 64-MB video memory and with 128-MB video memory create express warranties to

11   consumers of the compatibility of the computer with the nVidia 5700 GPU.  As in *Fundin*, the

12   statements here represent a particular product's performance specification based on its design.

13   There, the design was a drill rig that could reach a certain depth if used with a particular type of drill

14   pipe.  Here, the design is a notebook computer that could provide a certain level of graphics

15   functions because of its compatibility with a particular graphics card.  Plaintiffs allege that the

16   statements of compatibility were made in HP's technical specification document and maintenance

17   and service brochures made available to the public.  These materials are similar to the sales brochure

18   that the *Fundin* court concluded constituted "labels or advertising material."  HP argues that *Fundin*

19   is distinguishable because the statements at issue in *Fundin* involved very specific product details.

20   The court is not persuaded by this distinction.  The statements at issue here is specific to the Pavilion

21   and identifies the computer's compatibility with a specific graphics card touted elsewhere by HP as

22   providing "the most cinematic graphics and special effects."  Accordingly, the court finds that

23   plaintiffs have adequately alleged a common law breach of express warranty claim based on HP's

24   statements that the Pavilions at issue are compatible with the nVidia 5700 GPU.[4]

25

26   ───────────────

27   [4]      As noted above, § 2313 does not create a separate cause of action.  Therefore, plaintiffs'
     allegations state a common law breach of express warranty claim based on HP's representations of
28   the Pavilion's compatibility with the nVidia 5700 GPU and not a breach of § 2313.

United States District Court
For the Northern District of California

1    HP also argues that even if the statements regarding compatibility constitute express

2    warranties under Cal. Com. Code § 2313, plaintiffs' third claim fails because the Limited Warranty

3    and the Care Pack Service Contract expressly disclaims any warranties other than those contained

4    therein.  In California, "[s]trict construction against the person who has both warranted a particular

5    fact to be true and then attempted to disclaim the warranty is especially appropriate in light of the

6    fact that [a] disclaimer of an express warranty is essentially contradictory." *Fundin*, 152 Cal. App.

7    3d at 958.  In *Fundin*, the court held that the manufacturer's express warranties in its sales brochure

8    could not be disclaimed or excluded.  The court reasoned that "when a product has been expressly

9    described by its manufacturer as having certain detailed capacities under certain conditions, it would

10   be both unfair and unreasonable to construe the language [of the disclaimer] as negating the express

11   description." *Id.*  The court further reasoned that interpreting the disclaimer as excluding the

12   description of the product specification would be particularly unfair where the consumer is unclear

13   of what comprises the "standard warranty."  In *Fundin*, the disclaimer was stated in the sales

14   brochure immediately following the product description.  Here, the disclaimer is within the standard

15   warranty itself.  Nevertheless, the court's reasoning that allowing the disclaimers to exclude a

16   manufacturer's express representations of product specifications would be unfair is equally

17   applicable here.

18       Plaintiffs' fourth claim asserts that HP breached California Commercial Code section

19   2313(1)(a) based on the express warranties in HP's Limited Warranty.  SAC ¶¶ 113-115.  Plaintiffs'

20   fourth claim is simply a repeat of the fifth claim, which the court has already addressed, *see supra* at

21   B.1 and B.2.  However, as noted above, § 2313 does not give rise to an independent cause of action.

22   Because plaintiffs' fourth claim is redundant, the court strikes it from the complaint.  *See* FED. R.

23   CIV. P. 12(f) ("upon the court's own initiative at any time, the court may order stricken from any

24   pleading . . . any redundant . . . matter").

25          **4.    Magnuson-Moss Act**

26       Plaintiffs' first and second claims allege that HP violated the Magnuson-Moss Warranty-

27   Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 *et seq.*, ("Magnuson-Moss Act")

28   because it breached promises made in its Limited Warranty and Technical Support document and the

United States District Court
For the Northern District of California

1    HP Care Pack Service Contract.  HP takes issue with plaintiffs' failure to address the Magnuson-

2    Moss Act jurisdictional requirements in their complaint.  *See* HP's Reply at 10:20-22.

3        The Magnuson-Moss Act "authorizes a civil suit by a consumer to enforce the terms of an

4    implied or express warranty."  *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 832-33

5    (2006).  However, the Magnuson-Moss Act sets forth specific jurisdictional requirements in order

6    for the claim to be heard in federal court.  15 U.S.C. § 2310(d)(1)(B).  In particular, the amount in

7    controversy for each plaintiff must be at least $25, the amount in controversy for all claims in the

8    suit must be at least $50,000, and for class actions, there must be at least 100 named plaintiffs.  15

9    U.S.C. § 2310(d)(3).  In *Chavis v. Fidelity Warranty Services, Inc.*, 415 F.2d 620, 622-624 (D.S.C.

10   2006), the court concluded that a federal court may have jurisdiction of Magnuson-Moss Act claims

11   if it has jurisdiction under the Class Action Fairness Act ("CAFA") even if plaintiffs' allegations do

12   not meet the jurisdictional requirements in § 2310(d)(3).  The court reasoned that while the

13   Magnuson-Moss Act provides that federal jurisdiction may be premised on allegations meeting the

14   requirements in § 2310(d)(3), the Act alternatively permits jurisdiction "in any court of competent

15   jurisdiction in any State or the District of Columbia."  *Id.; see* 15 U.S.C. § 2310(d)(1)(A).  In other

16   words, if a federal court otherwise has jurisdiction over the action, no additional jurisdictional

17   showing is required for the Magnuson-Moss claim.  In *Chavis*, the jurisdictional requirements for a

18   class claim under the Magnuson-Moss act were not met as there were only two named plaintiffs.

19   The court concluded that it had jurisdiction based on the plaintiff's allegations of federal jurisdiction

20   under CAFA even though the plaintiff did not satisfy the requirements set forth in the Magnuson-

21   Moss Act for class actions.

22       Similarly, although plaintiffs cannot satisfy the Magnuson-Moss jurisdictional requirements

23   because they do not have 100 named plaintiffs, the court has jurisdiction based on plaintiffs'

24   allegations of federal jurisdiction under CAFA.  Therefore, plaintiffs' Magnuson-Moss claim is not

25   barred by lack of jurisdiction.  Apart from the jurisdictional requirements, in a class action, the

26   named plaintiffs must provide notice to the defendant, provide an opportunity to cure the alleged

27   failure to comply with the warranty contract, and inform the defendant that they are acting on behalf

28   of a class.  15 U.S.C. § 2310(e).  Plaintiffs allege in their complaint that such notice has been

United States District Court
For the Northern District of California

1   provided.  Finally, because the court has concluded that plaintiffs have stated a claim for breach of

2   warranty under California law, plaintiffs have also stated a claim under the Magnuson-Moss Act.

3    *See Daugherty*, 144 Cal. App. 4th at 833 (Under the Magnuson-Moss Act, a court generally applies

4   the state's warranty laws.) (citations omitted).

5           **C.      Violation of Section 17200 Based on Unlawful Conduct**

6           Plaintiffs' sixth claim asserts that HP violated Cal. Bus. & Prof. Code § 17200 claim against

7   unlawful business acts and practices by violating the Magnuson-Moss Act, Cal. Com. Code § 2313,

8   and section 5 of the Federal Trade Commission Act ("FTC Act") by misrepresenting the reliability

9   of goods and employing unfair and deceptive practices in repair of such goods.  Because the court

10  concludes that plaintiffs have sufficiently stated a claim for breach of express warranty and violation

11  of the Magnuson-Moss Act related to HP's handling of plaintiffs' warranty claims for the Pavilions at

12  issue, plaintiffs have sufficiently stated a claim under the unlawful prong of Cal. Bus. & Prof. Code

13  § 17200.  However, as the court noted in its October 31, 2006 Order, only the Federal Trade

14  Commission may enforce the FTC Act; plaintiffs' allegations that HP has violated the FTC Act are

15  without support.

16          **D.      Violation of Section 17200 Based on Unfair Conduct**

17          In *Camacho v. Automobile Club of S. Cal.*, 142 Cal. App. 4th 1394, 1400 (2006), the court

18  affirmed the trial court's grant of judgment on the pleadings that plaintiffs failed to allege a violation

19  of section 17200 based on unfair practices.  *See id.* ("We conclude that, under this test, Camacho has

20  not, and cannot, allege facts that constitute an unfair practice under section 17200.").  The court so

21  concluded after setting out a three-factor balancing approach to determine whether the alleged

22  conduct constitutes an "unfair act" under section 17200.  Thus, a court must consider "(1) the

23  consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing

24  benefits to consumers or competition; and (3) it must be an injury that consumers themselves could

25  not reasonably have avoided."  *See id.* at 1403, 1405 (applying the three factors).

26          Here, plaintiffs have alleged that HP: (1) inadequately repaired the computers "by replacing

27  burnt out nVidia 5700 equipped motherboards with another identical board which also generates

28  more heat" than can be effectively dissipated by the computer; (2) inadequately repaired defects by

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT—No. C-06-02254 RMW
SPT                                                     14

**United States District Court**
For the Northern District of California

1   replacing the motherboard with a downgraded GPU without compensating for the difference in

2   value; (3) used a self-created shortage of nVidia 5700 equipped motherboards to downgrade plaintiff

3   McDaniel's GPU and excuse its three-business day turnaround obligation; (4) conducted a secret

4   warranty supplement program under which only select consumers receive monetary refunds or

5   replacement computers; and (5) failed to notify consumers of known defects.  SAC ¶ 152.

6        As to the third and fourth alleged acts, plaintiffs' allegations are vague and conclusory.  In

7   particular, plaintiffs do not make any factual allegations supporting that the shortage of nVidia 5700

8   equipped motherboards was created by HP.  Similarly, plaintiffs do not allege fact showing that HP

9   conducted a "secret warranty supplement program."  Nevertheless, viewing the remainder of

10  plaintiffs' allegations of unfair business acts and practices in the light most favorable to plaintiffs,

11  the court is satisfied that plaintiffs have stated a claim based on the unfair prong of Cal. Bus. & Prof.

12  Code § 17200.

13                              **III.  ORDER**

14       For the foregoing reasons, the court grants in part and denies in part defendant's motion to

15  dismiss.  Brothers's claims for breach of warranty based on the Limited Warranty and Technical

16  Support document are dismissed with prejudice.  Plaintiffs' fourth claim for relief is stricken

17  pursuant to Fed. R. Civ. P. 12(f).  Defendant's motion is denied as to the remaining claims.

18

19  DATED:        2/12/07                              *Ronald M Whyte*

20                                          RONALD M. WHYTE
                                            United States District Judge

21

22

23

24

25

26

27

28

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

Robert S. Green          rsg@classcounsel.com
Kamon D Naddaf          kdn@classcounsel.com
Jenelle Welling          JWW@classcounsel.com

**Counsel for Defendant:**

Thomas R. Green          tgreen@morganlewis.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   2/12/07 _____          _____
                                               SPT
                                               **Chambers of Judge Whyte**

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28